UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ESTATE OF RITA GENECIN, by        :
VICTOR GENECIN, Personal          :
Representative,                   :
            Plaintiff,            :          Civil No. 301CV00211(MRK)
                                  :
VS.                               :
                                  :
PAUL GENECIN and VICTOR GENECIN,  :
in his individual capacity,       :
            Defendants.           :          DECEMBER 31, 2003

### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    FACTS

The defendant, Paul Genecin, files the present Motion for Summary Judgment as there

are no disputed issues of fact, and summary judgment should be granted in favor of Paul

Genecin. The instant dispute between the parties concerns the proper disposition of two assets

previously owned by Rita Genecin, the deceased mother of Paul Genecin and Victor Genecin.

**The Lautrec**

The first asset is a valuable work of art ("the Lautrec") that was given to Paul Genecin

as a gift from his mother, Rita Genecin, before she died. It is undisputed that Rita intended

that Paul have the Lautrec as a gift. Indeed Judge Garfinkel, in his memorandum of decision

dated September 23, 2002 granting plaintiff's motion for prejudgment remedy, stated that he

believed, "Rita wanted Paul and his family to enjoy the Lautrec after her death." See

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK   •   741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:   (203) 458-9168   •   FAX:   (203) 458-4424
JURIS NO. 415438

September 23, 2002 Memorandum of Decision.    Further, Victor Genecin agreed that Rita

Genecin's intent was to give the Lautrec in its entirety to Paul Genecin:

> Q:    I think what you told me is that Mr. Wagner told you that your mother had
> indicated to him that her intention was to give the entire Lautrec to Paul and his
> family over a period of time, is that correct?
>
> A:    Certainly that was her intention on January 12, 2000.

See Exhibit A, Deposition of Victor Genecin at p. 54.

Despite his belief, Victor Genecin alleges that the gift was never properly effectuated pursuant

to Maryland law and no valid gift was ever conveyed.  Accordingly, Victor Genecin argues

that the Lautrec is an asset of the estate.

Rita Genecin had originally given the Lautrec to Paul Genecin in July, 1999.  Paul

informed her that he would go to Baltimore at a later date to take the Lautrec to his home in

New Haven.  See Exhibit B, Deposition of Paul Genecin at p. 120; see also Exhibit C,

Affidavit of Paul Genecin.  When Paul and his wife traveled to Baltimore to visit his mother at

the end of 1999, Rita suggested that Paul take the Lautrec home with him.  Paul was unable to

do so because he and his family had brought their dog to Maryland.  They were concerned

about the safety of the Lautrec if they were to transport it in the rear of the car where their dog

would be confined during the trip.  See Exhibit C, Affidavit of Paul Genecin; see also,

Exhibit V, deposition of Vicky Morrow, p. 23.

To evidence this gift, Rita Genecin signed a Deed of Gift dated January 4, 2000 in

which she stated, "This letter is a Deed of Gift, in which I, Rita Genecin, hereby give, grant,

convey and transfer all my right, title and interest in and to the item listed below to you, Paul

2

Genecin, in fee simple, absolutely, without any reservation whatsoever..." See Exhibit D. In addition, Rita Genecin quitclaimed the interest in her home to herself, Victor and Paul on January 12, 2000. Daniel Wagner, Rita Genecin's financial advisor, has written that the transfer of the interest in the home was effected so that her sons' ownership of various artwork she gave to them would not be disputed.[1] See Exhibit B, Deposition of Paul Genecin at p. 119; Exhibit E. Rita Genecin then died in August of 2000, before Paul Genecin had the opportunity to bring the Lautrec to New Haven.

It was not uncommon for Rita Genecin to draft Deeds of Gift to her children to convey her various pieces of art to her children prior to her children removing the artwork from her home. Thus, Paul Genecin testified, "My mother had a habit of giving a letter of gift and thereafter the picture had left her house, or giving the letter of gift before it left her house, or at the same time as..." See Exhibit B, Deposition of Paul Genecin at p. 122; see also, Exhibit C, Affidavit of Paul Genecin. Indeed, in the three years prior to her death, Rita Genecin gifted several pieces of art in this fashion:

> Deed of Gift from Rita Genecin to Paul Genecin dated January 4, 1999 conveying One Lithograph by Edvard Munch entitled "Das Wieb" (Die Sphinx), See Exhibit F;
>
> Deed of Gift from Rita Genecin to Paul Genecin dated December 25, 1997 conveying One Lithograph by Jasper Johns entitled "Numbers," See Exhibit G;
>
> Deed of Gift from Rita Genecin to Paul Genecin dated April 4, 1998 conveying One Lithograph by Jasper Johns entitled "Two Flags," See Exhibit H;

---

1 Rita Genecin also gave Victor Genecin two Vuillards, which remained in the Baltimore house where she resided until her death.

Deed of Gift from Rita Genecin to Paul Genecin dated May 6, 1998 conveying One Lithograph by Philip Pearlstein entitled, "Nude on Orange and Black Mexican Rug," <u>See</u> Exhibit I;

Deed of Gift from Rita Genecin to Paul Genecin dated January 4, 2000 conveying One wood cut print by Munakata, entitled, "The Hawk Woman," <u>See</u> Exhibit J.

After his mother's death, Paul Genecin learned that his mother met with her financial advisor on January 6, 2000 (two days after executing the January 4 Deed of Gift) and on January 12, 2000 executed new instruments purporting to gift $1/15^{th}$ of the Lautrec each to Paul Genecin, his wife and their two sons. At the time Rita Genecin made this gift to Paul Genecin, the Lautrec had a value of approximately $150,000. It appears that the four $1/15^{th}$ letters were intended to take advantage of the $10,000 gift per person tax exclusion. <u>See</u> Exhibit A, Deposition of Victor Genecin at p. 53; <u>see also</u> Exhibits K, L, M and N.

**The IRA**

The second asset in dispute is Rita Genecin's Individual Retirement Annuity (IRA) account. Victor Genecin alleges that the IRA should be divided "60/40" between himself and Paul Genecin. Paul Genecin submits that the IRA should be divided 50/50 in accordance with the IRA Account Agreement executed by Rita Genecin.

Rita Genecin executed three separate beneficiary designations:

1.  Exhibit O is the Schwab IRA Application that was received by Schwab on October 20, 1998. This document was signed by Rita Genecin on October 8, 1998. Although Rita Genecin's signature and the rest of the handwriting on this form are in ink, the beneficiary designations were made in pencil. The penciled beneficiary designations specified Victor Genecin as a 60% beneficiary of the account and Paul Genecin as a 40% beneficiary. Because the designations were in pencil it is impossible to know who placed those designations on the form or whether that was done before or after Rita Genecin signed the form. It appears that

4

the court will not need to resolve those issues since the account agreement provides: "I reserve the right to revoke or change this beneficiary designation. I understand that any change or revocation *must be given in writing to Schwab.* This designation revokes any prior designations (if any) of primary or contingent beneficiaries." (emphasis added) See Exhibit O, p. 3; See also, Exhibit A, Deposition of Victor Genecin at p. 26. As will be described below, forum transmitted to Schwab after this October 20, 1998 beneficiary designation call for a per stirpes (i.e., equal) distribution between Paul and Victor.

2.  Exhibit Q is a document captioned "RITA GENECIN IRA BENEFICIARY DESIGNATION" that was also received by Schwab on October 20, 1998. The document purports to have been signed on October 8, 1998, and to have been witnessed by "C.Sullivan," who works for Ms. Genecin's financial adviser, Dan Wagner. The document states: "Upon my death, my Individual Retirement Account shall be distributed to my descendants who survive me, per stirpes . . . ." The legal effect of this language is to make Victor Genecin and Paul Genecin each 50% beneficiaries of the account. See Exhibit Q; see also Exhibit A, Deposition of Victor Genecin, at p. 27.

3.  Exhibit R is a document captioned "RITA GENECIN IRA BENEFICIARY DESIGNATION" that was received by Schwab on October 29, **1999**, more than a year after the two other IRA documents were delivered. This IRA Beneficiary Designation is dated October 6, 1998 and was witnessed by Max E. Blumenthal, Rita Genecin's estate attorney. The document states: "Upon my death, my Individual Retirement Account shall be distributed to my descendants who survive me, per stirpes . . . ." The legal effect of this language is to make Victor Genecin and Paul Genecin each 50% beneficiaries of the account. See Exhibit R; see also Exhibit A, Deposition of Victor Genecin at pp. 28-30.

It is undisputed that the document attached hereto as Exhibit R, which designates that the contents of the IRA be distributed "per stirpes" was the document most recently received by Schwab. See Exhibit A, Deposition of Victor Genecin at p. 31-32. This "per stirpes" beneficiary designation was sent to Schwab by Wager Citron Management Corporation, Rita Genecin's financial advisors, via a letter dated October 25, 1999. See Exhibit T. It is undisputed that this document constitutes the final instructions received by Schwab with

5

respect to Rita Genecin's designation of beneficiary. The Schwab IRA Application states that the owner of the account "reserves the right to revoke or change [the] beneficiary designation." The same document goes on to state: "I understand that any change or revocation must be given in writing to Schwab." See Exhibit O. To put it another way, it is the written beneficiary form which is received last by Schwab which, under the IRA agreement, is to control the disposition of the account. In the present case, the last instructions transmitted to Schwab with regard to Rita Genecin's IRA account are the instructions contained in Exhibit R, sent to Schwab by Rita Genecin's financial advisor and received by Schwab on October 29, 1999. This document stipulates that the IRA account is to be distributed to Mrs. Genecin's descendants per stirpes. In other words, the applicable Schwab forms establish that the IRA is to be distributed evenly between Paul Genecin and Victor Genecin.

Victor Genecin acknowledged during his deposition that prior to his mother's death, it was his understanding that his mother intended to distribute the IRA "per stirpes." See Exhibit A, Deposition of Victor Genecin at p. 60. However, after his mother died, Victor Genecin learned of the existence of the "60/40" designation, and now seeks to have this Court rule that that document controls the disposition of the IRA account. It should be noted that there is no evidence to suggest that Mrs. Genecin placed the 60/40 designations on that form; nor is there any evidence to suggest that the penciling-in of those designations was accomplished prior to the time Mrs. Genecin signed it. There is also no evidence from which it could be determined whether Exhibit Q (the per stirpes documents received by Schwab on October 20, 1998) or Exhibit O (the 60/40 document also received by Schwab on October 20,

6

1998) was received last by Schwab.  What is known about Exhibit Q (the per stirpes document received by Schwab on October 20, 1998) is that that document was completely filled out prior to the time Mrs. Genecin signed it; indeed, the only handwriting on that form is Rita Genecin's signature, date and the signature of the witness.

In this lawsuit, Victor Genecin has alleged that Paul Genecin, either directly or indirectly, altered the 60/40 document in order to pencil-in a 50/50 beneficiary designation. However, at his deposition, Victor Genecin acknowledged that he has no proof to support this allegation.  See Exhibit A, Deposition of Victor Genecin at p. 95.  The fact is that Charles Schwab conducted an internal investigation surrounding this document after it came to light that there were two conflicting penciled-in forms.  Schwab's internal investigation determined that Karen David, a Schwab employee, retrieved a copy of the IRA document in question and was unable to clearly read the penciled-in beneficiary designations on that copy.  Apparently having read the "per stirpes" beneficiary designations, Ms. David believed that the original form must have read 50/50 and, therefore, she darkened that on the form, believing that she was assisting those persons who were attempting to learn what was written on the form.  The Charles Schwab investigators concluded that Karen David acted independent of any outside influence.  See Exhibit S.  Furthermore, defendant has now submitted with this motion the affidavits of both Paul Genecin and the lawyer who was representing him at that time, Kathy Priest, both of whom have affirmatively denied persuading Ms. David to alter the form in

7

question.[2] See Exhibit C, Affidavit of Paul Genecin; see also, Exhibit W, Affidavit of Kathy Priest.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Id. Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

2. Victor Genecin's unsupported allegation of criminal conduct by both his brother and the Schwab employee was apparently made without giving any thought to what motivation Karen David would have had to participate in a fraud that would be of no benefit to her.

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and "designat[ing] 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

III.    **ARGUMENT**

A.    **Rita Genecin Effectively Delivered The Lautrec To Paul Genecin By Virtue of the Deed of Gift Dated January 4, 2000**

To establish that a valid gift was made, Paul Genecin need only demonstrate three elements: donative intent, delivery, and acceptance. Hamilton v. Caplan, 518 A.2d 1087, 1090-01 (Md. 1987). The first element – donative intent – in the present case is undisputed. Victor Genecin testified that it was his mother's intention to convey the entire Lautrec to Paul Genecin. See Exhibit A, Deposition of Victor Genecin at p. 54. Judge Garfinkel agreed that, "Rita wanted Paul and his family to have and enjoy the Lautrec after her death." See Memorandum of Decision dated September 23, 2002. There is no claim that Paul Genecin refused to accept the Lautrec. "Acceptance of the gift is presumed until the contrary is shown." Allender v. Allender 199 Md. 541, 546, 87 A.2d 608 (1952). Accordingly, the only issue is whether the delivery of the January 4, 2000 Deed of Gift was sufficient under Maryland law.

The claim that the gift of the Lautrec was ineffective because Rita Genecin never manually delivered the Lautrec to Paul Genecin ignores the concept of constructive delivery, which is recognized in Maryland. The concept of constructive delivery evolved from the gift

9

of items too difficult to deliver physically, such that the only practicable way to deliver the item was to effect a constructive delivery. See In Re Hamilton v. Caplan, 69 Md.App. 566, 574, 518 A.2d 1087 (1987). "What constitutes delivery depends largely on the intent of the parties. A constructive delivery is sufficient if made with the intention of transferring the title. *It is not necessary that delivery should be by manual transfer.*" Miller v. Hospelhorn, 176 Md. 356, 367, 4 A.2d 728 (1939) (emphasis added); See also, Brooks v. Mitchell, 163 Md. 1, 161 A. 261 (1932) (collecting cases where constructive delivery was deemed sufficient, *e.g.,* Brewer v. Bowersox, 92 Md. 570, 48 A. 1060, 1062 (1901); Frentz v. Schwarze, 122 Md. 12, 89 A. 439 (1913); First National Bank v. Thomas, 151 Md. 248, 134 A. 210, 213 (1926).); Pomerantz v. Pomerantz, 19 A.2d 713, 715 (Md. 1941); Cox v. Hill, 6 Md. 274 (1854).

1.    Delivery of the Deed of Gift Alone is Sufficient for Constructive Delivery

One who intends a gift may avoid all requirements relating to delivery of the property to be donated by executing and delivering a formal Deed of Gift. See Meyers v. Meyers, 99 N.J.Eq. 560, 134 A. 95 (Ch. 1926); Tarbox v. Grant, 56 N.J.Eq. 199, 39 A. 378 (Ch. 1898).

Here, the Deed of Gift was delivered to Paul Genecin, a fact which is not in dispute. The Deed of Gift states, in full:

> "Dear Paul:
>
> This letter is a Deed of Gift, in which I, Rita Genecin, hereby give, grant, convey and transfer all my right, title and interest in and to the item listed below to you, Paul Genecin, in fee simple, absolutely, without any reservations whatsoever.
>
> One signed lithograph by Henri de Toulouse-Lautrec, entitled La Chariot Anglais.

10

Sincerely and with love,

Rita Genecin"

The Deed of Gift is signed by Rita Genecin.[3] Rita Genecin's intent to transfer title of the Lautrec to Paul Genecin could not be more clear from this Deed of Gift. Therefore, the delivery of the Deed of Gift constituted constructive delivery of the Lautrec.

The Court in Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 492 N.E. 2d 1164 (1986) was faced with a nearly identical issue. In that case, the plaintiff had made gifts of 19 pieces of artwork to the trusts of her three children simply by conveying a Deed of Gift. However, she did not relinquish physical dominion or control over the artwork. She subsequently attempted to retract these gifts arguing that the gifts were made solely to protect the artwork from any claim of ownership her husband may have had to them in their prior divorce proceedings. She further argued that there was never any physical delivery of these gifts and, accordingly, there was never a valid gift of the artwork to the trust. The plaintiff testified that she intended to give the drawings at issue to a trust for the benefit of her three children. In addition, independent witnesses testified that the plaintiff made statements that the artwork belonged to the trusts. Further, the plaintiff affixed labels to some of the drawings indicating

---

3. Victor Genecin claims that the Deed of Gift is somehow ineffective because it was not properly notarized. There is no dispute that the notary failed to follow the requirements for notarization. Rita Genecin signed the Deed of Gift in Baltimore, Maryland and asked her son to have it notarized in New Haven. The notary affixed her signature and stamped the document notwithstanding that she did not actually observe Rita Genecin sign it. Both Paul Genecin and the notary have testified that they were unaware of the requirement that the notary actually see the individual sign the document in question. See Exhibit B, deposition of Paul Genecin at pp. 97-99; See also, Exhibit X, deposition of Marion P. Mulrine at p. 25. It is acknowledged that the notarization was ineffective. However, that is of no consequence since this document was not required to be notarized. Significantly, there has been no claim by the plaintiff that the signature of Rita Genecin on this document is not genuine.

their ownership by specific trust; she placed stamps on the mats of the other drawings, indicating ownership by specific trust; and she placed drawings that were of appropriate size in boxes which were marked as containing property of specific trust. The court was persuaded that the plaintiff had made gifts of this artwork to each of the three trusts in the past while retaining control of the assets deeded to the trust. Id at p. 1167. The facts in Edinburg are remarkably similar to those at issue here. Rita Genecin conveyed the Lautrec to Paul by a Deed of Gift while retaining the Lautrec in her home. Paul Genecin had planned on returning to take the Lautrec home with him when he could transport it without fear that it would be damaged. Further, Rita Genecin had an established pattern of deeding similar gifts to her sons while retaining them in her home until they could be removed at some point in the future. See Exhibit B, Deposition of Paul Genecin at p.122; See also Exhibits F, G, H, I, J & K.

In another case which is on all fours with the present one, a New York Court ruled that an inter vivos gift was effected by a letter from a father to his son stating that he was giving the son a painting for his birthday, despite the fact that the father retained physical possession of the painting *for seventeen years* until his death. See Gruen v. Gruen, 488 N.Y.S.2d 401 (N.Y. App. Div. 1984). In Gruen, the father had written to his son in 1963 informing him that he was giving a gift of a valuable oil painting. The father nonetheless retained possession of the painting until he died in 1980. The estate claimed that there was no valid gift, and the trial court agreed. The Appellate Division then reversed, holding that the letter sufficiently evidenced an intent on the part of the father to give a present gift of the painting, *even though an accompanying letter showed that the father intended to retain the painting for the*

12

*remainder of his life.* Id. In the present case, Rita Genecin's gift, on its face, was even more complete, as her Deed of Gift did not indicate she wished to retain use of the lithograph for the remainder of her life. Rather, she intended to retain it only until Paul could safely take it with him to New Haven.

The Gruen court stated that when property is conveyed by written instrument, "it is the delivery of the of the instrument itself which fulfills the delivery requirement of a gift *inter vivos*, and duplicative manual delivery is therefore unnecessary." See Id. at 403. The court explained that the necessity of manual delivery is necessary to establish the donor's intent only when there is no written instrument memorializing the gift, but "[n]o such policy considerations are applicable to a gift made in writing, for . . . 'the delivery of a written conveyance requires a high degree of deliberation on the part of the donor, substantially higher than a manual delivery, and affords the clearest and most convincing evidence of the fact that a gift has taken place.'" Id. at 404, quoting Mechem, The Requirement of Delivery in Gifts of Chattells, 21 Ill. L. Rev. 568, 586. It is difficult to imagine language more clear or more convincing with regard to stating an intent to transfer title to property than that used by Rita Genecin in the Deed of Gift dated January 4, 2000. Her January 4, 2000 Deed of Gift conveyed the Lautrec to Paul Genecin, just as effectively as if she had delivered the Lautrec itself.

Gruen is also instructive on the issue of the effect of Rita Genecin's later purported gifts of 1/15[th] shares in the Lautrec to Paul Genecin, his wife and two children, which Victor Genecin asserts rendered the earlier Deed of Gift legally ineffective. In Gruen, subsequent to

13

giving the gift letter to his son, the father had stated on an application for a license to export the painting from Austria, where it then resided in the father's home, that he had bequeathed the painting in his will. The <u>Gruen</u> court stated that "while the statement in the application could conceivably be read as implying that the donor had changed his mind about the painting, [this] could not affect the validity of the completed gift." <u>See</u> <u>Id.</u> at 407.

Likewise in the present case, Rita Genecin made a complete gift when she executed the Deed of Gift on January 4, 2000. The fact is that she had already relinquished the entire Lautrec at the time she attempted to reduce her taxes by executing the fractional share documents in favor of Paul Genecin and members of his immediate family. At the time Rita Genecin made this gift to Paul Genecin, the Lautrec had a value of approximately $150,000. It seems rather clear that what occurred is that Rita Genecin decided after making the unequivocal gift to Paul Genecin that she would like to create paperwork which would allow her to avoid gift taxes. However, the subsequent paperwork purporting to give 4/15 of the Lautrec to Paul Genecin and his family could not negate the January 4, 2000 Deed of Gift. At the time Rita Genecin attempted to grant 1/15th shares of the Lautrec to Paul Genecin and members of his immediate family, the Lautrec had already been given unequivocally to Paul Genecin. The simple fact is that the later attempts to take advantage of the tax code were ineffective, as acknowledged by Rita Genecin's accountant in a letter to Attorney Max

Blumenthal, one of Victor Genecin's lawyers. <u>See</u> Exhibit E (referring to the fractional deeds of gift as a "non-event" in light of the January 4, 2000 Deed of Gift.)[4]

As noted above Maryland law recognizes the concept of constructive delivery through a written instrument, even in the cases where physical delivery is possible. <u>Smith v. Acorn</u>, 32 A.2d 252 (D.C. 1943) is a case on point. In that case the D.C. Municipal Court of Appeals, interpreting Maryland law, held that a donor completed an <u>inter vivos</u> gift of an automobile by signing title over to the donee, even without delivering the car itself. <u>Id</u>. at 255-56. The <u>Smith</u> court relied on <u>Howard v. Hobbs</u>, 125 Md. 636, 94A. 318 (1915) in which the court held "a reservation by the donor of certain proprietary rights in the subject of the gift, such as the use and enjoyment thereof, is not necessarily inconsistent with the absolute character of the gift, and gifts accompanied by such reservations have been repeatedly upheld." <u>Id</u>. at 319. In addition to relying on <u>Howard</u>, the <u>Smith</u> court relied on cases from several other jurisdictions which recognize that the donor's retention of a gift does not negate the validity of the gift. <u>See</u> <u>Parker v. Mott</u>, 181 N.C. 435, 107 S.E. 500, 25 A.L.R. 637 (1921); <u>Tucker v. Tucker</u>, 138 Iowa 344, 116 N.W. 119 (1908); <u>Conlon v. Turley</u>, 56 App. D.C. 95, 10 F.2d 890 (1926).

Indeed, several jurisdictions agree that delivery of the deed alone is sufficient to convey ownership of tangible personal without delivery of the property itself. <u>See</u> <u>Winner v. Winner</u>, 370 So. 2d 845 (Fla. Dist. Ct. App. 3d Dist. 1979); <u>Lewis v. Burke</u>, 248 Ind. 297, 226 N.E.2d 332 (1967); <u>Matter of Estate of Monks</u>, 171 Misc. 2d 514, 655 N.Y.S.2d 296 (Sur. Ct.

---

4. Even if Victor Genecin were correct that the gift of the full Lautrec to Paul Genecin was not effective, the later gifts of a total of 4/15 of the Lautrec to Paul Genecin's family members should be given effect.

1997), Lenihan v. Meyer, 111 N.W.2d 696 (N.D. 1961); Dean v. Dean, 8 Va. App. 143, 379 S.E.2d 742 (1989); In re Dodge, 90 N.J. Super. 198 216 A.2d 757 (Ch. Div. 1966), *judgment rev'd on other grounds*, 50 N.J. 192, 234 A.2d 65 (1967) (holding that a donor may avoid all requirements relating to the delivery of property by executing and delivering a formal Deed of Gift since such a deed indicates a deliberate and unequivocal expression of intent).

2.    Conveyance of the Lautrec By Deed Alone Was Sufficient As The Value of the Painting Made Manual Delivery Impractical

Delivery of the Deed of Gift to Paul Genecin without manual delivery of the lithograph is sufficient to legally convey the gift to Paul due to its value and the surrounding circumstances. "Where from the character or condition of the goods an actual manual delivery is impracticable, a constructive or symbolical delivery is sufficient." See Merchants' Nat. Bank of Baltimore v. Roxbury Distilling Co., 196 F. 76, 84 (D.C. Md. 1912); See also Gruen v. Gruen, supra; Hawkins v. Union Trust Co. of N.Y., 187 App.Div. 472, 175 N.Y.S. 694 (1919); Matter of Roosevelt, 190 Misc. 341, 73 N.Y.S.2d 821 (1947); cf., Tompkins v. Leary, 134 App.Div. 114, 118 N.Y.S. 810 (1909)).

Rita Genecin made an unequivocal gift to her son. Paul Genecin opted to wait to transport the Lautrec until he could do so without fear that it would be damaged in transit due to its economic and sentimental value. See Exhibit C, Affidavit of Paul Genecin. Given the fact that Rita Genecin and the Lautrec were hundreds of miles away from Paul Genecin, the delivery of the January 4, 2000 Deed of Gift was sufficient to complete the gift of the Lautrec, since there was no practical way for Rita Genecin to physically transfer the Lautrec at that time.

16

Additionally, at the time she transferred the Lautrec to Paul Genecin, Rita Genecin also quitclaimed her interest in her own home to herself and her two children, Victor and Paul Genecin. This was done in a clear attempt to give up complete control and dominion of the Lautrec and the paintings she had given to Victor Genecin. Only seven months passed from the time the Deed of Gift was delivered to Paul Genecin and the date of his mother's death. That neither Rita nor Paul Genecin had arranged for physical transfer of the painting prior to her death does not in any way make the gift ineffective. In view of the fact that Rita Genecin had no practical way to physically transfer the Lautrec to her son on January 4, 2000 (given the fact that she was in Baltimore and he was in New Haven), the case law cited above establishes that delivery of the Deed of Gift was effective.

3. <u>Rita Genecin Effectively Conveyed The Lautrec To Paul As She Did All She Could to Divest Herself of Control and Dominion of the Lautrec</u>

Judge Garfinkel in his Memorandum of Decision dated September 23, 2002 noted that the donor must do all she can to divest herself of dominion and control over the gift. <u>See</u> Memorandum of Decision , September 23, 2002. In that opinion, Judge Garfinkel, although believing that Rita Genecin intended to give the Lautrec to Paul Genecin, expressed concern that Rita Genecin's subsequent actions demonstrated that she did not, in fact, give up dominion and control over the Lautrec at the time of executing the Deed of Gift. Specifically, Judge Garfinkel noted that several days later Mrs. Genecin executed the fractional Deeds of Gift to Paul Genecin and his family. In the first place, as noted above, those fractional Deeds of Gift are a legal nullity; Rita Genecin had already divested herself of the Lautrec. Second, it must be remembered that on the very same day of executing the fractional Deeds of Gift, Rita

17

Genecin conveyed an undivided interest in her home to both of her sons in order to remove any question about the validity of the gifts of artwork she had made to both of them. Consequently, "[s] he had done all she could do to relinquish dominion and control over the donated item." See Malloy v. Smith, 265 Md. 460, 466, 290 A.2d 486 (1972).

In the present case, it is clear that Rita Genecin did all she could possibly do to relinquish dominion and control over the Lautrec. She told Paul Genecin on several occasions to remove the Lautrec from her home and bring it to his home in New Haven. See Affidavit of Paul Genecin at Exhibit C. On each occasion, Paul Genecin was unable to safely transport the valuable Lautrec to his home. On one occasion his dog was in the car with him, and on another occasion he was removing several other of Rita Genecin's personal effects from the home and could not also safely transport the Lautrec. See Exhibit V, deposition of Victoria Morrow at p. 23. Accordingly, Paul Genecin allowed the Lautrec to remain safely in the home in Baltimore, which he then jointly owned. Rita Genecin drafted the Deed of Gift of the Lautrec on January 4, 2000 unequivocally transferring the Lautrec. See Exhibit D. In a final effort to perfect the gift to Paul Genecin, Rita Genecin *transferred the interest in her home to herself and Paul and Victor Genecin*. See Exhibit C, Affidavit of Paul Genecin.

It should be noted that transferring a painting by Deed of Gift to be later followed by delivery of the painting itself was customary for Rita Genecin. She did this several times during her life with respect to paintings transferred to Paul and Victor Genecin. See Affidavit of Paul Genecin. This pattern of conveyance of gift by deed while retaining physical possession of the property was persuasive evidence to the court in Edinburg that an effective

18

gift had been made. See Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 492 N.E. 2d 1164,

1167 (1986).

4.    Rita Genecin's Retention of the Lautrec Does Not Invalidate the Gift Under Maryland
      Law

        In Snyder v. Stouffer, 270 Md. 647, 313 A.2d 497 (1974), a Maryland case squarely on

point, the court determined that where it was evident that the donors clearly intended to give to

their son a set of valuable coins, despite the fact that the son returned the valuable coins to his

parents for safekeeping. Thus, the court observed: "His return of the coins for safekeeping did

not affect the validity of the gift or his claim of title to them." Id. at 499. As Judge Garfinkel

noted, the evidence of Rita Genecin's intent in the present case is crystal clear. Indeed, it

would be difficult to imagine a clearer statement of intent than a written document stating "I,

Rita Genecin, hereby give, grant, convey and transfer all my right, title and interest in and to

the item listed below to you, Paul Genecin, in fee simple, absolutely, without any reservations

whatsoever." Under Snyder, the fact that Paul Genecin elected to allow the Lautrec to remain

with his mother for safekeeping did not vitiate the gift.

        In Rogers v. Rogers, 271 Md. 603 (1974), a husband gave his wife a stock certificate as

a wedding anniversary present. The wife returned the certificate to her husband so that he

could have the registration transferred to her name. However, because of ill health, the

husband failed to have the certificate re-registered and it remained in his name at the time of

his death. The court held that "where an actual delivery to a donee occurs, a delivery back to

the donor, where the donor is acting as the donee's agent for a limited purpose, does not impair

the validity of the gift." Id. at 607.

19

Similarly, in <u>Register of Wills for Somerset County v. Sterling</u>, 264 Md. 638 (1972), an uncle gave his nephew shares of a valuable blue chip stock. He delivered the certificates for the shares to his nephew but retained the right to receive dividends for the rest of his life. The court held that the uncle's retention of the dividends did not invalidate the gift.

Other jurisdictions have also held gifts to be valid, even though the donor retained dominion over the property to some degree. <u>In re Dayton's Estate</u>, 121 Neb. 402, 237 N.W. 303 (Sup.Ct.1931); <u>In re Corn's Estate</u>, 141 N.Y.S.2d 16 (Surr.Ct.1955); <u>Connelly v. Bank of America National T. & S. Assn.</u>, 138 Cal.App.2d 303, 291 P.2d 501 (1956); <u>Smith v. Acorn</u>, 32 A.2d 252 (D.C.Mun.Ct.App.1943); <u>Arizona Title Guarantee & Trust Co. v. Wagner</u>, 75 Ariz. 82, 251 P.2d 897 (Sup.Ct.1952); <u>Smith v. Smith</u>, 253 F.2d 614 (4 Cir. 1958). <u>See In Re Drewett</u>, 34 B.R. 316 (Bankr. E.D. Pa. 1983); <u>Gruen v. Gruen</u>, 68 N.Y.2d 48, 505 N.Y.S.2d 849, 496 N.E.2d 869, 83 A.L.R.4[th] 955 (1986); <u>In re Lefrak</u>, 227 B.R. 222 (S.D.N.Y. 1998); <u>Elyachar v. Gerel Corp.</u>, 583 F. Supp. 907 (S.D.N.Y. 1984); <u>Hill v. Baker</u>, 48 Del. 305, 102 A.2d 923 (Super. Ct. 1953); <u>Hudson v. Tucker</u>, 188 Kan. 202, 361 P.2d 878 (1961); <u>Stump v. Smarsh</u>, 153 Kan. 804, 113 P.2d 1058, 1061 (1941), ("Where a deed is effectively delivered, the fact that it is handed back to the grantor for some purpose does not defeat the delivery"); <u>Johnson v. Cooper</u>, 123 Kan. 487, 255 P. 1112 (1927).

**B.      If The Court Determines That The Lautrec In Its Entirety Was Not Properly Conveyed To Paul Genecin, Then  Paul Genecin And His Family Have A 4/15 Interest In The Lautrec.**

In the event this Court determines that there was no valid gift of the entire Lautrec to Paul Genecin,  then 4/15 of the Lautrec belongs to Paul Genecin and his family.  Obviously, it

is impossible to relinquish possession of 4/15 of the Lautrec. Where a gift is not of the entire item, but of an undivided fractional interest therein, creation of the deed is sufficient to convey the fractional interest. See Merchants' Nat. Bank of Baltimore v. Roxbury Distilling Co., 196 F. 76, 84 (D.C. Md. 1912). See also, Hausfelder v. Security-First Nat. Bank, 77 Cal. App. 2d 478, 485, 176 P. 2d 84, 88 (1946); Hill v. Donnelly, 56 Cal. App. 2d 387, 132 P. 2d 867 (1942).

## C.    The IRA Must Be Divided Equally Between Victor And Paul Genecin

The IRA account should be divided equally between Victor and Paul Genecin for three reasons. First, the IRA account documents establish that the owner of the account may change the beneficiary designation at any time, so long as any such change is provided in writing to Schwab. See Exhibit O. In effect, this means that the beneficiary designation which controls is the designation which is delivered to Schwab last. It is undisputed that Exhibit R, which was delivered to Schwab via a letter from Rita Genecin's financial advisor dated October 25, 1999 (Exhibit T) was the last instruction received by Schwab with respect to Rita Genecin's designation of beneficiary. That instruction directs that the account be distributed per stirpes, which in the circumstances of the present case means that the account should be distributed evenly to Victor Genecin and Paul Genecin.

Second, even if Exhibit R were not the last designation of beneficiary form to be delivered to Schwab, there is no basis for treating Exhibit O (the 60/40 document) as evidencing Rita Genecin's intent with respect to designation of beneficiary. As noted above, all of the writing on that form is in ink, with the exception of the penciled-in percentages of

21

60% to Victor Genecin and 40% to Paul Genecin. No evidence exists to suggest that Rita Genecin, who signed the form in ink, placed these percentages on the form. Indeed, there is no evidence to indicate who placed those percentages on the form or whether those percentages were placed on the form before or after Rita Genecin signed it. Thus, there is no reason for the Court to give effect to the penciled-in percentages of that document. Indeed, the only evidence relating to Rita Genecin's intention with regard to the IRA beneficiary designation is inconsistent with the 60/40 document. Specifically, Exhibit U is a September 29, 1998 letter from Max Blumenthal, Rita Genecin's attorney, enclosing a beneficiary designation for the IRA account. Attorney Blumenthal in that letter writes: "You can see that Rita designates Victor and Paul as beneficiaries in equal shares." Thus, the only evidence of Rita Genecin's intent with respect to the IRA account is that the account should be divided equally between her two sons.

Third, even if the Court could give credence to Exhibit O, there is no reason to believe that this form, rather than Exhibit P (which, like Exhibit R, directs that the distribution be made per stirpes) should be given effect. In this regard, both Exhibit O and Exhibit P were received by Schwab on the same date, October 20, 1998. In order for plaintiff to prevail on this part of his claim, he would have to meet his burden of proving that Exhibit O was received by Schwab after Exhibit P. There is no evidence from which plaintiff can meet this burden.

## CONCLUSION

Under Maryland law, three elements are needed to establish a gift: donative intent, acceptance and delivery. There is no dispute in this case as to the first and second elements.

Contrary to plaintiff's position, Maryland law does not require physical delivery of the article in all instances. Constructive delivery is recognized where, as here, there is unequivocal evidence of the donor's intent to transfer title. The conclusion that the January 4, 2000, Deed of Gift was effective in this case is buttressed by the fact that it was impractical for Rita Genecin to physically deliver the lithograph on January 4, 2000; the fact that she had a practice of making gifts through a Deed of Gift and later transferring physical possession of the item; and the fact that Rita Genecin transferred an undivided interest in the house where the Lautrec was kept in order to remove any question as to the validity of the gift. With regard to the IRA, the Court should give effect to the per stirpes designation of beneficiary which was delivered to Schwab on October 29, 1999 by Rita Genecin's financial advisor. Accordingly, summary judgment should enter in favor of the defendant.

THE DEFENDANT,
PAUL GENECIN

By _____
Patrick M. Noonan
(Fed. Bar #ct00189)
Brock T. Dubin
(Fed. Bar #ct18777)
Delaney, Zemetis, Donahue,
Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

23

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

David T. Grudberg
Jacobs, Grudberg, Belt & Dow, P.C.
350 Orange street
P.O. Box 606
New Haven, CT  06503

Richard L. Mattiaccio, Esq.
Pavia & Harcourt
600 Madison Avenue
New York, NY  10022

Victor Genecin, Esq.
Pavia & Harcourt
600 Madison Avenue
New York, NY  10022

Patrick M. Noonan