UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ESTATE OF RITA GENECIN, by      :
VICTOR GENECIN, Personal        :      CORRECTED JANUARY 8, 2004
Representative,                 :
            Plaintiff,          :
                                :      CIVIL NO.3:01CV00211(MRK)
VS.                             :
                                :
                                :
PAUL GENECIN and VICTOR GENECIN,:      DECEMBER 29, 2003
in his individual capacity,     :
            Defendants.         :


MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF PLAINTIFF ESTATE OF RITA GENECIN AND OF DEFENDANT VICTOR
GENECIN FOR SUMMARY JUDGMENT AS TO ALL COUNTS

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**.....................................1

**INTRODUCTION** ..............................................1

**STATEMENT OF FACTS**........................................4

**ARGUMENT** ...............................................13

   I.    SUMMARY JUDGMENT STANDARD........................13

   II.   THE LAUTREC IS THE PROPERTY OF THE ESTATE AS A MATTER
       OF LAW..........................................15

      A.   Maryland Law Governs Defendant's Claim of Inter
           Vivos Gift....................................15

      B.   Defendant Cannot Prove the Essential Element of
           Delivery......................................17

       1. Rita Genecin Never Relinquished her Dominion and
          Control Over the Lautrec ....................17

       2. Paul Genecin Cannot Prove Constructive Delivery
          of the Lautrec .............................19

      C.   The Undisputed Testimony Demonstrates that
           Defendant Cannot Prove that He Accepted the
           Alleged Gift..................................23

      D.   Defendant's Alleged Proof that Rita Genecin
           Intended to Make a Gift to Him of the Lautrec,
           Even if Probative, Would Be Inadmissible.......24

      E.   Defendant's January 4, 2000 Document Does Not
           Constitute Proof of Clear Intent...............28

   III. THE TWO BENEFICIARY DESIGNATIONS CONCERNING THE
       SCHWAB IRA EXECUTED BY RITA GENECIN ON THE SAME DAY
       MUST BE READ TOGETHER, ARE NOT IN CONFLICT AND ARE
       NOT AMBIGUOUS ..................................31

      A.   Contemporaneously executed documents must be
           interpreted together as one instrument........31

      B.   Alternatively, if the Court Finds that the Two
           Beneficiary Designations are Conflicting and
           Cannot Be Reconciled, Rita Genecin's Handwritten
           60%/40% Designation Governs As a Matter of
           Maryland Law..................................36

**CONCLUSION** ............................................37

i

## <u>Table of Authorities</u>

## Cases

<u>Ahern v. White</u>, 39 Md. 409 (Md., 1874) ..................32

<u>Amell v. Kucewicz</u>, 53 F.Supp.2d 145, 146-47 (D.Mass. 1999)
.......................................... 25, 31, 32

<u>Anderson v.Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)
.......................................................15

<u>Bachmann v. Glazer & Glazer</u>, 316 Md. 405, 559 A.2d 365
(Md., 1989)..........................................31

<u>Bailer v. Erie Ins. Exchange</u>, 344 Md.515, 536-537, 687 A.2d
1375 (Md., 1997)......................................35

<u>Berman v. Leckner</u>, 193 Md. 177, 182, 66 A.2d 392, 393 (Md.,
1949).................................................23

<u>Brown v. Fraley</u>, 222 Md. 480, 161 A.2d 128 (Md., 1960)...31

<u>Canaras v. Lift Truck Services, Inc.</u>, 272 Md. 337, 322 A.2d
866 (Md., 1974) ......................................36

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) ....14

<u>Chew v. Devries</u>, 240 Md. 216, 220-221, 213 A.2d 742, 744-
745 (Md., 1965) ......................................35

<u>Clark v. Meyer</u>,
188 F.Supp.2d 416, 420-21(S.D.N.Y. 2002) ..............25

<u>Dorsey v Dorsey</u>, 302 Md. 312, 318, 487 A.2d 1181, 1184
(Md., 1985).............................................15

<u>Dulany v. Taylor</u>, 105 Md.App. 619, 660 A.2d 1046
(Md.Ct.Sp.App., 1995); ...............................16

<u>Farah v. Stout</u>, 112 Md. App. 106, 684 A.2d 471 (Md.App.
1996)...................................................27

<u>Gomprecht v. Dunleer</u>, 164 Md. 653 (Md., 1933)............36

<u>Grant v. Zich</u>, 300 Md. 256, 275, 477 A.2d 1163, (Md. 1984)
.......................................................15

<u>Hamilton v. Caplan</u>, 69 Md. App. 566, 518 A.2d 1087
(Md.App.1986)...........................................27

<u>Heineman v. Bright</u>, 124 Md. App. 1,   , 720 A.2d
1182,(Md.Ct.Sp.App., 1997) ...........................16

<u>In re Chateaugay Corp.</u>, 10 F.3d 944, 957 (2d Cir. 1993)
(citation omitted) ...................................14

<u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986)
(<i>citation omitted</i>), <i>cert. denied</i>, 480 U.S. 932, 107 S. Ct.
1570, 94 L. Ed. 2d 762 (1987) ........................14

<u>Malloy v. Smith</u>, 265 Md. 460, 466, 290 A.2d 486 (Md., 1972)
.......................................................20

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S.
574, 585-86 (1986) ...................................14

<u>Metzger v. C.I.R.</u>, 38 F.3d 118, 121 (4th Cir. 1994).......20

<u>Nora Bevs., Inc. v. Perrier Group of Am., Inc.</u>, 269 F.3d
114, 123 (2d Cir.2001) ...............................25

<u>Patchell v. Groom</u>,
185 Md. 10, 15, 43 A.2d 32, 34 (Md., 1945) ...........33

<u>Pomerantz v. Pomerantz</u>, 179 Md. 436, 440, 19 A.2d 713, 715
(Md., 1941)...........................................18

<u>Prima Paint Corporation v. Ammerman</u>, 264 Md. 392, 395 (Md.,
1972).................................................36

<u>Raskin v. Wyatt</u>,125 F.3d 55, 66 (2d Cir.1997)............25

Reddy v. Mody, 39 Md. App. 675, 679, 388 A.2d 555, 559 (Md. Sp. App. 1978) ..................................................26
Robinson v. Mercantile Safe Deposit and Trust Company, 214 Md. 30, 132 A.2d 841 (Md., 1957) .......................33
Rogers v. Rogers, 271 Md. 603, 607, 319 A.2d 119,121(Md., 1974) .........16
Rosenfeld v. Basquiat, 78 F.3d 84 (2d Cir. 1996).........25
Rothman v. Silver,245 Md. 292, 226 A2d 308 (Md., 1967)...31
Rudo v. Karp, 80 Md.App. 424, 564 A.2d 100 (Md.Ct.Sp.App., 1989)...................................................16
Schifanelli v. Wallace, 271 Md. 177, 184, 315 A.2d 513 (Md., 1974)...............................................26
Schilling v. Waller, 243 Md. 271, 276, 220 A.2d 580,(Md., 1966)....................................................16
Shapiro v. Chapin, 159 Md. 418 (Md., 1930)...............36
Shenker v. Moodhe, 175 Md. 193, 197, 200 A. 727 (Md., 1938) ....................................................17
Snyder v. Crabbs, 263 Md. 28, 29, 282 A.2d 6 (Md., 1971) .26
Snyder v. Stouffer, 270 Md. 647, 650-651, 313 A.2d 497, (Md., 1974)...............................................17

**Statutes**

28 U.S.C. § 2201.......................................37
Fed. R. Civ. P. 56(c)..................................13
Fed. R. Civ. P. 56(e)..................................25
Maryland Code Annotated of Estates and Trusts § 7-102 ....15
West's Ann.Md.Code, Commercial Law, § 3-114..............36

## PRELIMINARY STATEMENT

Plaintiff Estate of Rita Genecin (the "Estate") by Victor Genecin, Personal Representative, and Defendant Victor Genecin, in his individual capacity, respectfully submit this memorandum of law in support of (1) the Estate's motion for summary judgment against defendant Paul Genecin as to the First and Second Counts of the Complaint concerning ownership of a certain lithograph by Henri de Toulouse-Lautrec, and (2) Victor Genecin's motion for summary judgment as to the Third Count fixing the percentage distribution of the Schwab IRA at 60% Victor Genecin, 40% Paul Genecin, pursuant to the decedent's beneficiary designations and Maryland law. The Estate does not take a position with respect to the percentage distribution of the Schwab IRA, but does move for a determination of that issue by summary judgment.

## INTRODUCTION

In August, 2000, after the death of Rita Genecin, and with the consent of his brother, Victor Genecin, Paul Genecin took possession of the Estate's single most valuable asset, a lithograph by Henri de Toulouse-Lautrec entitled *Partie de campagne (le Chariot anglais)*, appraised at $135,000 ("the Lautrec") for safe keeping.  After Victor

Genecin was appointed Personal Representative of the
Estate, and requested return of the Lautrec so that it
could be sold to satisfy the Estate's obligations, Paul
Genecin refused to return the Lautrec to the Estate, and
has instead asserted that he owns it, based upon a document
purporting to be a "deed of gift."  Not only is the
documentation of the alleged gift irregular on its face,
but even if it were genuine, Paul Genecin cannot establish
all of the elements of a valid *inter vivos* gift, as he is
required to do under the applicable law. After repeated
attempts to secure Paul Genecin's voluntary cooperation
failed, the Estate initiated this lawsuit to, *inter alia*,
recover the Lautrec and settle title to the Lautrec in the
Estate.  Plaintiff moved before Magistrate Judge Garfinkel
for an Order granting prejudgment replevin of the Lautrec.
In his Memorandum Decision dated September 23, 2002
(hereinafter, "Ruling"), Magistrate Judge Garfinkel granted
the Estate's motion, holding that:

> plaintiff has shown the requisite probability of
> success under governing Maryland law. Maryland
> requires Paul Genecin as putative donee to establish
> the existence of the gift by the clearest proof.
> Rogers v. Rogers, 319 A.2d 119 (Md. 1974).  He will
> encounter great difficulty proving constructive
> delivery. While his partial ownership of Rita's home

2

gives him a chance, albeit tenuous, on the issue of
physical delivery, Rita's conduct after January 4,
2002, presents a possibly insurmountable difficulty.
Constructive delivery requires that 'the donor thought
he has done all he could do to relinquish dominion and
control over the donated item.' <u>Malloy v. Smith</u>, 290
A.2d 486 (Md., 1972). Rita's execution of deeds of
gift appears inconsistent with a belief that she had
fully relinquished dominion and control over the
Lautrec.

Nothing elicited in discovery in this case is of any

assistance to the defendant in meeting his heavy burden

under Maryland law on the question of his claim of a gift.

With respect to ownership of Rita Genecin's IRA

account (the "Schwab IRA") with Charles Schwab & Company,

Inc.("Schwab"), the interpretation of two beneficiary

designation documents simultaneously executed and submitted

to Schwab is for this Court to perform as a matter of law.

There is no factual dispute regarding the existence or

content of the instructions.  No party to this proceeding

is able to offer testimony concerning what Rita Genecin

intended to do when she submitted the instructions. The

only evidence is in the documents.

Accordingly, the Court is presented with the task of

applying the law of Maryland to undisputed facts, in order

to determine how to give effect to (1) the Schwab

Institutional IRA Application Form (the "IRA Application"),

3

completed in the decedent's own handwriting, in which she
wrote the following beneficiary designations: Victor
Genecin 60%, Paul Genecin 40%, and (2) the typewritten IRA
Beneficiary Designation prepared by the decedent's counsel,
which provides for distributions "*per stirpes*," without any
percentages allocated (the "*per stirpes* designation").

## STATEMENT OF FACTS

Upon her death on August 5, 2000, Rita Genecin left
both probate and non-probate assets (mainly the Schwab
IRA).  The probate assets of the Estate include a
collection of works of art (the "works of art"), located in
the decedent's home in Baltimore, Maryland at the time of
her death.  (Complaint ¶¶14-16 & Ex. B thereto; Answer
¶¶12-14,16.)  The most valuable of the works of art is the
Lautrec, representing more than 50 percent of the total
value of the works of art. (Complaint ¶30; Paul Genecin Tr.
96; PX C.)  During the period December 1999 until just
after Rita Genecin's death, the Lautrec never left Rita
Genecin's home. (Complaint ¶¶16 & 32; Paul Genecin Tr. 25:3
- 27:10; 118-120.) Pl.R.56(a)(1)St., ¶¶7-9,11.

**The Lautrec**

After her death, Daniel Wagner, Rita Genecin's financial adviser, provided Victor Genecin and Paul Genecin with copies of documents that Rita Genecin had executed before a notary public in his office on January 12, 2000 concerning certain of the works of art. (Complaint ¶¶35-36; Answer ¶¶34-39; Paul Genecin Tr. 37, 78, PX- A12, A13, A14, A15.) Specifically, Mr. Wagner provided copies of four documents, in each of which Rita Genecin purported to grant a 1/15 interest in the Lautrec to one of the following: Paul Genecin, Victoria Morrow (Paul Genecin's wife), Gregory Genecin (Paul Genecin's son) and Samuel Genecin (Paul Genecin's son)(the "fractional share documents"). (Complaint ¶37; Answer ¶¶34-39; Paul Genecin Tr. 78, PX-A12, A13, A14, A15.) Pl.R.56(a)(1)St., ¶¶13-15.

Mr. Wagner further provided to each brother a copy of a letter addressed to Victor Genecin, also executed by Rita Genecin before a notary public in Mr. Wagner's office on January 12, 2000, in which Rita Genecin purported to make gifts to Victor Genecin of two of the works of art, lithographs by the French artist Edouard Vuillard entitled *Maternité* and *L'Avenue*, (the "Vuillards"). (Complaint ¶39; Answer ¶¶34-39.) Paul Genecin made no mention, during the

5

week of August 6, 2000, of any claim that he might have to ownership of the entire Lautrec by *inter vivos* gift. (Complaint ¶40; Paul Genecin Tr. 62.)  Pl.R.56(a)(1)St., ¶¶16, 18.

During the week of August 6, 2000, Paul Genecin sought and obtained Victor Genecin's agreement that Paul Genecin would remove all of the works of art, including the Lautrec and the Vuillards, from Rita Genecin's home to safeguard them for the Estate. (Paul Genecin Tr. 30:6-15, 61:8-62:10, Morrow Tr. 50-51.)  With Victor's consent, Paul Genecin took custody of the works of art, including the Lautrec and the Vuillards, on or about August 11, 2000 and transported them to his residence in New Haven, Connecticut.  (Complaint ¶42; Answer ¶¶41-44.) Paul Genecin purchased insurance for the works of art, effective August 11, 2000, listing all of the works of art, including the Lautrec and the Vuillards, as property of the Estate, and submitted the insurance bill to the Estate for payment.  (Complaint, ¶¶43 & Ex. B thereto; Answer ¶¶41-44; Paul Genecin Tr. 62:19-65:7.) Pl.R.56(a)(1)St., ¶¶19-22.

The first occasion on which Paul Genecin claimed to be the owner of 100% of the Lautrec was in a facsimile dated September 5, 2000 that he sent on that date to Max E.

Blumenthal, Esq., who had been retained as Baltimore counsel for the Estate. (Paul Genecin Tr. 89 ll.14-18 & PX-F.) This facsimile included a copy of a document that Paul Genecin asserted to be a deed of gift, executed January 4, 2000, in which Rita Genecin purportedly gave the Lautrec in its entirety to Paul Genecin ("the January 4, 2000 Document"). (Complaint ¶44 & Ex. C thereto; Answer ¶¶41-44; Paul Genecin Tr. 79-80, PX-F.) Pl.R.56(a)(1)St., ¶¶23-24.

On October 10, 2000, Paul wrote to Victor Genecin for the first time regarding ownership of the Lautrec (PX-I). He wrote: "I feel that the Lautrec is not in the Estate, although I cannot explain why Mother wrote four letters gifting four fifteenths to my family two days after gifting it to me in its entirety." (PX-I). The two originals of the January 4, 2000 Document are stamped with the words: "Subscribed and Sworn to before me, a Notary Public in and for County of New Haven and State of Connecticut, this 4th day of January, 2000." (PX F; PX A-1, A-2.) The stamp contains a line for a signature, upon which appears the signature of Marion P. Mulrine ("Mulrine"). Below this line appear the words "Notary Public."  A separate stamp has been applied underneath the first, reading "My Commission

Exp. Dec. 31, 2001." (PX F; PX A-1, A-2; Mulrine Tr. 16-17.) Pl.R.56(a)(1)St., ¶¶26-27.

Rita Genecin did not appear before Mulrine to sign either of the two originals of the January 4, 2000 Document. (Paul Genecin Tr. 24, 82-85; Mulrine Tr. 23-25, PX-G: Answers 1, 5.) Rita Genecin did not sign either original of the January 4, 2000 Document in the presence of Mulrine. (Paul Genecin Tr. 82-85; Mulrine Tr. 23-25; PX-G: Answers 1, 5.) She did not sign either original of the January 4, 2000 Document on January 4, 2000. (Paul Genecin Tr. 81-82.) She was not in New Haven on January 4, 2000 and she did not sign either original of the January 4, 2000 Document in New Haven. (Complaint ¶¶46-47; Answer ¶46; Paul Genecin Tr. 81-85; Mulrine Tr. 23-25; PX-G, Answers 1, 5.) Pl.R.56(a)(1)St., ¶¶29-33.

Mulrine, who works for Paul Genecin, stamped, signed and dated both originals of the January 4, 2000 Document (each of which already contained a signature above the typewritten line reading "Rita Genecin") in her capacity as a Notary Public at the request of Paul Genecin. (Complaint ¶45; Answer ¶45; Paul Genecin Tr. 80-85; Mulrine Tr. 14, 17, 23-25.) Mulrine applied her notary stamp to both

originals of the January 4, 2000 Document in New Haven on January 4, 2000. (Mulrine Tr. 18.) Pl.R.56(a)(1)St., ¶34.

Rita Genecin did not sign either original of the January 4, 2000 Document in the presence of any person other than Paul Genecin. (Paul Genecin Tr. 82; Morrow Tr. 20-21.) Defendant Paul Genecin claims that he is the owner of the Lautrec by virtue of the January 4, 2000 Document. (Complaint ¶ 80; Answer ¶80; Paul Genecin Tr. 101 l.16 – 102 l.3.) The only two documents on which Paul Genecin relies to prove an *inter vivos* gift to him by Rita Genecin of the Lautrec are the two originals of the January 4, 2000 Document. (Paul Genecin Tr. 101 l.16 – 102 l.3.) Pl.R.56(a)(1)St., ¶¶35-37.

Rita Genecin never relinquished physical possession of the Lautrec to Paul Genecin. (Paul Genecin Tr. 25 l.3 – 27 l.10; Morrow Tr. 52.) Paul Genecin never removed the Lautrec from Rita Genecin's home, and the Lautrec never left that home while Rita Genecin was alive. (Paul Genecin Tr. 118-120.)  Pl.R.56(a)(1)St., ¶¶38-41.

On January 12, 2000, eight days after Mulrine applied her stamp to the January 4, 2000 Document, Rita Genecin executed before a notary in Baltimore the fractional share documents, purporting to give a 1/15[th] interest in the

9

Lautrec to each of Paul Genecin (PX-A12, PX-E), Victoria
Morrow (PX-A13), Samuel Genecin (PX-A14), and Gregory
Genecin (PX-A15).  Pl.R.56(a)(1)St., ¶42.

On January 6, 2000, Rita Genecin went to the offices
of Daniel Wagner (WCM) and met with Wagner, David Citron
(then a vice president of WCM) and Marc J. Hertzberg, also
a WCM vice president. At that meeting, Rita Genecin stated
that, starting with 2000, she desired to make annual
fractional gifts, so as to remain within the Federal gift
tax limitations, of shares in the Lautrec to her son Paul
Genecin, his wife, and his two sons.  She asked Hertzberg
to prepare the necessary documents.  At no time in that
January 6, 2000 meeting did Rita Genecin ever state that
she had made a gift of 100% of the Lautrec to Paul Genecin.
(Wagner affidavit ¶¶3-4; Hertzberg affidavit ¶7.)
Pl.R.56(a)(1)St., ¶43.

Rita Genecin returned to WCM's offices on January 12,
2000 and met with Wagner, Citron and Hertzberg and executed
a number of documents, including the fractional share
documents, which had been prepared as a result of her
instructions in the January 6, 2000 meeting.  Again, she
never stated that she had made a gift of 100% of the
Lautrec to Paul Genecin. (Wagner affidavit ¶5; Hertzberg

10

affidavit ¶¶8-14; Sullivan affidavit ¶¶7-14.)
Pl.R.56(a)(1)St., ¶44.

**The Schwab IRA**

On October 8, 1998, at the offices of WCM, Rita
Genecin simultaneously signed two separate beneficiary
designation documents. One, a Schwab Institutional IRA
Application Form ("IRA Application Form") completed in her
handwriting, instructs that the division of the Schwab IRA
shall be 60% to Victor Genecin and 40% to Paul Genecin. The
other, a typed document, directs the account to be
distributed to Rita Genecin's descendents who survive her,
"*per stirpes*." The "*per stirpes*" designation was silent as
to the percentage each descendent was to receive upon her
death. (PX-R; Sullivan affidavit ¶¶3-5; Wynne affidavit
¶¶3-12.) Rita Genecin's IRA Application Form and the "per
stirpes" document were simultaneously received by Schwab on
October 20, 1998.  (Complaint ¶56 & Exhibit D; PX-R; Wynne
Affidavit ¶¶3-12; Paul Genecin Tr. 199-201 Victor Genecin
Tr. 26-27.) Pl.R.56(a)(1)St., ¶¶53, 56-57, 60-61.

The IRA Application Form contains a page for the
applicant to designate the names and addresses of
beneficiaries to receive the contents of the account, and
to designate the percentages of the account such

11

beneficiaries are to receive (the "Schwab Beneficiary Designation"). On that form, Rita Genecin listed Victor and Paul Genecin as her beneficiaries. To the right of Victor's social security number and the description "son" she wrote the value 60%. To the right of Paul's social security number and the description "son", she wrote the value 40%. (PX-R; Wynne affidavit ¶¶3-12 and Exhibit A thereto.) Pl.R.56(a)(1)St., ¶¶57-58.

On October 21, 1999, Rita Genecin executed a document in connection with the Schwab IRA captioned "IRA Beneficiary Designation Supplement." (PX-S; Hertzberg affidavit ¶3.) Schwab received the "IRA Beneficiary Designation Supplement" on October 29, 1999. (PX-S; Wynne affidavit ¶¶27-29.) When Hertzberg sent the executed "IRA Beneficiary Designation Supplement" to Schwab, he also transmitted therewith the "per stirpes" designation witnessed by Blumenthal on October 6, 1998, the original of which Hertzberg found in the file of Wagner Capital Management on or about October 21, 1999. Hertzberg sent the October 6, 1998 "*per stirpes*" document to Schwab without informing Rita Genecin that he was doing so. (PX-S; Hertzberg affidavit ¶5; Victor Genecin Tr. 29-30.) Pl.R.56(a)(1)St., ¶¶62-63.

On December 20, 2000, Schwab's Office of Corporate Counsel sent a letter to Victor Genecin and Ms. Priest, confirming that Rita Genecin had provided Schwab with 1) an IRA Application dated October 8, 2000 that allocated 60% of the account to Victor Genecin and 40% of the account to Paul Genecin, as well as 2) a non-Schwab form entitled "IRA Beneficiary Designation" that provided for distribution "per stirpes". In that letter, counsel for Schwab stated that Schwab would not allocate the balance of Rita Genecin's IRA absent either a court order or signed and notarized letters of authorization from both Victor Genecin and Paul Genecin.  (Wynne affidavit 13 & 27-29 and Exhibit H thereto; PX-R.) Pl.R.56(a)(1)St., ¶73.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Although the Court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw

13

reasonable inferences against the moving party." In re
Chateaugay Corp., 10 F.3d 944, 957 (2d Cir. 1993) (citation
omitted).  However, the opposing party may not rely on
"mere speculation or conjecture as to the true nature of
the facts to overcome a motion for summary judgment."
Knight v U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)
(citation omitted), cert. denied, 480 U.S. 932, (1987).
Once the moving party has properly supported a summary
judgment motion, the party opposing the motion must
establish a genuine issue of material fact in order to
preclude summary judgment.  Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  Summary
judgment should be entered against a party that fails to
make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that
party will bear the burden of proof at trial. "In such a
situation, there can be 'no genuine issue as to any
material fact,' since a complete failure of proof
concerning an essential element of the adverse party's case
necessarily renders all other facts immaterial." Celotex
Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the
disputed evidence "is merely colorable, or is not
significantly probative, summary judgment may be granted."

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

## II.  THE LAUTREC IS THE PROPERTY OF THE ESTATE <u>AS A MATTER OF LAW</u>

### A. Maryland Law Governs Defendant's Claim of Inter Vivos Gift

The Estate seeks summary judgment as to its action for a declaratory judgment pursuant to Maryland Code Annotated of Estates and Trusts § 7-102 that it is the owner of the Lautrec, which defendant admits hung in Rita Genecin's house in Baltimore, Maryland until she died

Maryland law governs the question whether Rita Genecin made a valid *inter vivos* gift of the Lautrec.[1]  Under that law, the party claiming that it received a gift has the burden of establishing all the elements of a gift. <u>Dorsey v Dorsey</u>, 302 Md. 312, 318, 487 A.2d 1181, 1184 (Md., 1985); <u>Grant v. Zich</u>, 300 Md. 256, 275, 477 A.2d 1163, (Md. 1984). Indeed, the putative donee must "establish the existence of the gift by the clearest proof."  <u>Ruling</u> at 2, <u>citing</u>

---

[1]   Plaintiff's Motion for Prejudgment Replevin was briefed by both parties and decided by Magistrate Judge Garfinkel under Maryland law.  Paul Genecin claims that the gift was made by means of delivery to him, not of the property itself, but of the January 4, 2000 Document, which was allegedly delivered in Maryland. The Lautrec remained in Maryland at the time that the gift was allegedly made, and continued to be located there until after Rita Genecin's death.

15

Rogers v. Rogers, 271 Md. 603, 607, 319 A.2d
119,121(Md.1974).  The highest court in Maryland has
repeatedly emphasized that, when an alleged donor is dead,
this heavy burden on one who claims a gift is necessary "in
order to diminish the possibility of fraudulent claims."
Id.; Schilling v. Waller, 243 Md. 271, 276, 220 A.2d 580,
(Md., 1966).

     For an *inter vivos* gift to be valid under Maryland
law, three elements must be established by the clearest
proof: 1) clear intent on the part of the donor to transfer
the property; 2) delivery by the donor; and 3) acceptance
by the donee.  Dorsey, 302 Md. at 318, 487 A.2d at 1184;
Rogers, 271 Md. at 607, 319 A.2d at 121; *see* Heineman v.
Bright, 124 Md. App. 1, 13, 720 A.2d 1182,(Md.Ct.Sp.App.,
1997); Dulany v. Taylor, 105 Md. App. 619, 660 A.2d 1046
(Md.Ct.Sp.App. 1995); Rudo v. Karp, 80 Md. App. 424, 564
A.2d 100 (Md.Ct.Sp.App., 1989).  If Paul Genecin is unable
to establish any one of the three essential elements that
he must prove, then the Estate is entitled to a judgment
that it is the owner of the Lautrec.  In this case, the
undisputed evidence demonstrates that Paul Genecin cannot
submit evidence proving even one of the required elements.

**B. Defendant Cannot Prove the Essential Element of Delivery**

      **1.   Rita Genecin Never Relinquished her Dominion and Control Over the Lautrec**

Maryland law is crystal clear that the validity of an alleged gift depends upon the legal sufficiency of the delivery. <u>Shenker v. Moodhe</u>, 175 Md. 193, 197, 200 A. 727 (Md., 1938); <u>Hamilton v. Caplan</u>, 69 Md. App. 566, 573, 518 A.2d 1087, 1090 (Md.App.1986). Effective delivery transfers "the donor's dominion over the property without power of revocation or retention of dominion over the subject of the gift." <u>Dorsey</u>, 302 Md. at 318, 487 A.2d at 1184; <u>Rogers</u>, 271 Md. at 607, 319 A.2d at 121-22 ("There cannot be reserved to the donor a *locus poenitentiae*, which is a power to revoke the gift or a dominion over the subject of the gift."); <u>Snyder v. Stouffer</u>, 270 Md. 647, 650-651, 313 A.2d 497, (Md., 1974). Delivery may be actual or constructive, but must, in either case, place the gifted property beyond the dominion and control of the donor and within the dominion and control of the donee. <u>Id</u>. The gifted property must be "wholly under the donee's power." <u>Dulany v. Taylor</u>, 105 Md.App. 619, 632 660 A.2d 1046, 1053 (Md.Ct.Sp.App. 1995); <u>Hamilton</u>, 69 Md. App. at 573, 518 A.2d at 1090. In sum, "the donor must have done everything which it was possible for [her] to do in order to complete

17

and perfect the gift." <u>Pomerantz v. Pomerantz</u>, 179 Md. 436, 440, 19 A.2d 713, 715 (Md., 1941).

There is absolutely no dispute in this case that the Lautrec continued to hang on the wall in Rita Genecin's living room in Baltimore, Maryland until she died. She did not, "in any manner or by any means change [her] property from the place where it was or the condition or manner in which [she] possessed it." <u>Shenker</u>, 175 Md. at 197, 200 A. at 730. Such non-delivery is inconsistent with an *inter vivos* gift under Maryland law. <u>Id</u>. There can be no clearer demonstration of a putative donor reserving to herself the power to revoke an alleged gift than Rita Genecin's conduct on January 6, 2000 and on January 12, 2000. Whether or not she knew, as Paul Genecin now claims, that Paul was procuring false notarizations on January 4, 2000 on his documents concerning the Lautrec, on January 6, 2000 Rita Genecin was meeting with her financial advisers in order to make a different arrangement for ownership of the Lautrec. Then, on January 12, 2000, she executed the four fractional share documents. Pl. R. 56(a)(1) St. ¶18; PX-A12 through A15. Either Rita Genecin had no knowledge of the January 4, 2000 Document(which allegedly caused ownership to vest fully in Paul), or she believed that she could revoke it at

any time, because she had not actually given, *i.e.,* delivered, the Lautrec to Paul.

Paul Genecin admits that there is no explanation for the fractional share documents that can be reconciled with his assertion of ownership of the Lautrec.  Pl. R. 56(a)(1) St. ¶26 & PX-I ("I feel that the Lautrec is not in the Estate, although I cannot explain why Mother wrote four letters gifting four fifteenths to my family two days after gifting it to me in its entirety."). There is thus no dispute that Rita Genecin, with the Lautrec still in her home, under her dominion and control, continued to act as the owner of the Lautrec, and not as if it were the property of anyone else.  The lithograph was not wholly, nor yet even partly, under the putative donee's power.

## 2.    Paul Genecin Cannot Prove Constructive Delivery of the Lautrec

Conceding that he cannot establish physical transfer of the Lautrec, defendant argued in opposition to plaintiff's motion for prejudgment replevin that Rita Genecin made a constructive delivery of the Lautrec to him when she made a deed to her home in which she made not only Paul Genecin a joint tenant, but also his brother Victor. If the concept of constructive delivery had any application

to this case, then Victor would get an equal share under
the same logic.

As the Maryland courts have repeatedly observed,
however,

> [t]he cases in which constructive delivery has
> been found involved circumstances where the donor
> thought he had done all he could do to relinquish
> dominion and control over the donated item.

Malloy v. Smith, 265 Md. 460, 466, 290 A.2d 486 (Md.,
1972)(cited in Ruling at 2); Dulany, 105 Md.App. at 632,
660 A.2d at 1053; Hamilton, 69 Md. App. at 573, 518 A.2d at
1090. Rita Genecin's execution of the four fractional
share documents on January 12, 2000 is an undisputed fact
that demonstrates her belief that, far from having
relinquished dominion and control over the Lautrec, she
continued to be able to dispose of it as she pleased. *See*
Metzger v. C.I.R., 38 F.3d 118, 121 (4th Cir. 1994)("a gift
is incomplete in every instance in which a donor reserves
the power to revest the beneficial titles to the property
in himself")(interpreting gift tax regulations and Maryland
law).

It is undisputed, moreover, that Rita Genecin executed
the new deed to her home, making herself and her two sons
joint tenants, on the very same day, and in the very same

20

meeting with her financial advisers, when she executed the four fractional share documents. Even assuming, *arguendo*, that the January 4, 2000 Document were genuine, and even assuming, again *arguendo*, that a change in the ownership of real property might in some circumstances effect a constructive delivery of property located inside, Rita Genecin changed the ownership of her home at the same time as she revoked the January 4, 2000 Document, reallocating 11/15ths of the Lautrec to herself. Thus, Rita Genecin changed the title to her house at the same time as she asserted her continued title to the Lautrec. The change in title to the house, it should also be noted, left Rita Genecin, who lived there, with continued, unfettered, access to and control over the Lautrec.

It must also be remembered that the Lautrec is a work of art on paper, in a frame, easily carried and transported. The concept of constructive delivery, however, "evolved from the gift of items too difficult to deliver physically, such that the only way to deliver the item was symbolically." Dulany, 105 Md.App. at 632; 660 A.2d at 1053; Hamilton, 69 Md.App. at 574; 518 A.2d at 1091.[2] Constructive delivery, without physical transfer of

---

[2] The cases collected in Hamilton, *loc.cit.*, are instructive, as they involve gifts of such things as bank

possession, is permitted only "where from the very nature of the subject of the gift it may not be transferred or delivered in kind." <u>Shenker</u>, 175 Md. at 197, 200 A. 727. "A constructive as well as an actual delivery must be such as to completely divest the donor of his property and as to completely invest the donee with it." <u>Id</u>. Defendant has no such proof of delivery. Rather, he proffers Rita Genecin's deed converting the ownership of her home to a joint tenancy, which is completely ineffective as a constructive delivery, together this testimony:

> Q.   And how did she physically deliver the Lautrec to you?
> A.   She said, "You have to take this to your house."  I said, "At some point I will."

Paul Genecin Tr., 118:18-25.[3]  To make a valid constructive delivery, however:

---

accounts (by the delivery of passbooks or of keys to locked containers containing passbooks) and the contents of safe deposit boxes (by delivering the key together with an order to the bank).  In these cases, exclusive access was relinquished by the donor and conferred upon the donee.  In the instant case, by contrast, not only did Rita Genecin retain full access to the Lautrec after she changed the ownership of her home, but she conferred the joint tenancy on both Paul and Victor Genecin. If Paul Genecin's argument based on the transfer of ownership of Rita Genecin's home had any merit (and it does not) it would result, in any case, in joint ownership of the Lautrec in equal shares with his brother.
[3] As argued below in Point II.D., this testimony is barred under the Maryland Dead Man's Statute.  It is also inadmissible hearsay.

> the donor must not only use words showing
> donative intent, but the words used must divest
> the owner of dominion and control over the
> donation, and place the donation wholly under the
> donee's power.

Dulany, 105 Md.App. at 632; 660 A.2d at 1053-54; Hamilton,

69 Md.App. at 573; 518 A.2d at 1091. The most that

defendant can say for his proffered testimony is that it

shows that Rita Genecin "attempted to surrender or

relinquish control of" the Lautrec, but not that defendant

received it or assumed dominion over it. *See* Shenker, 175

Md. at 197, 200 A. 727.  It is essential to the validity of

an *inter vivos* gift "that the transfer of both possession

and title shall be absolute and shall go into immediate

effect." Berman v. Leckner, 193 Md. 177, 182, 66 A.2d 392,

393 (Md., 1949).  The law of Maryland is clear that

> the requirement of actual delivery is the only
> substantial protection, and the court should not
> weaken it by permitting the substitution of
> convenient and easily-proven devices.

Shenker, 175 Md. at 197, 200 A. 727.  Defendant's inability

to prove the element of delivery mandates summary judgment

in favor of the Estate.

### C. The Undisputed Testimony Demonstrates that Defendant Cannot Prove that He Accepted the Alleged Gift

As previously noted, under Maryland law a putative

donee has the burden of establishing each element of an

*inter vivos* gift by clear and convincing evidence.  The

23

undisputed evidence, however, is that defendant did not
"receive it or assume dominion of it," Shenker, 175 Md. at
197, 200 A. 727, for as long as Rita Genecin was alive.
Paul Genecin admits, moreover, that he did not assert any
claim that he was sole owner of the Lautrec when he was in
Baltimore with Victor Genecin after Rita Genecin died.
Pl.R.56(a)(1)St., ¶¶18, 23, 26.  To the contrary, Paul
Genecin took physical possession of the Lautrec after Rita
Genecin's death, only as bailee of the Estate, based on his
representation that he could keep the Lautrec and the
Estate's other works of art safe.  He then purchased
insurance for the Lautrec, listing the Estate as the owner,
and sent the insurance bill to the Estate (a very powerful
admission).  On these undisputed facts, summary judgment
should be granted for the Estate because defendant cannot
prove the essential element of acceptance.

D.    **Defendant's Alleged Proof that Rita Genecin
      Intended to Make a Gift to Him of the Lautrec, Even
      if Probative, Would Be Inadmissible**

Paul Genecin is the only person who can authenticate
the January 4, 2000 document or testify to the
circumstances in which it was created and given to him.
Pl.R.56(a)(1)St., ¶¶30, 35.  He and his wife Victoria
Morrow, moreover, are the only witnesses to what they claim
were oral expressions by Rita Genecin of intent to give the

24

entire Lautrec to Paul. This testimony would be barred at trial pursuant to the Maryland "Dead Man's Statute," Md. Code Cts. & Jud. Proc. Art., § 9-116, and, consequently, cannot be considered by this Court as raising any issue of fact on this motion for summary judgment.

Federal Rule of Evidence 601 provides that in actions in which state law supplies the rule of decision, that state's law with respect to the competency of witnesses, including the state's Dead Man's Statute, must be applied. Rosenfeld v. Basquiat, 78 F.3d 84 (2d Cir. 1996). In determining motions for summary judgment, the District Court may consider only admissible evidence. Fed. R. Civ. P. 56(e); Nora Bevs., Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 123 (2d Cir.2001); Raskin v. Wyatt, 125 F.3d 55, 66 (2d Cir.1997). Accordingly, the federal rules mandate exclusion of evidence on summary judgment motions that would be excluded at trial pursuant to the relevant state Dead Man's Statute. Clark v. Meyer, 188 F.Supp.2d 416, 420-21(S.D.N.Y. 2002); Amell v. Kucewicz, 53 F.Supp.2d 145, 146-47 (D.Mass. 1999). In determining the instant motion, therefore, this Court should exclude all testimony of Paul Genecin and Victoria Morrow concerning the putative gift of the Lautrec.

25

Maryland's Dead Man's Statute provides:

> A party to a proceeding by or against a personal
> representative, heir, devisee, distributee, or
> legatee as such, in which a judgment or decree
> may be rendered for or against them, or by or
> against an incompetent person, may not testify
> concerning any transaction with or statement made
> by the dead or incompetent person, personally or
> through an agent since dead, unless called to
> testify by the opposite party, or unless the
> testimony of the dead or incompetent person has
> been given already in evidence in the same
> proceeding concerning the same transaction or
> statement.

Md. Code Cts. & Jud. Proc. art., § 9-116.  The courts of
Maryland hold that the general purpose of this statute is
to impose silence upon interested parties as to
transactions with or statements by the decedent.  Snyder v.
Crabbs, 263 Md. 28, 29, 282 A.2d 6 (Md., 1971).  The
statute requires those who would assert claims against a
decedent's estate to produce testimony from disinterested
persons.  Reddy v. Mody, 39 Md. App. 675, 679, 388 A.2d
555, 559 (Md. Sp. App. 1978).  The underlying goal of this
law is "preventing self-interested perjury."  Reddy, 39
Md.App. at 679, 388 A.2d at 559.  The test for determining
whether there has been a "transaction" within the meaning
of the Maryland Dead Man's statute is "[w]hether, in case
the witness testify falsely, the deceased, if living, could

contradict it of his own knowledge." <u>Schifanelli v. Wallace</u>, 271 Md. 177, 184, 315 A.2d 513 (Md., 1974).

Accordingly, as the claimant of the Lautrec, Paul Genecin is barred by the Dead Man's Statute from: (1) authenticating the January 4, 2000 document; (2) testifying as to the manner in which he claims this document was given to him by Rita Genecin; and, (3) testifying concerning any statement he claims Rita Genecin made to him about either the January 4, 2000 document or about the claimed "gift" of the Lautrec. *See* <u>Farah v. Stout</u>, 112 Md. App. 106, 684 A.2d 471 (Md.App. 1996); <u>Hamilton v. Caplan</u>, 69 Md. App. 566, 518 A.2d 1087 (Md.App.1986).

Defendant's wife, Victoria Morrow, has testified that she has no knowledge concerning the January 4, 2000 Document.  Therefore, to the extent that defendant relies upon that document to establish donative intent, his wife is of no help to him.  To whatever extent defendant may now seek to offer his wife's testimony concerning oral statements by Rita Genecin to establish the intent to make a gift to him of 100% of the Lautrec, such testimony is also barred by the Dead Man's Statute. Although not joined as a party, Morrow is clearly a real party in interest. Pl.R.56(a)(1)St., ¶¶51-52.  Indeed, she testified that she

27

currently has her husband's authorization to direct the actions of counsel on his behalf. Thus, her testimony, too, cannot be offered by defendant to establish the intent element that he must prove.

Defendant's lack of competent proof on the essential element of donative intent constitutes a third independent and adequate ground on which summary judgment should be granted for the Estate.

### E. Defendant's January 4, 2000 Document Does Not Constitute Proof of Clear Intent

Even if defendant's incompetent testimony concerning Rita Genecin's alleged donative intent were considered, no reasonable fact-finder could conclude that defendant had met his burden under Maryland law of proving, by clear and convincing evidence, that the donor "clearly and unmistakably intended to permanently relinquish all interest in, and control over the gift." Dorsey, 302 Md. at 318, 487 A.2d at 1184; Schilling, 243 Md. at 276-77, 220 A.2d 580; Rudo v. Karp, 80 Md. App. 424, 430, 564 A.2d 100, 103 (Md.Ct.Sp.App., 1989)(italicizing the words *"clearly,"* *"unmistakably"* and *"permanently"*). Defendant lacks such proof.

28

The proof that Rita Genecin intended to make a gift to Paul Genecin of 100% of the Lautrec reposes entirely upon the January 4, 2000 Document, together with Paul Genecin's testimony, and that of his wife, concerning oral statements by Rita Genecin. If we assume, *arguendo*, that the two originals of the January 4, 2000 Document were, in fact, signed in Baltimore by Rita Genecin some days before January 4, 2000, as Paul Genecin claims, such a scenario would not demonstrate a clear intent on Rita Genecin's part to transfer the property.[4] Paul Genecin's proof that Rita Genecin intended to make a gift to Paul of 100% of the Lautrec -- the most valuable single item she owned -- is clouded by the fact that this alleged donative intent was not disclosed by Rita Genecin to her financial advisers. To the contrary, on January 6, 2000, *i.e.*, just two days after the date on the January 4, 2000 Document, Rita Genecin met with her financial advisers concerning financial and estate-planning matters. In that meeting, she and her advisers discussed how to make gifts of the Lautrec to Paul and his family within the federal gift tax restrictions. She asked Marc J. Hertzberg, one of her financial advisers, to prepare the necessary documents,

_____

[4] Victor Genecin does not concede the truth of any aspect of Paul's current version of how he obtained the January 4, 2000 Document.

29

which are referred to herein as the fractional share
documents.  On January 12, 2000, she returned to her
financial advisers' offices to execute the fractional share
documents, together with others relevant to this case.
Pl.R.56(a)(1) St., ¶44.  Neither on January 6, 2000, nor on
January 12, 2000, nor at any time thereafter, did Rita
Genecin tell her financial advisers that she had already
made a gift of 100% of the Lautrec to Paul, nor did she
ever provide them with a copy of the January 4, 2000
Document.  Pl.R.56(a)(1) St., ¶¶43-44.

        These facts show that just two days after the date on
the January 4, 2000 Document, Rita Genecin was taking
actions demonstrating that she did not believe that she had
relinquished all interest in and control over the Lautrec.
Her conduct, as demonstrated by uncontroverted evidence,
was utterly inconsistent with the proposition, which Paul
Genecin must prove, that Rita Genecin "*clearly* and
*unmistakably* intended *permanently* to relinquish all
interest in, and all control over" 100% of the Lautrec.
<u>Rudo</u>, 80 Md. App. at 430, 564 A.2d at 103.[5]  Defendant's
failure of proof on the element of intent constitutes a

---

[5] The fractional share documents, moreover, together with
the gift letter to Victor Genecin that Rita Genecin
executed the same day, demonstrate that Rita Genecin
understood how to cause properly-acknowledged deeds of gift
to be prepared, and, further, that she had no difficulty
appearing before a notary to execute such documents.

final, independent ground, on which summary judgment should
be granted for the Estate.

In this case, to establish that the Lautrec is not the
property of the Estate of Rita Genecin, defendant Paul
Genecin must prove, by clear and convincing evidence, all
three elements -- donative intent, delivery and acceptance
-- of an *inter vivos* gift under Maryland law. His failure
to prove any one of these elements is fatal to his claim.
The undisputed facts demonstrate that Paul Genecin, in
fact, cannot prove any of the necessary elements.
Accordingly, the Estate of Rita Genecin is entitled, as a
matter of law, to a declaratory judgment, confirming that
the Lautrec is, in its entirety, the lawful property of the
Estate.

## III. THE TWO BENEFICIARY DESIGNATIONS CONCERNING THE SCHWAB IRA EXECUTED BY RITA GENECIN ON THE SAME DAY MUST BE READ TOGETHER, ARE NOT IN CONFLICT AND ARE NOT AMBIGUOUS

### A.    Contemporaneously executed documents must be interpreted together as one instrument

Under Maryland law, when two or more documents,
executed contemporaneously, constitute part of the same
transaction or of the same subject matter, they must be
interpreted together as a single instrument. See Bachmann
v. Glazer & Glazer, 316 Md. 405, 559 A.2d 365 (Md., 1989);

31

Rothman v. Silver, 245 Md. 292, 226 A, 2d 308 (Md., 1967); Brown v. Fraley, 222 Md. 480, 161 A.2d 128 (1960); Ahern v. White, 39 Md. 409 (Md., 1874). In this case, Rita Genecin executed two beneficiary designation documents for her Schwab IRA account on the same day. One document sets forth the percentage of the account that each beneficiary is to receive, namely 60% thereof to Victor Genecin and 40% thereof to Paul Genecin; the other document instructs that the IRA account be distributed to Rita Genecin's descendants, who survive her, "per stirpes." The second document makes no reference to amounts or percentages to be distributed.  As these documents were executed and submitted to Schwab contemporaneously, they must be interpreted as a single instrument in accordance with Maryland case law. Id.

Read together, there is no ambiguity, let alone any conflict, between the two documents.  Each document addresses certain distinct issues, while the two documents together provide a consistent beneficiary designation.  The handwritten numerical designations on the Schwab IRA application form clearly establish the percentages that each beneficiary is to receive, while the typewritten

32

document sets forth the manner in which those percentages
are to be treated, namely, "*per stirpes*."

The Latin term *per stirpes* does not, in itself,
designate the proportions in which devisees are to take
property; rather, the term designates the manner in which
specified property is to pass to descendants of the
devisor.  Robinson v. Mercantile Safe Deposit and Trust
Company, 214 Md. 30, 132 A.2d 841 (Md., 1957); Patchell v.
Groom, 185 Md. 10, 15, 43 A.2d 32, 34 (Md., 1945).   Under
Maryland law,

> a *stirps* is a root of inheritance; it designates
> the ancestor from whom the heir derives title;
> and it necessarily presupposes the death of the
> ancestor. When issue are said to take *per
> stirpes*, it is meant that the descendants of a
> deceased person take the property to which he was
> entitled, or would have been entitled if living.

Patchell, 185 Md. at 15, 43 A.2d at 34.

In Maryland, when the words "*per stirpes*" are used
alone in reference to a bequest of property, they are
deemed to mean that decedent's property is divided in equal
shares by the number of children the decedent had,
"[u]nless a contrary intention expressly appears," and, if
any child predeceases the decedent, that child's share will
pass to his or her children. West's Ann.Md.Code, Estates
and Trusts § 1-210.1.  This understanding of the law is set

forth in Max E. Blumenthal, Esq.'s September 29, 1998
letter to Rita Genecin enclosing the *per stirpes*
designation that he had prepared for her.  (Sullivan Aff.
Exhibit C.)  Standing alone, the *per stirpes* designation
would provide for a distribution of the Schwab IRA in equal
shares to Victor Genecin and Paul Genecin.  The *per stirpes*
designation, however was prepared prior to Rita Genecin
filling out the handwritten designation in the Schwab
application, which specifically sets forth the percentages
of the IRA that she desired her sons to receive.

Under these circumstances, "*per stirpes*" reference in
the typewritten document defines how the percentages
detailed in the handwritten application would have flowed
in the event that either Victor Genecin or Paul Genecin had
predeceased Rita Genecin.  The "*per stirpes*" reference here
requires that, if one brother should predecease Rita
Genecin, his designated percentage interest would pass to
his descendants, and not to the surviving brother.[6]

The "*per stirpes*" designation, therefore, has the
legal effect of supplying an instruction concerning a

---

[6] Although the parties have in this case characterized the
*per stirpes* designation as a 50/50 split (and that may be
correct when considering the *per stirpes* designation
alone), the interplay of the 60/40 designation with the *per
stirpes* designation yields a split of 60/40 with no right
of survivorship.

question that otherwise would have been covered by a
default provision in the boilerplate of the Schwab IRA
application.  The Schwab application form specifies that,
if no other provision is made, and one of the named
beneficiaries should predecease the account holder, the
survivor would take the whole account.  Wynne Aff. Exhibit
A.  Paul Genecin certainly does not argue that Rita Genecin
would have wished, in the event that one of her sons should
predecease her, to disinherit that son's children in favor
of the surviving brother.  When the two documents are read
together as a single instrument, as required by Maryland
law, each document is given full effect if Rita Genecin's
IRA account is distributed 60% to Victor Genecin, or his
descendants, and 40% to Paul Genecin, or his descendants.

     If there were even a hint of any ambiguity here,
Maryland law requires that:

> where two provisions of a contract are in
> conflict they must, if possible, be construed to
> effectuate the intention of the parties as
> collected from the whole instrument. If a
> reconciliation can be effected by a reasonable
> interpretation, such interpretation should be
> given to the apparently repugnant provisions,
> rather than nullify any.

Chew v. Devries, 240 Md. 216, 220-221, 213 A.2d 742, 744-
745 (Md., 1965); *see also* Bailer v. Erie Ins. Exchange, 344
Md.515, 536-537, 687 A.2d 1375 (Md., 1997)(*dissenting*

35

*opinion*)(competing insurance policy provisions); <u>Canaras v.
Lift Truck Services, Inc.</u>, 272 Md. 337, 322 A.2d 866 (Md.,
1974).

Any result other than the 60/40 division in the Schwab
application form would require the Court to ignore and/or
nullify the handwritten designation.

**B.  Alternatively, if the Court Finds that the Two
    Beneficiary Designations are Conflicting and Cannot
    Be Reconciled, Rita Genecin's Handwritten 60%/40%
    <u>Designation Governs As a Matter of Maryland Law</u>**

The issue of a conflict between handwritten numbers
and typewritten or printed text arises often in connection
with negotiable instruments.  "If an instrument contains
contradictory terms, typewritten terms prevail over printed
terms, handwritten terms prevail over both, and words
prevail over numbers."  West's Ann.Md.Code, Commercial Law,
§ 3-114; <u>see also</u> <u>Prima Paint Corporation v. Ammerman</u>, 264
Md. 392, 395 (Md., 1972); <u>Gomprecht v. Dunleer</u>, 164 Md. 653
(Md., 1933); <u>Shapiro v. Chapin</u>, 159 Md. 418 (Md., 1930).
The policy behind this rule is clearly to construe
ambiguous terms consistently with the maker's intent.  Rita
Genecin's handwritten beneficiary designation, providing
60% percent to Victor Genecin and 40% to Paul Genecin,
should therefore prevail over the typewritten document.

## CONCLUSION

For the reasons set forth in Point II above, plaintiff the Estate of Rita Genecin respectfully requests an Order of this Court, pursuant to Fed. R. Civ. P. 56, granting summary judgment in favor of the Estate as to the First and Second Counts stated in the Complaint. The Estate takes no position concerning the percentages of the Schwab IRA that should be allocated to Victor and Paul Genecin; however, the Estate does urge the Court to enter a final judgment on the Third Count, pursuant to 28 U.S.C. § 2201, fixing the percentages and adjudicating the rights of the interested parties as a matter of law, based on the governing documents and Maryland law.

For the reasons set forth in Point III above, defendant Victor Genecin respectfully requests, pursuant to Fed. R. Civ. P. 56, an order granting summary judgment, on the Third Count of the Complaint, seeking a declaratory judgment, pursuant to 28 USC § 2201, fixing the percentages to which Victor Genecin and Paul Genecin are entitled in the distribution of the Schwab IRA, and adjudicating the rights of the interested parties to the Schwab IRA as follows: Victor Genecin 60%, Paul Genecin 40%.

December 29, 2003

THE PLAINTIFF,
ESTATE OF RITA GENECIN, BY VICTOR
GENECIN, Personal Representative


By:_____
 David T. Grudberg, ct01186
 JACOBS, GRUDBERG, BELT & DOW, P.C
 350 Orange Street
 P.O. Box 606
 New Haven, CT  06503
 Ph.: (203) 772-3100
 Fax: (203) 772-1691
 Email: dgrudberg@jacobslaw.com


By: _____
 Richard L. Mattiaccio, ct24592
 Pavia & Harcourt LLP
 600 Madison Avenue
 New York, NY  10022
 Ph.: (212) 508-2311
 Fax: (212) 735-7911
 Email: RMattiaccio@pavialaw.com


DEFENDANT, VICTOR GENECIN, IN HIS
INDIVIDUAL CAPACITY


By: _____
 Richard L. Mattiaccio, ct24592
 Pavia & Harcourt LLP
 600 Madison Avenue
 New York, NY  10022
 Ph.: (212) 508-2311
 Fax: (212) 735-7911
 Email: RMattiaccio@pavialaw.com

<u>Certification</u>

The undersigned hereby certifies that a copy of the Memorandum of Law in Support of Motion of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin for Summary Judgment as to All Counts was mailed first class, postage pre-paid, on December 29, 2003 to:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue,
Durham & Noonan, P.C.
741 Boston Post Rd.
Guilford, CT 06437


Victor Genecin, Esq.
Richard L. Mattiaccio, Esq.
Pavia & Harcourt, LLP
600 Madison Ave.
New York, N.Y. 10022


_____
David T. Grudberg