UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF RITA GENECIN, by | : | |
| VICTOR GENECIN, Personal | : | |
| Representative, | : | |
| Plaintiff, | : | |
| | : | CIVIL NO.3:01CV00211(MRK) |
| VS. | : | |
| | : | |
| | : | |
| PAUL GENECIN and VICTOR GENECIN, | : | JANUARY 21, 2004 |
| in his individual capacity, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION
OF DEFENDANT PAUL GENECIN FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**......................................1

**INTRODUCTION** ............................................1

**COUNTER-STATEMENTS OF FACTS** .............................2

**ARGUMENT** ..............................................11

I.   Paul Genecin Lacks Admissible Proof of his Claim
     because his Testimony is Barred by the Maryland Dead
     Man's Statute. . . . . . . . . . . . . . . . . . . 11

II.  Defendant has no evidence to satisfy the requirement
     that he prove the essential element of delivery. . .15

     A.   Paul Genecin asserts contradictory facts in
          support of conflicting theories, obviating the
          clear and convincing showing that the law
          requires him to make. ........................15

     B.   Defendant cannot show "constructive delivery"
          under Maryland Law. ..........................17

     C.   Delivery of the January 4, 2000 document, even if
          it could be proven, does not constitute
          "constructive delivery" under Maryland law.....21

     D.   Defendant cannot establish that delivery of the
          Lautrec was "impracticable." .................25

     E.   Rita Genecin's Re-Deeding of her Residence to
          Herself, Victor and Paul did not Effectuate a
          Delivery of the Lautrec. .....................27

     F.   Paul's Belated Claim Under the Fractional Share
          Documents Should be Dismissed.................28

   III. SUMMARY JUDGMENT SHOULD BE GRANTED AWARDING 60% OF
        RITA GENECIN'S SCHWAB IRA TO VICTOR GENECIN AND 40%
        TO PAUL GENECIN. ...............................29

**CONCLUSION** ..........................................32

## Table of Authorities

**Cases**

Ahern v. White, 39 Md. 409 (Md., 1874) ..................32

Amell v. Kucewicz, 53 F.Supp.2d 145, (D.Mass. 1999)......12

Bachmann v. Glazer & Glazer, 316 Md. 405, 559 A.2d 365
    (Md., 1989)..........................................32

Berman v. Leckner, 193 Md. 177, 66 A.2d 393 (Md., 1949) ..19

Brookes v. Mitchell, 163 Md.1, 161 A.261 (Md., 1932).....18

Brown v. Fraley, 222 Md. 480, 161 A.2d 128 (1960)........32

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91
    L.Ed.2d 265 (1986) ..................................14

Clark v. Meyer, 188 F.Supp.2d 416 (S.D.N.Y. 2002)........12

Cox v. Hill, 6 Md. 274, 1854 WL 2426 (Md. 1854)..........18

Dorsey v. Dorsey, 302 Md. 312, 487 A.2d 1181 . 15, 16, 18,19

Dulany v. Taylor, 105 Md. App. 619, 660 A.2d 1046
    (Md.Ct.Sp.App. 1995) ................. 15, 18, 19, 20, 29

Edinburg v. Edinburg, 22 Mass.App.Ct. 199, 492 N.E.2d 1164
    (Mass.App.Ct. Suffolk Co., 1986)..................23, 24

Farah v. Stout, 112 Md. App. 106, 684 A.2d 471 (Md.App.
    1996)................................................14

First Nat'l. Bk v. Liberty Trust Co., 151 Md. 241, 134 A.
    210 (Md. 1926) ......................................18

Frentz v. Schwartze, 122 Md. 12, 89 A. 439 (Md. 1913) ....18

Garner v. Garner, 167 Md. 423, 173 A. 486 (1934)........31

Gruen v. Gruen, 104 A.D.2d 171, 488 N.Y.S.2d 401 (N.Y. App.
    Div. 2d Dept. 1984) .................................24

Hamilton v. Caplan, 69 Md. App. 566, 518 A.2d 1087
    (Md.App.1986)....................... 13, 17, 18, 19, 20

Heineman v. Bright, 124 Md. App. 1, 270 A.2d 1182,
    (Md.Ct.Sp.App., 1997) ..............................15

Malloy v. Smith, 265 Md. 460, 466, 290 A.2d 486 (Md., 1972)
    ....................................................20

Metzger v. C.I.R., 38 F.3d 118 (4th Cir. 1994) ..........21

Miller v. Hospelhorn, 176 Md. 356, 4 A.2d 728 (1939).18, 20

Nora Bevs., Inc. v. Perrier Group of Am., Inc., 269 F.3d
    114 (2d Cir.2001) ...................................12

Pomerantz v. Pomerantz, 179 Md. 436, 19 A.2d 713 (Md. 1944)
    .....................................................18

Raskin v. Wyatt, 125 F.3d 55, 66 (2d Cir.1997)..........12

Reddy v. Mody, 39 Md. App. 675, 388 A.2d 555 (Md. Sp. App.
    1978)...............................................13

Rogers v. Rogers, 271 Md. 603, 319 A.2d 119 (Md.,1974) .....
    ................................. 13, 15, 17, 18, 19, 21

Rosenfeld v. Basquiat, 78 F.3d 84 (2d Cir. 1996)........11

Rothman v. Silver, 245 Md. 292, 226 A. 2d 308 (Md., 1967)
    .....................................................32

Rudo v. Karp, 80 Md. App. 484, 564 A.2d 100 (Md.Ct.Sp.App.,
    1989)...........................................15, 16

Schifanelli v. Wallace, 271 Md. 177, 315 A.2d 513 (Md.,
    1974)...............................................13

Schilling v. Waller, 243 Md. 271,220 A.2d 580 (Md., 1966)
    ...............................................14, 16

Schenker v. Moodhe, 175 Md. 193, 200 A. 727 (1938)..15, 18,
    ...........................................19, 26, 27

Snyder v. Crabbs, 263 Md. 28, 29, 282 A.2d 6 (Md., 1971).12

Snyder v. Stouffer, 270 Md. 647, 313 A.2d 497 (Md. 1974)
    ...........................................17, 18, 19

Tilghman v. Frazer, 191 Md. 1323, 62 A.2d 596 (Md., 1948) ..
    .....................................................27

**Statutes**

Fed. R. Evid. 601......................................11

Fed. R. Civ. P. 56(e)..................................12

Md. Code Cts. & Jud. Proc. art. §9-116 ................12

28 U.S.C. § 2201.......................................36

iii

## PRELIMINARY STATEMENT

Plaintiff Estate of Rita Genecin (the "Estate") respectfully submits the sections of this memorandum of law concerning the Lautrec in opposition to the motion of defendant Paul Genecin ("Paul") for summary judgment as to the First and Second Counts of the Complaint.  Defendant Victor Genecin, in his individual capacity, respectfully submits the sections of this memorandum concerning the Schwab IRA in opposition to Paul's motion for summary judgment as to the Third Count.

## INTRODUCTION

### The Lautrec

Paul Genecin cannot prevail on his motion for summary judgment concerning the Lautrec, and summary judgment must be granted in favor of the Estate, for three basic reasons. *First*, the "facts" on which Paul bases his claim, as he concedes in his Local Rule 56(a)(1) Statement, depend entirely upon his own testimony, and such testimony is inadmissible pursuant to Maryland's "Dead Man's Statute." *Second*, even if Paul had competent and admissible evidence to offer, it is all highly disputed.  *Third*, even if Paul's evidence were to be fully credited by the finder of fact,

his proof would still be inadequate, as a matter of law, to establish a valid *inter vivos* gift.

**The Schwab IRA**

On the question of division of Rita Genecin's Schwab IRA account, the parties are in agreement as to the only fact that is genuinely material to this dispute:  that Rita Genecin executed two beneficiary designations on the same day, October 8, 1998. In one document, she designated 60% of the account to pass to Victor, and 40% to Paul Genecin, and in the other she stated that the account was to pass to Victor and Paul Genecin, *per stirpes*.  The task before the Court, therefore, is to interpret these two documents.  As argued in Victor Genecin's initial Memorandum of Law, Point III and Point III below, the documents are consistent, and not in conflict, in that the percentage designations define the proportions of the account to be accorded to each beneficiary, while the *per stirpes* designation provides that the descendants of a beneficiary shall receive his share in the event that he should predecease Rita Genecin.

**COUNTER-STATEMENTS OF FACTS**

**The Lautrec**

It is a violation of this Court's rules for Paul to assert that it is undisputed that Rita Genecin signed a

"deed of gift" concerning the Lautrec -- his January 4, 2000 document -- and delivered it to him.  He makes these assertions at ¶¶ 5 & 6 of his Local Rule 56(a)(1) Statement, and again in his Memorandum of Law at 3 & 10-11, *without citation to any evidence in the record.* His motion could properly be denied pursuant to Local Rule 56(a)(3) for this reason alone.[1]  In fact, it is difficult to imagine a starker factual dispute than the one presented by Paul Genecin's January 4, 2000 document.

Paul Genecin is the only human being on Earth who has ever claimed that he saw the January 4, 2000 document before Rita Genecin's death.  (Paul Genecin Tr. 82; Victoria Morrow Tr. 20-21). The document was completely unknown to Rita Genecin's financial advisers, who were in possession of her financial records, her will and codicil, and of duly-witnessed deeds of gift that Rita Genecin

---

[1] Indeed, the only testimony concerning Paul's January 4, 2000 document, and the only testimony that he puts forward to support any of his so-called "undisputed facts" concerning the Lautrec, is that of Paul himself, all of which is inadmissible pursuant to Maryland's Dead Man's Statute.  Although defendant concedes that Maryland law controls this Court's decision concerning ownership of the Lautrec, and although he was alerted to the Maryland Dead Man's Statute by the briefing and argument of plaintiff's Motion for Prejudgment Replevin, he has elected, on this motion, not to put forward any theory under which his testimony might be admissible.  Thus, he has failed, in violation of Local Rule 56(a)(3), to cite any admissible evidence in support of any of the "facts" on which he relies, and his motion for summary judgment should be denied.  Defendant, moreover, has the burden under Maryland law of proving all of the elements of an *inter vivos* gift by clear and convincing evidence.  Accordingly, his inability to put forward admissible evidence to establish his claim mandates granting summary judgment in favor of the Estate.

executed on January 12, 2000.  The affidavits of Rita Genecin's financial advisers show that Rita Genecin never made any mention to either of them that she had executed a deed gifting the whole Lautrec. (Wagner Aff. ¶¶4-6; Hertzberg Aff. ¶¶7, 9-11; Sullivan Aff. ¶13.)

The January 4, 2000 document that Paul urges upon this Court as a valid "deed of gift" is stamped with an unmistakable hallmark of fraud:  the false notarization, by a subordinate of Paul Genecin.  The false notarization states that Rita Genecin swore to the contents of the document before the notary in New Haven on January 4, 2000. It is now undisputed that Rita Genecin was not in New Haven on that date, and that she did not sign the document in the presence of the notary. (*See* Pl.R.56(a)(1) St., ¶32 and evidence referred to therein.)  It is further undisputed that the document is falsely dated.  Paul Genecin has testified -- contrary to his Local Rule 56(a)(1) Statement -- that it was signed on a date earlier than January 4, 2000.  (Paul Genecin Tr. 81-82.)

Victor first raised the issue of the false notarization of Paul's putative "deed of gift" in a December 2000 letter from Victor's lawyer to Paul Genecin's then-counsel, Gerard Martin, Esq. of Baltimore.  In reply, Mr. Martin wrote on December 24, 2000:

> Paul Genecin asserts that his mother
> was in New Haven on the day in
> question.

(PX-M.) Paul now claims that he has "no recollection of being asked" by Mr. Martin, before Mr. Martin wrote his December 24, 2000 letter, whether Rita Genecin was in New Haven on January 4, 2000, and further asserts that Mr. Martin did not send him a copy of the letter either before or after he sent it. He "does not recall" instructing Mr. Martin to correct the record. (Paul Genecin Tr. 147-149; 240-245.)[2]

Paul Genecin's proof that Rita Genecin intended to make a gift to Paul of 100% of the Lautrec -- the most valuable single item she owned -- is further clouded by the fact that this alleged donative intent was not disclosed by Rita Genecin to her financial advisers. To the contrary, on January 6, 2000, *i.e.*, just two days after the date on the January 4, 2000 document, Rita Genecin met with her financial advisers concerning financial and estate-planning matters. In that meeting, she and her advisers discussed how to make gifts of the Lautrec to Paul and his family within the federal gift tax restrictions. She asked Marc

---

[2] It is doubtful that Mr. Martin, a former federal prosecutor and an experienced litigator, would place words in a client's mouth. Paul discharged Mr. Martin one month after the letter in PX-M, at a time when Mr. Martin and counsel for the Estate believed they were close to a settlement of all disputes.

J. Hertzberg, one of the advisers, to prepare the necessary documents, which are referred to herein as the fractional share documents.  On January 12, 2000, she returned to her financial advisers' offices to execute the fractional share documents, together with others relevant to this case. (Pl.R.56(a)(1) St., ¶44.)  Neither on January 6, 2000, nor on January 12, 2000, nor at any time thereafter, did Rita Genecin tell her financial advisers that she had already made a gift of 100% of the Lautrec to Paul, nor did she ever provide them with a copy of the January 4, 2000 document.  (Pl.R.56(a)(1) St., ¶¶43-44.)

These uncontroverted facts show that, just two days after the date on the January 4, 2000 document, Rita Genecin was taking actions demonstrating that she did not believe that she had relinquished all interest in and control over the Lautrec.  The fractional share documents, moreover, together with the gift letter to Victor Genecin that Rita Genecin executed on the same day, (Sullivan Aff. ¶10 & Ex. E) show that she understood how to cause properly-acknowledged deeds of gift to be prepared, and, further, that she had no difficulty appearing before a notary to execute such documents.

The alleged gift to Paul Genecin of the Lautrec, on the other hand, was a secret from the entire world as long

6

as Rita Genecin was alive.  Paul himself, moreover, never said a word to anyone, when he was in Baltimore with Victor after Rita Genecin's death, about his claim that his mother had made a gift to him of the whole Lautrec, even when Rita Genecin's financial advisers gave him copies of the four fractional share documents. (*See* Pl. R. 56(a)(1) St., ¶¶13-18 and evidence referred to therein.)  Rather, he urged Victor to agree on behalf of the Estate that Paul should take the Lautrec and all of the other works of art collected by their parents to his residence in New Haven for safekeeping, because he had a safe and an alarm system there.  Victor consented.  Paul Genecin took the works of art to New Haven, and purchased insurance for them, including the Lautrec, listing them all as property of the Estate. He then submitted the insurance bill to the Estate for payment.  (Pl. R. 56(a)(1) St., ¶¶20-22 and evidence referred to therein.)  This conduct is entirely inconsistent with a belief that the Lautrec had been a gift to him.  It was only in September, 2000, weeks after he had taken possession of the Lautrec as the Estate's bailee, that Paul first asserted his claim that he owned the whole Lautrec. (*See* Pl. R. 56(a)(1) St., ¶23 and evidence referred to therein.) He did so by faxing to the Estate's administration counsel a copy of the January 4, 2000

7

document, with an accompanying note saying he was confused,
and asking whether the Lautrec was his or only partly so.
(PX-F; Paul Genecin Tr. 93-94.)  He does not recall who
provided or when he received answers to his questions.
(Paul Genecin Tr. 110.)

**The Schwab IRA**

In support of his motion for summary judgment
concerning Rita Genecin's IRA, Paul Genecin puts forward
the two operative documents that the Court must interpret:
the Schwab IRA Application, containing, on page 4, Rita
Genecin's beneficiary designations of 60% of the account to
Victor and 40% to Paul, and the document headed RITA
GENECIN IRA BENEFICIARY DESIGNATION, which states that her
account "shall be distributed to my descendants who survive
me, *per stirpes* . . ." (PX-Q, R.)  Both of these documents
were executed on October *8*, 1998, and sent together to
Schwab, as Paul asserts and Victor agrees.  (*See* Victor
Genecin R. 56(a)(1) St., ¶¶56-57, 60 and Def. Paul Genecin
R. 56(a)(1) St., ¶ 15.)  These are the documents that the
parties and Schwab recognize require the interpretation of
this Court.  (PX-R).

Paul Genecin seeks to cloud the issues before the
Court with assertions that are baseless and irrelevant.

8

First, he notes that the percentages on the Schwab IRA Application are written in pencil, and claims that there is no evidence that Rita Genecin placed these percentages on the form. The Sullivan Affidavit, however, establishes that all but the first page of the Schwab IRA Application (which was filled in by Ms. Sullivan) are in Rita Genecin's handwriting. Paul Genecin has absolutely no basis for disputing the testimony of a disinterested third party.

Paul seeks to obfuscate further by putting forward an entirely irrelevant document: a copy of the *per stirpes* document that Rita Genecin executed on October *6*, 1998, two days *before* the operative *per stirpes* document and the 60%/40% beneficiary designation. Paul claims that this document was the "most recent designation of beneficiary received by Schwab from Rita Genecin," (Def. Paul Genecin R. 56(a)(1) St., ¶21,) and, as such, should be the controlling document herein. The October 6 document, however, was sent by Rita Genecin's lawyer to her financial advisers in October, 1998. It remained in their file until October, 1999, when they sent it to Schwab without consulting with Rita Genecin or her lawyer. (Hertzberg Aff. ¶¶4-5.) (See Def. Victor Genecin's R. 56(a)(1) St., ¶63 and evidence referred to therein.) Paul Genecin can cite no admissible evidence to the contrary. Thus, even if

this document were inconsistent with the 60%/40% beneficiary designation (and it is not), it does not constitute a subsequent expression of Rita Genecin's intent concerning the disposition of her IRA.

Paul Genecin further makes the utterly baseless allegation that "[p]rior to Rita Genecin's death, Victor Genecin believed that it was Rita Genecin's intent to distribute the IRA per stirpes, i.e. 50% to each son." (Def. Paul Genecin R. 56(a)(1) St., ¶22.)  Victor had no knowledge before Rita Genecin died of her intent concerning distribution of the IRA (Victor Genecin Tr. 41), and the testimony cited by Paul Genecin makes clear that the first time Victor "saw anything evidencing beneficiary designations" was October 25, 2000, *i.e.*, more than two months *after* Rita Genecin died. (Victor Genecin Tr. 60-61.)

In both matters at issue in this case -- the Lautrec and the Schwab IRA -- Paul Genecin sent or caused to be sent to his brother, Victor, documents that had been falsified in Paul Genecin's favor.  The January 4, 2000 document is not only un-witnessed, it was falsely notarized, by Paul Genecin's subordinate at his request, to make it appear as if it had been witnessed.  The Schwab Beneficiary Designation Form, allocating 60% of the Schwab IRA account to Victor and 40% to Paul, was falsified *twice*

10

by a Schwab employee in Paul's favor, and was sent first to
Paul's lawyer (so she would send it to Victor) and then
directly to Victor.  Although Paul Genecin and his wife
both deny that they had anything to do with the
falsification of the Schwab documents, they have offered no
plausible explanation, because they have none, as to why a
clerical employee of Schwab spontaneously, and
gratuitously, took it upon herself to white-out entries on
a beneficiary designation and fill in numbers that favored
Paul Genecin.  (Victor Genecin Tr. 93-95.)

## ARGUMENT

### I.  Paul Genecin Lacks Admissible Proof of his Claim because his Testimony is Barred by the Maryland Dead Man's Statute.

Paul Genecin concedes that his claim that the Lautrec
was a gift to him must be decided according to the law of
Maryland.  Defendant's Memorandum of Law in Support of
Motion for Summary Judgment ("Def. Mem.") at 9.  In a case
in which state law supplies the rule of decision, that
state's law with respect to the competency of witnesses,
including the state's Dead Man's Statute, must be applied.
Fed. R. Evid. 601; Rosenfeld v. Basquiat, 78 F.3d 84 (2d
Cir. 1996) (Rule 601 was amended to require application of
state competency rules specifically in order to avoid

11

"rendering inapplicable in the federal courts the so-called Dead Man's Statutes").  In determining a motion for summary judgment, moreover, a District Court may consider only admissible evidence.  Fed. R. Civ. P. 56(e); <u>Nora Bevs., Inc. v. Perrier Group of Am., Inc.</u>, 269 F.3d 114, 123 (2d Cir.2001) <u>Raskin v. Wyatt</u>, 125 F.3d 55, 66 (2d Cir.1997). Accordingly, the federal rules mandate exclusion of evidence on summary judgment motions that would be excluded at trial pursuant to the relevant state Dead Man's Statute. <u>Clark v. Meyer</u>, 188 F.Supp.2d 416, 420-21(S.D.N.Y. 2002); <u>Amell v. Kucewicz</u>, 53 F.Supp.2d 145, 146-47 (D.Mass. 1999).

Maryland's Dead Man's Statute imposes silence upon interested parties concerning transactions with or statements by a decedent. <u>Snyder v. Crabbs</u>, 263 Md. 28, 29, 282 A.2d 6 (Md., 1971).[3]  This law requires those who would

---

[3]  The "Dead Man's Statute", Md. Code Cts. & Jud. Proc. art., § 9-116, provides:

> A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement.

The test for determining whether there has been a "transaction" within the meaning of the Maryland Dead Man's statute is "[w]hether, in case the witness testify falsely, the deceased, if living, could contradict

assert claims against a decedent's estate to produce testimony from disinterested persons, <u>Reddy v. Mody</u>, 39 Md. App. 675, 679, 388 A.2d 555, 559 (Md. Sp. App. 1978), and its underlying goal is "preventing self-interested perjury." <u>Id</u>., 388 A.2d at 559.  Accordingly, as claimant of the Lautrec, defendant is barred by the Dead Man's Statute from: (1) authenticating the January 4, 2000 document; (2) testifying as to the manner in which he claims this document was given to him by Rita Genecin; (3) testifying concerning any statement he claims Rita Genecin made to him about either the January 4, 2000 document or about the claimed "gift" of the Lautrec; and (4) testifying about any transaction with or statement by Rita Genecin that he asserts would support his claim to the Lautrec. <i>See</i> <u>Farah v. Stout</u>, 112 Md. App. 106, 684 A.2d 471 (Md.App. 1996); <u>Hamilton v. Caplan</u>, 69 Md. App. 566, 518 A.2d 1087 (Md.App.1986).

Under Maryland law, a putative donee must "establish the existence of the gift by the clearest proof." <u>Rogers v. Rogers</u>, 271 Md. 603, 607, 319 A.2d 119,121 (Md.,1974). The highest court in Maryland has repeatedly emphasized that, when an alleged donor is dead, this heavy burden on

_____

it of his own knowledge." <u>Schifanelli v. Wallace</u>, 271 Md. 177, 184, 315 A.2d 513 (Md., 1974)

one who claims a gift is necessary "in order to diminish the possibility of fraudulent claims." Id.; Schilling v. Waller, 243 Md. 271, 276, 220 A.2d 580, (Md., 1966). The fact that the burden herein is cast on defendant means that, should his proof fail as to any element, not only must his motion be denied, the Estate's motion for summary judgment must be granted. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (Rule 56(c) mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party will bear the burden of proof at trial).

Paul Genecin utterly lacks admissible proof as to any element of his claim of *inter vivos* gift. As his Local Rule 56(a)(1) Statement makes clear, he relies entirely upon his own testimony to establish each material fact in his case. Inasmuch as Paul concedes that there is no witness, other than himself, to the execution and delivery of his key piece of evidence -- the falsely-notarized January 4, 2000 document -- all of his proffered "proof" simply evaporates for lack of disinterested testimony. His motion should therefore be denied, and summary judgment granted in favor of the Estate.

**II.  Defendant has no evidence to satisfy the requirement
that he prove the essential element of delivery.**

>  **A.  Paul Genecin asserts contradictory facts in
>  support of conflicting theories, obviating the
>  clear and convincing showing that the law
>  requires him to make.**

In order to establish his claim, Paul must put forward
"the clearest evidence" of each element of a gift:
donative intent, delivery and acceptance.  <u>Dorsey v.
Dorsey</u>, 302 Md. 312, 318, 487 A.2d 1181, 1184; <u>Rogers</u>, 271
Md. 607, 319 A.2d at 121, *see* <u>Heineman v. Bright</u>, 124 Md.
App. 1, 13, 270 A.2d 1182, (Md.Ct.Sp.App., 1997); <u>Dulany v.
Taylor</u>, 105 Md. App. 619, 660 A.2d 1046 (Md.Ct.Sp.App.
1995); <u>Rudo v. Karp</u>, 80 Md. App. 484, 564 A.2d 100
(Md.Ct.Sp.App., 1989).  He cannot hope, however, to meet
his burden, as his proof is anything but clear:  he
presents conflicting theories, supported by mutually
exclusive facts.  On the one hand, Paul alleges that Rita
Genecin actually delivered the Lautrec to him, and urged
him to remove it from her home to his.  He, however, would
not, or could not, do so.  This testimony, if it were
credited, would establish that Paul did not accept the
gift.  <u>Shenker v. Moodhe</u>, 175 Md. 193, 200 A. 727 (1938).
Paul's non-acceptance, moreover, is clearly evidenced by
his failure to assert ownership of the Lautrec after Rita

Genecin's death, and his purchase of insurance for it in the name of the Estate.

On the other hand, Paul argues that Rita Genecin constructively delivered the Lautrec to him, by deeding her home to herself, Paul and Victor as joint tenants, and that she did so in order to retain the picture in her home while making a gift to Paul.  Paul's proffered evidence of donative intent and delivery is thus thoroughly muddled: either Rita Genecin intended for him to take immediate physical possession, or she intended to keep the Lautrec herself, but she cannot have intended both.  Alternatively, even crediting all of Paul's "proof," it is not possible to conclude that Rita Genecin clearly intended to make a gift. Maryland law, however, requires Paul to prove, by the clearest evidence, that Rita Genecin "clearly and unmistakably intended to permanently relinquish all interest in, and control over the gift."  <u>Dorsey</u>, 302 Md. at 318, 487 A.2d at 1184; <u>Schilling</u>, 243 Md. at 276-77, 220 A.2d 580; <u>Rudo v. Karp</u>, 80 Md. App. 424, 430, 564 A.2d 100, 103 (Md.Ct.Sp.App., 1989)(italicizing the words "*clearly,*" "*unmistakably*" and "*permanently*").  Thus, even if Paul were not prevented by the Dead Man's Statute from testifying, his contradictory "facts" make it impossible for him to make the clear showing required by the law.

16

**B.   Defendant cannot show "constructive delivery" under Maryland Law.**

Conceding that he cannot prove actual delivery of the Lautrec, Paul Genecin puts forward a variety of theories, under which he claims that he received a  "constructive delivery" of the Lautrec.  These "constructive delivery" claims, however, could only be reached if Paul were able to support them with admissible evidence.  He is unable to do so, because all of his theories of "constructive delivery" depend upon the execution and delivery of the January 4, 2000 document, to which he is the sole witness.  A review of the decisions cited by defendant -- whether from Maryland or elsewhere -- reveals that, in all cases in which claimants were successful, they proffered the testimony of disinterested third-party witnesses to establish the facts on which their claims were based.[4]

---

[4] See, e.g. Snyder v. Stouffer, 270 Md. 647, 313 A.2d 497 (Md. 1974) (son claimed gold coins found by receiver of his father's company in the company's safe deposit box:  mother and other witnesses testified that the coins had been gifts to the son, the only coin collector in the family; mother testified that the coins were placed in the safe deposit box to safeguard them for the son, who was a minor);  Rogers v. Rogers, 271 Md. 603, 319 A.2d 119 (Md. 1974)(disinterested witnesses confirmed that decedent had given stock certificate to claimant; disinterested witnesses confirmed that decedent had spoke on a number of occasions thereafter of having made the gift; disinterested witnesses confirmed that claimant had returned certificate to decedent so that he could change the registration to claimant's name); Hamilton v. Caplan, 69 Md. App. 566, 518 A.2d 1087 (Md. Ct. Sp. App. 1987) (decedent had purchased notes which he placed in name of claimant but kept in his office safe:  claimant not permitted to testify to decedent's statements that notes were an investment for claimant, but competent testimony concerning decedent's statements was given by

17

The concept of constructive delivery of *inter vivos* gifts, moreover, is well-developed in Maryland, rendering unnecessary, and, indeed, misleading, defendant's selective multistate survey of irrelevant jurisdictions.

In myriad cases, the courts of Maryland have made clear that the validity of an alleged gift depends upon the legal sufficiency of the delivery. Dorsey v Dorsey, 302 Md. 312, 318, 487 A.2d 1181, 1184 (Md., 1985); Rogers v. Rogers, 271 Md. 603, 607, 319 A.2d 119, 121 (Md., 1974); Snyder v. Stouffer, 270 Md. 647, 650-651, 313 A.2d 497, (Md., 1974); Shenker v. Moodhe, 175 Md. 193, 197, 200 A. 727 (Md., 1938); Dulany v. Taylor, 105 Md.App. 619, 632 660 A.2d 1046, 1053 (Md.Ct.Sp.App. 1995); Hamilton v. Caplan,

---

neighbor)(claimant's testimony excluded under Dead Man's Statute); Miller v. Hospelhorn, 176 Md. 356, 4 A.2d 728 (1939) (named payee on notes testified that she was a "straw-woman" for the claimant, decedent's wife, for whose benefit decedent had purchased them, keeping them in his office safe); Brookes v. Mitchell, 163 Md.1, 161 A.261 (Md., 1932) (constructive delivery of proceeds of bank accounts by delivery of suitcase containing passbook: two friends of decedent and his attending physician all testified to statements by decedent that he was giving his savings to claimant); Frentz v. Schwartze, 122 Md. 12, 89 A. 439 (Md. 1913) (constructive delivery of proceeds of bank account by delivery of passbook and letter to bank: friend of decedent and her physician authenticated letter directing bank to pay claimant); First Nat'l. Bk v. Liberty Trust Co., 151 Md. 241, 134 A. 210 (Md. 1926) (constructive delivery of proceeds of life insurance policy, payable to the decedent's estate, by delivery of the policy document to claimant: friend of decedent testified that decedent told him he was giving the policy as a gift to claimant and that, later, claimant had shown him the policy in claimant's possession and decedent confirmed that he had made a gift to her of the policy); Pomerantz v. Pomerantz, 179 Md. 436, 19 A.2d 713 (Md. 1944) (no evidence of constructive delivery where alleged donor retained control over bank accounts); Cox v. Hill, 6 Md. 274, 1854 WL 2426 (Md. 1854) (alleged gift invalid: delivery not proven where assignment of note was not delivered to putative assignee).

69 Md. App. 566, 573, 518 A.2d 1087, 1090 (Md.App.1986).
Delivery may be actual or constructive, but must, in either
case, place the gifted property beyond the dominion and
control of the donor and within the dominion and control of
the donee, transferring "the donor's dominion over the
property without power of revocation or retention of
dominion over the subject of the gift." Dorsey, 302 Md. at
318, 487 A.2d at 1184; Rogers, 271 Md. at 607, 319 A.2d at
121-22; Snyder v. Stouffer, 270 Md. at 650-651, 313 A.2d
497. Thus, in order to make a valid constructive delivery,
the donor must not only use words showing donative intent,
but the words used must divest the owner of dominion and
control over the donation, and place the donation wholly
under the donee's power. Dulany, 105 Md.App. at 632; 660
A.2d at 1053-54; Hamilton, 69 Md.App. at 573; 518 A.2d at
1091. The most that defendant could say for his proffered
testimony, if it were admissible, is that it appears to
show that Rita Genecin "attempted to surrender or
relinquish control of" the Lautrec, but not that defendant
received it or assumed dominion over it. See Schenker, 175
Md. at 197, 200 A. 727. It is essential to the validity of
an *inter vivos* gift, however, "that the transfer of *both
possession and title* shall be absolute and shall go into
immediate effect." Berman v. Leckner, 193 Md. 177, 182, 66

19

A.2d 392, 393 (Md., 1949) (emphasis supplied).  The

Maryland courts have repeatedly observed that:

> [t]he cases in which constructive
> delivery has been found involved
> circumstances where the donor *thought*
> *he had done all he could do* to
> relinquish dominion and control over
> the donated item.

Malloy v. Smith, 265 Md. 460, 466, 290 A.2d 486 (Md.,

1972); Dulany, 105 Md.App. at 632, 660 A.2d at 1053;

Hamilton, 69 Md. App. at 573, 518 A.2d at 1090.

In the instant case, the evidence is undisputed that

Rita Genecin did *not* think that she had done all that she

could do to relinquish dominion and control over the

Lautrec, because it is undisputed that she executed the

four fractional share documents on January 12, 2000.  These

documents are inconsistent with any belief on Rita

Genecin's part that she had already completely divested

herself of ownership of the Lautrec, and are consistent

with the belief on her part that the Lautrec was hers to

dispose of as she pleased.  Paul Genecin admits that there

is no explanation for the fractional share documents that

can be reconciled with his assertion of ownership of the

Lautrec.  See PX-I ("I feel that the Lautrec is not in the

Estate, although I cannot explain why Mother wrote four

letters gifting four fifteenths to my family two days after

gifting it to me in its entirety.")  Indeed, there can be only two explanations for Rita Genecin's actions -- described by disinterested third-parties -- in having the fractional share documents drawn up on January 6, 2000 and in executing them on January 12, 2000:  either she had no knowledge of the January 4, 2000 document, or she believed that she could revoke it at any time.  There is thus no dispute that Rita Genecin, with the Lautrec still in her home, under her dominion and control, continued to act as the owner of the Lautrec, and not as if it were the property of anyone else.  On these facts, defendant cannot prove that the Lautrec was a gift to him.  Rogers, 271 Md. at 607, 319 A.2d at 121-22 ("There cannot be reserved to the donor a *locus poenitentiae*, which is a power to revoke the gift or a dominion over the subject of the gift."); *see* Metzger v. C.I.R., 38 F.3d 118, 121 (4th Cir. 1994) ("a gift is incomplete in every instance in which a donor reserves the power to revest the beneficial titles to the property in himself").

### C.   Delivery of the January 4, 2000 document, even if it could be proven, does not constitute "constructive delivery" under Maryland law.

Defendant urges the theory that delivery of a deed of gift can be substituted for delivery of the personal

property that is the subject of the putative gift without citing a single case decided by the Maryland courts in support of this notion.  He offers instead decisions from New Jersey, Massachusetts, New York, the District of Columbia, North Carolina, North Dakota and Virginia.

Defendant's putative "deed of gift" would not pass muster under any of the decisions he cites.  In each of those cases, the deed in claimant's favor was witnessed by one or more disinterested third parties, whose testimony authenticated the document. There was thus no issue as to either execution or delivery of the instruments in question, and no issue under any state's Dead Man's Statute.  In the instant case, by contrast, the only person who claims to be a witness to the alleged execution and delivery of the January 4, 2000 document is defendant himself, and he is incompetent to testify.

Defendant places particular weight on two decisions -- one from Massachusetts and one from New York -- that he claims to be "on all fours" with the instant case.  Given the high degree of development that the law of gifts has attained in the controlling jurisdiction -- the State of Maryland -- these cases would provide no guidance even if they were apposite.  A review of the facts and holdings,

however, reveals that they do not provide any support for the proposition that defendant urges.

The plaintiff in Edinburg v. Edinburg, 22 Mass.App.Ct. 199, 492 N.E.2d 1164 (Mass.App.Ct. Suffolk Co., 1986), in addition to executing deeds of gift, took "elaborate steps," including placing labels and stamps on works of art and segregating them in special containers, in order to identify them as the property of *inter vivos* trusts for the benefit of her children.  She then testified in divorce proceedings that these works of art were not her property, but belonged to the trusts, and independent witnesses testified that she had made statements to the same effect. Thereafter, the plaintiff sought to retract her gifts, on the theory that the works of art had never been delivered to the donee trusts, and testified that she had perjured herself in her divorce proceedings.  The court held that the works of art had been constructively delivered, noting that the trusts had no premises of their own in which to keep the property, and that the plaintiff, by her conduct, had effectively segregated the property for the benefit of her trust.

In Edinburg, the fact that the donor had made gifts to the donee trusts was open and notorious, established by acts of labeling and sequestration, and by the testimony of

23

independent witnesses and by the testimony of the donor. None of these facts is present here.  The gift that Paul claims was unknown to all who knew Rita Genecin.  Unlike the *inter vivos* trusts in Edinburg, moreover, Paul had a residence in New Haven that was fully equipped to house a valuable work of art.

Gruen v. Gruen, 104 A.D.2d 171, 488 N.Y.S.2d 401 (N.Y. App. Div. 2d Dept. 1984), is a New York case that, far from being "on all fours" with the instant matter, as defendant claims, is patently distinguishable. The donor in Gruen simultaneously sent two letters to the donee.  In one, the donor granted title to a valuable work of art to the donee. In the other, he informed the donee that, although the work of art now belonged to the donee, the donor would continue to keep it in his own home.  The donor published these two letters to his secretary, his attorney and his accountant, the donee published them to friends as well, and their authenticity was unchallenged.  These facts stand in sharp contrast to this case, in which the putative "deed of gift" was a secret from all the world until after the alleged donor was dead.  In Gruen, the New York Appellate Division, Second Department, held that the two letters should be read as a single instrument, in which title was conveyed while a life interest was reserved by the donor.  Delivery of the

24

letters was sufficient to complete the gift because the subject matter of the gift was a remainder interest, which had no physical existence and could only be embodied in the written instruments.

The alleged donative instrument put forward by Paul Genecin does not purport to convey a remainder interest; rather, it purports to be a present conveyance of all ownership rights. Rita Genecin's continued possession of the object in question, and her making of a different disposition a few days later, are entirely inconsistent with any claim that she conveyed all rights on January 4, 2000.

**D.    Defendant cannot establish that delivery of the Lautrec was "impracticable."**

Paul Genecin's next theory of constructive delivery is that the Lautrec was too valuable to deliver manually. This theory, of course, is entirely dependent on Paul's testimony that, on each of the occasions when he was in Baltimore after Rita Genecin made the putative gift, he was transporting something in this car -- his dog, some glassware -- that prevented his taking the Lautrec. Such testimony is, of course, inadmissible. It is also belied by the undisputed fact that, in the aftermath of Rita

25

Genecin's unexpected death, Paul Genecin was perfectly capable of taking possession of the Lautrec and placing it in his car along with all the other valuable works of art belonging to the Estate, and driving them all to his house in New Haven.[5]

Paul's claim that manual delivery was impracticable, moreover, reposes on his claim -- supported only by his testimony -- that, on each of his visits to Baltimore, Rita Genecin urged him to relieve her of possession of the Lautrec, and he did not do so. Assuming, for the sake of argument, that these assertions were true, no *inter vivos* gift would be shown under Maryland law:

> "While [the alleged donor] attempted to surrender or relinquish control over the gifts, the [putative donee] did not receive it or assume dominion over it."

Schenker v. Moodhe, 175 Md. 193, 200 A. 727 (Md. 1938). In Schenker, the putative donee did not take possession of the alleged gift -- the decedent's papers, bank books and keys, including the key to his safe deposit box -- because she was afraid of exposing herself to his contagious illness. The highest court in Maryland held that such a concern "can

---

[5] It should also be noted that movers who specialize in the transport and delivery of valuable works of art can easily be engaged to move a lithograph from Baltimore to New Haven with appropriate insurance, and that Paul, who is not ignorant in these matters, could have arranged for such a mover if Rita Genecin had really intended for him to remove the Lautrec from her home.

not be substituted for actual or constructive delivery,"

and warned:

> the requirement for actual delivery is
> the only substantial protection, and
> the court should not weaken it by
> permitting the substitution of
> convenient and easily proven devices.

Schenker, 175 Md. at 197, 200 A. 727.


**E.    Rita Genecin's Re-Deeding of her Residence to
Herself, Victor and Paul did not Effectuate a
Delivery of the Lautrec.**

Paul Genecin argues on his motion, as he did

unsuccessfully on plaintiff's Motion for Prejudgment

Replevin, that the change Rita Genecin adopted in the

ownership of her home can be substituted for manual

delivery of the Lautrec.  This theory founders on the basic

legal premise that:

> [p]ictures, portraits and furniture do
> not pass with the house in which they
> are located.  The house is ordinarily
> real estate, and they are personal
> estate.  The two kinds of property are
> essentially different, and are disposed
> of under different statutes and rules
> of law.

Tilghman v. Frazer, 191 Md. 1323, 62 A.2d 596 (Md., 1948).

It is undisputed, moreover, that Rita Genecin executed

the new deed to her home, making herself and her two sons

joint tenants, on the very same day, and in the very same

meeting with her financial advisers, when she executed the

27

four fractional share documents.  Even assuming, *arguendo*, that the January 4, 2000 document were genuine, and even assuming, again *arguendo*, that a change in the ownership of real property might in some circumstances effect a constructive delivery of property located inside, Rita Genecin changed the ownership of her home at the same time as she revoked the January 4, 2000 document, reallocating 11/15ths of the Lautrec to herself.  Thus, Rita Genecin changed the title to her house at the same time as she asserted her continued title to the Lautrec.  The change in title to the house, it should also be noted, left Rita Genecin, who lived there, with continued, unfettered, access to and control over the Lautrec.

**F.   Paul's Belated Claim Under the Fractional Share Documents Should be Dismissed.**

After arguing vigorously that the fractional share documents are a "nullity," Def. Mem. at 17, Paul then urges this Court to give them effect in the event that it denies his claim to own the entire Lautrec. No claim has previously been asserted by Paul or any member of his family pursuant to the fractional share documents either in this Court, or in the probate proceeding still pending in Maryland.  Indeed, it is Paul's testimony that these documents were never delivered to him while Rita Genecin

28

was alive, and that he first learned of them after her death.  (Paul Genecin Tr. 78)  Whatever validity there are may be Paul's argument that it was physically impossible for Rita Genecin to transfer physical possession of fractional shares of the Lautrec, Paul's own testimony obviates his claim by establishing that there was no delivery of title to the fractional shares, and no acceptance of same.  See Dulany v. Taylor, 105 Md. App. 619, 631, 660 A.2d 1046, 1053 (Md.Ct.Sp.App. 1995).

It should be noted, however, that, other than Paul, the other putative beneficiaries of the fractional share documents are not before this Court.  Accordingly, this Court should simply decline to adjudicate the claim that Paul now belatedly purports to raise on their behalf.

**III. SUMMARY JUDGMENT SHOULD BE GRANTED AWARDING 60% OF RITA GENECIN'S SCHWAB IRA TO VICTOR GENECIN AND 40% TO PAUL GENECIN.**

As argued in Victor Genecin's initial Memorandum of Law, Point III, the two beneficiary designations executed by Rita Genecin at the office of her financial advisers on October 8, 1998 must, and can, be read together.  Under this view, the numerical designations on the Schwab IRA application establish the percentages each beneficiary is to receive, while the typewritten document specifies the manner in which those percentages are to pass: *per*

29

*stirpes, i.e.*, each son's share goes to his decedents in the event he were to predecease Rita Genecin.

Paul's motion does not address the Schwab IRA Beneficiary Designation except to suggest, without a shred of evidence, that Rita Genecin did not enter the 60% and 40% that appear on the document. (Cf. Sullivan Aff., ¶4.) Rather, he puts forward the utterly specious argument that Rita Genecin somehow revoked her October 8, 1998 beneficiary designations when she signed the October 6 document two days earlier.  It is basic, however, that a document may only be revoked by a later-written document, not by an earlier-written one.  Paul seeks to evade this well-established principle by contending that the controlling date for purposes of the Schwab beneficiary designation is the date on which the form was received by Schwab.  There is no language to this effect in the Schwab application form.  Indeed, Schwab's actions in this case demonstrate that it views the documents most recently executed by Rita Genecin as controlling.  When counsel for Schwab notified the parties that the account had been frozen and could not be split without an agreement or court order because of ambiguity in the documents, the two documents referred to were the two October 8 documents.

30

The document signed by Rita Genecin on October 6 was not even mentioned.  (Wynne Aff., Ex. H.)

　　For his "last received" argument, Paul relies heavily on language in the application that reads:  "I understand that any change or revocation must be given in writing to Schwab."  The application says nothing about the date of receipt by Schwab having any meaning.  (Wynne Aff., Ex. A.) There is no question in this case that the October 8 designations were sent to Schwab immediately after they were executed and pursuant to Rita Genecin's intent.  It is of no moment that the earlier executed October 6 document, which is identical in its language to the October 8, 1998 *per stirpes* designation, made its way slowly to the Schwab office without the knowledge of Rita Genecin, after it had sat in the files of Rita Genecin's financial advisers for a year.

　　Paul Genecin's "last received" argument also relies upon the assumption that the October 6 *per stirpes* document can, by its terms, constitute a revocation of the two October 8 documents.  It is hornbook law, however, that a revocation may only be implied from a disposition that is inconsistent with an earlier one.  See Garner v. Garner, 167 Md. 423, 173 A. 486 (1934). The October 6 document is identical in its terms to the October 8 *per stirpes*

31

document, which was signed and filed with the percentage beneficiary designation document, and must, therefore be interpreted together with it as a single instrument.  See Bachmann v. Glazer & Glazer, 316 Md. 405, 559 A.2d 365 (Md., 1989); Rothman v. Silver, 245 Md. 292, 226 A, 2d 308 (Md., 1967); Brown v. Fraley, 222 Md. 480, 161 A.2d 128 (1960); Ahern v. White, 39 Md. 409 (Md., 1874). As the October 8 documents, read together, do not conflict, and as the October 6 document is identical to one of them, there would be no basis to view it as a revocation even if it had been signed later.

## CONCLUSION

Plaintiff the Estate of Rita Genecin respectfully requests an Order of this Court, pursuant to Fed. R. Civ. P. 56, granting summary judgment in favor of the Estate as to the First and Second Counts stated in the Complaint. The Estate takes no position concerning the percentages of the Schwab IRA that should be allocated to Victor and Paul Genecin; however, the Estate does urge the Court to enter a final judgment on the Third Count, pursuant to 28 U.S.C. § 2201, fixing the percentages and adjudicating the rights of the interested parties as a matter of law, based on the governing documents and Maryland law.

As argued in his motion for summary judgment, defendant Victor Genecin respectfully requests, pursuant to Fed. R. Civ. P. 56, an order granting summary judgment, on the Third Count of the Complaint, seeking a declaratory judgment, pursuant to 28 USC § 2201, fixing the percentages to which Victor Genecin and Paul Genecin are entitled in the distribution of the Schwab IRA, and adjudicating the rights of the interested parties to the Schwab IRA as follows: Victor Genecin 60%, Paul Genecin 40%.

January 21, 2004

THE PLAINTIFF,
ESTATE OF RITA GENECIN, BY VICTOR
GENECIN, Personal Representative


By:_____
 David T. Grudberg, ct01186
 JACOBS, GRUDBERG, BELT & DOW, P.C
 350 Orange Street
 P.O. Box 606
 New Haven, CT  06503
 Ph.: (203) 772-3100
 Fax: (203) 772-1691
 Email: dgrudberg@jacobslaw.com


By: _____
 Richard L. Mattiaccio, ct24592
 Pavia & Harcourt LLP
 600 Madison Avenue
 New York, NY  10022
 Ph.: (212) 508-2311
 Fax: (212) 735-7911
 Email: RMattiaccio@pavialaw.com


DEFENDANT, VICTOR GENECIN, IN HIS
INDIVIDUAL CAPACITY


By: _____
 Richard L. Mattiaccio, ct24592
 Pavia & Harcourt LLP
 600 Madison Avenue
 New York, NY  10022
 Ph.: (212) 508-2311
 Fax: (212) 735-7911
 Email: RMattiaccio@pavialaw.com