UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF RITA GENECIN, by | : | |
| VICTOR GENECIN, Personal | : | |
| Representative, | : | |
| Plaintiff, | : | |
| | : | CIVIL NO.3:01CV00211(MRK) |
| | : | |
| VS. | : | |
| | : | |
| PAUL GENECIN and VICTOR GENECIN, | : | JANUARY 21, 2004 |
| in his individual capacity, | : | |
| Defendants. | : | |

**LOCAL RULE 56(a)2 STATEMENT
OF PLAINTIFF ESTATE OF RITA GENECIN AND OF DEFENDANT
VICTOR GENECIN IN HIS INDIVIDUAL CAPACITY**

PLAINTIFF ESTATE OF RITA GENECIN by Victor Genecin, Personal

Representative (the "Estate"), responds as follows to the

assertions contained in the Local Rule 56(a)(1)Statement of

defendant Paul Genecin concerning the First and Second Counts of

the Complaint:

1.    Paragraph 1 of Paul Genecin's Local Rule 56(a)(1)

Statement violates Local Rule 56(a)(3)in that it contains no

citation to any supporting evidence. Accordingly, no response by

the Estate to this paragraph is required.  To the extent that such

a response is required, the Estate denies the allegation set forth

in paragraph 1 of Paul Genecin's Local Rule 56(a)(1)Statement. (*See*

Plaintiff's Local Rule 56(a)(1) Statement at ¶¶42-45 and evidence referred to therein.)[1]

2.   Paragraph 2 of Paul Genecin's Local Rule 56(a)(1) Statement violates Local Rule 56(a)(3)in that it contains no citation to evidence that would be admissible at trial. The only citation offered by Paul Genecin to support the allegation contained in paragraph 2 is to testimony by Paul Genecin; however, Paul Genecin's testimony concerning "any transaction with or statement by" Rita Genecin is inadmissible pursuant to Md. Code Cts. & Jud. Proc. Art., § 9-116 (the "Maryland Dead Man's Statute").[2]   Accordingly, no response by the Estate to this paragraph is required.  To the extent that such a response is required, the Estate denies the allegation set forth in paragraph 2 of Paul Genecin's Local Rule 56(a)(1)Statement.  The Estate avers that even if Paul Genecin's proffered testimony were admissible, and even if it were credible, it would not support the allegation in paragraph 2 that "Rita Genecin originally gave the Lautrec to Paul Genecin in July, 1999." Rather, Paul Genecin's testimony

[1] References herein to "Plaintiff's Local Rule 56(a)(1)Statement" are to the Statement filed in support of Plaintiff's motion for summary judgment; references to "PX-__" are to the exhibits filed with that motion.

[2] The inadmissibility of Paul Genecin's testimony was briefed by plaintiff in connection with the Motion for Prejudgment Replevin.  Consequently, defendant

demonstrates that he did not *accept* any gift of the Lautrec in July, 1999:

> My mother was alone with me and wanted to discuss the disposition of works of art in her possession.  The context for this was that she was frequently talking about her own death and making preparations for what would happen when. It wasn't a subject that I welcomed; however, she felt that it was time for me to say which works of art I would most want to own.  I said the Lautrec.  She said, "Well, it's yours."  I said, in July of 1999, "That's great, thank you.  We'll come back to this at some future point.  I'm not ready for you to give up all of your collections and make your distributions as if you were on your deathbed."

(Paul Genecin Tr. 119-120).  The Estate further avers that it is undisputed that the Lautrec was in Rita Genecin's home in Baltimore, Maryland at the time of her death on August 5, 2000; (Complaint 16 & 32; Paul Genecin Tr. 25:3 – 27:10); and that Rita Genecin acted as its owner at all times until she died. (Paul Genecin Tr. 25-27; Victoria Morrow Tr. 52).  Accordingly, the Estate avers that Rita Genecin never *delivered* the Lautrec to Paul Genecin.  (*See* Plaintiff's Local Rule 56(a)(1) Statement at ¶¶41-44 and evidence referred to therein.)

---

was on notice, when he prepared his motion, that in citing to his own testimony or affidavit he is proffering inadmissible evidence.

3.    Paragraph 3 of Paul Genecin's Local Rule 56(a)(1)
Statement violates Local Rule 56(a)(3)in that it contains no
citation to evidence that would be admissible at trial. The only
citation offered by Paul Genecin to support the allegation
contained in paragraph 3 is to testimony by Paul Genecin, which is
inadmissible pursuant to the Maryland Dead Man's Statute.
Accordingly, no response by the Estate to this paragraph is
required.  To the extent that such a response is required, the
Estate denies the allegation set forth in paragraph 3 of Paul
Genecin's Local Rule 56(a)(1)Statement. (See Plaintiff's Local Rule
56(a)(1) Statement at ¶41 and evidence referred to therein.)

4.    Paragraph 4 of Paul Genecin's Local Rule 56(a)(1)
Statement violates Local Rule 56(a)(3)in that it contains no
citation to evidence that would be admissible at trial. The only
citation offered by Paul Genecin to support the allegation
contained in paragraph 4 is to testimony by Paul Genecin, which is
inadmissible pursuant to the Maryland Dead Man's Statute.
Accordingly, no response by the Estate to this paragraph is
required.  To the extent that such a response is required, the
Estate denies the allegation set forth in paragraph 4 of Paul

Genecin's Local Rule 56(a)(1)Statement. (See Plaintiff's Local Rule 56(a)(1) Statement at ¶41 and evidence referred to therein.)

5.    Paragraph 5 of Paul Genecin's Local Rule 56(a)(1) Statement violates Local Rule 56(a)(3)in that it contains no citation to evidence that would be admissible at trial. It violates the duty of candor, moreover, for Paul Genecin to assert, as he does in paragraphs 5 and 6 of his Local Rule 56(a)(1) Statement, that any aspect of the execution or delivery of his January 4, 2000 document is undisputed.  The Estate has made clear from the inception of this litigation that it challenges all of Paul Genecin's assertions concerning this document.  The only "evidence" offered by Paul Genecin to support the allegation contained in paragraph 5 is his Exhibit D, a document dated January 4, 2000 (the "January 4, 2000 document") that he claims was executed by Rita Genecin in his presence and given to him. It is thoroughly inappropriate for Paul Genecin to proffer this document, which bears a Connecticut notary's *jurat* stamp and signature, as if it were a document witnessed in New Haven on January 4, 2000 by an officer of the State of Connecticut, without simultaneously disclosing what he has admitted in his answer, answers to interrogatories and deposition, namely that, in fact, Rita Genecin

was *not* in New Haven on January 4, 2000, and did *not* sign the January 4, 2000 document before the notary. (Complaint ¶¶46-47; Answer ¶46 (PX-T); Answers 1, 5 to Plaintiff's First Set of Interrogatories (PX-G);   Paul Genecin Tr. 81-85; Mulrine Tr. 23-25.) The notary in question was, on January 4, 2000, and continues to this day, to be a subordinate employee in the office of Paul Genecin. (Paul Genecin Tr. 84-85; Mulrine Tr.14. Plaintiff's Local Rule 56(a)(1) Statement at ¶33 and evidence referred to therein.) Paul Genecin's assertion in paragraph 5 of his Local Rule 56(a)(1) Statement that Rita Genecin signed this document on January 4, 2000, directly contradicts his deposition testimony that Rita Genecin did not sign either of the two duplicate originals of the January 4, 2000 document on January 4, 2000. (Paul Genecin Tr. 81-82.) (*See* Plaintiff's Local Rule 56(a)(1) Statement at ¶29 and evidence referred to therein.)  The issue of the false notarization of Paul Genecin's putative "deed of gift" was first raised between the parties in December 2000 in a letter from Victor's lawyer to Paul Genecin's then-counsel, Gerard Martin, Esq. of Baltimore.  In reply, Mr. Martin wrote on December 24, 2000:

> **Paul Genecin asserts that his mother was in New Haven on the day in question.**

(PX M). Paul Genecin now claims that he has "no recollection of being asked" by Mr. Martin, before Mr. Martin made wrote his December 24, 2000 letter, whether Rita Genecin was in New Haven on January 4, 2000. He further asserts that Mr. Martin did not send him a copy of the letter either before or after he sent it Mr. Lehman. Nor does he recall instructing Mr. Martin to correct the record. (Paul Genecin Tr. 147-149; 240-245.).

Paul Genecin now admits that Rita Genecin was *not* in New Haven, Connecticut on January 4, 2000 and that she did *not* sign either original of the January 4, 2000 Document in New Haven. Complaint ¶¶46-47; Answer ¶46; Paul Genecin Tr. 81-85; Mulrine Tr. 23-25; PX-G, Answers 1, 5). It is undisputed that there was no witness other than Paul Genecin to the alleged execution and delivery by Rita Genecin of the January 4, 2000 document. (Paul Genecin Tr. 82, Victoria Morrow Tr. 20-21). Paul Genecin's testimony, which would be necessary to authenticate the document, is inadmissible pursuant to the Maryland Dead Man's Statute. Accordingly, no response by the Estate to this paragraph is required. To the extent that such a response is required, the Estate denies the allegation set forth in paragraph 5 of Paul

Genecin's Local Rule 56(a)(1)Statement. (*See* Plaintiff's Local Rule 56(a)(1) Statement at ¶¶28-39 and evidence referred to therein.)

6.    Paragraph 6 of Paul Genecin's Local Rule 56(a)(1) Statement violates Local Rule 56(a)(3)in that it contains no citation to any supporting evidence. In fact, there are no witnesses other than Paul Genecin to the claimed delivery by Rita Genecin to him of the January 4, 2000 document;(Paul Genecin Tr. 82, Victoria Morrow Tr. 20-21); and his testimony is inadmissible pursuant to the Maryland Dead Man's Statute.  Accordingly, no response by the Estate to this paragraph is required.  To the extent that such a response is required, the Estate denies the allegation set forth in paragraph 6 of Paul Genecin's Local Rule 56(a)(1)Statement. (See Plaintiff's Local Rule 56(a)(1) Statement at ¶¶13-25, 35 and evidence referred to therein.)

7.    Paragraph 7 of Paul Genecin's Local Rule 56(a)(1) Statement violates Local Rule 56(a)(3)in that it contains no citation to any supporting evidence.  Accordingly, no response by the Estate to this paragraph is required.  To the extent that such a response is required, the Estate denies this paragraph and avers that, on January 12, 2000, before a notary public of the State of Maryland in the office of her financial advisers, Rita Genecin

executed a number of documents, including (a) a deed conveying the ownership of the real property and improvements located at 5616 Cross Country Boulevard, Baltimore Maryland 21209, where she alone was resident, from herself to herself, Victor Genecin and Paul Genecin as joint tenants, and (b) four fractional gift documents, in each of which she purported to make a gift of $1/15^{th}$ of the Lautrec to a member of Paul Genecin's family. (*See* Plaintiff's Local Rule 56(a)(1) Statement at ¶¶42-45 and evidence referred to therein.)

8.    Paragraph 8 of Paul Genecin's Local Rule 56(a)(1) Statement violates Local Rule 56(a)(3)in that it contains no citation to evidence that would be admissible at trial. Paul Genecin's testimony in support of the assertions contained in paragraph 8 is inadmissible pursuant to the Maryland Dead Man's Statute.  On its face, Paul Genecin's Exhibit E, a letter dated September 12, 2000 from Rita Genecin's financial advisers to counsel for the Estate, does not support the assertion contained in paragraph 8.  This document also would not be admissible at trial. Paul Genecin chose not to take the depositions of the signatories of this letter, Daniel E. Wagner and Marc J. Hertzberg, and presented no affidavit of either signatory. The Estate, by

contrast, has submitted the affidavits of Messrs. Wagner and Hertzberg and the affidavit of their administrator, Carol N. Sullivan.  None of these affidavits provides any support for Paul Genecin's contention. In the absence of any supporting admissible evidence, no response by the Estate to this paragraph is required. To the extent that such a response is required, the Estate avers that Rita Genecin's change in the ownership of real property and improvements was accomplished simultaneously with her execution of the four fractional share documents, by which she purported to make gifts of 1/15th of the Lautrec to Paul Genecin and to each of the other three members of his family. Indeed, Rita Genecin's simultaneous execution of: (a) the deed transferring ownership in her real property and (b) the fractional gift letters for the Lautrec, directly contradicts Paul Genecin's contention in paragraph 8. (Sullivan Aff. ¶12 and Exhibit F thereto; Wagner Aff. ¶¶4, 8; Hertzberg Aff. ¶12; *See* Plaintiff's Local Rule 56(a)(1) Statement at ¶¶42-44 and evidence referred to therein.)

9.   Paragraph 9 of Paul Genecin's Local Rule 56(a)(1) Statement violates Local Rule 56(a)(3)in that it contains no citation to any supporting evidence.  Accordingly, no response by the Estate to this paragraph is required.  To the extent that such

a response is required, the Estate avers that it is an undisputed fact that the Lautrec was in Rita Genecin's home in Baltimore, Maryland at the time of her death on August 5, 2000. (Complaint ¶¶16 & 32; Paul Genecin Tr. 25:3 – 27:10.)  It is undisputed that during the period December 1999 until just after Rita Genecin's death, the Lautrec never left her home. (Paul Genecin Tr. 118-120.) Plaintiff's Local Rule 56(a)(1) Statement at ¶11 and evidence referred to therein.)  It is undisputed that (a) on dates after January 4, 2000 and prior to Rita Genecin's death, Paul Genecin took several round trips by car from New Haven to Baltimore to visit his mother, (b) following her husband's death, Rita Genecin traveled several times to New Haven, once by car with a driver, and (c) on no such occasion did Paul Genecin take the Lautrec to New Haven or did Rita Genecin bring it with her to New Haven. (Paul Genecin Tr. 45-48; Paul Genecin Aff. ¶¶6-10.)  Paul Genecin had no difficulty transporting the Lautrec in his car, together with all of the other valuable works of art belonging to the Estate, to New Haven after Rita Genecin's death. (Paul Genecin Tr. 61.)

10.  Paragraph 10 of Paul Genecin's Local Rule 56(a)(1) Statement violates Local Rule 56(a)(3)in that it contains no citation to evidence that would be admissible at trial. The only

citation offered by Paul Genecin to support the allegation
contained in paragraph 10 is to testimony by Paul Genecin, which is
inadmissible pursuant to the Maryland Dead Man's Statute.
Accordingly, no response by the Estate to this paragraph is
required.  To the extent that such a response is required, the
Estate denies the allegation set forth in paragraph 10 of Paul
Genecin's Local Rule 56(a)(1)Statement. (See Plaintiff's Local Rule
56(a)(1) Statement at ¶¶41 and evidence referred to therein.)

11.  Paragraph 11 of Paul Genecin's Local Rule 56(a)(1)
Statement violates Local Rule 56(a)(3)in that it contains no
citation to evidence that would be admissible at trial. The only
"evidence" offered by Paul Genecin to support the allegation
contained in paragraph 11 is a series of purported "deeds of gift,"
notarized by Paul Genecin's subordinate, Marion P. Mulrine. Ms.
Mulrine admits that she placed her notary stamp on documents to
notarize what appeared to be Rita Genecin's signature even though
they were not signed by Rita Genecin in Mulrine's presence.
(Mulrine Tr. 14-15, 26-29.)

It is undisputed that there are no witnesses other than Paul
Genecin to the claimed delivery by Rita Genecin to him of any of
these purported "deeds of gift," (Paul Genecin Tr.81-85; Victoria

Morrow Tr. 20-21; Plaintiff's Local Rule 56(a)(1) Statement at ¶39

and evidence referred to therein). Paul Genecin's testimony is

inadmissible pursuant to the Maryland Dead Man's Statute.

Accordingly, no response by the Estate to this paragraph is

required.  To the extent that such a response is required, the

Estate denies the allegation set forth in paragraph 11 of Paul

Genecin's Local Rule 56(a)(1)Statement to the extent that the said

paragraph asserts that the works of art described therein were

gifted in the manner described in paragraph 10 and to the extent

that the said paragraph asserts that the works of art described

therein were gifted by means of the so-called "deeds of gift"

described therein. It is an undisputed fact that Rita Genecin

physically delivered each of the works of art described in

paragraph 11 to Paul Genecin, and that, unlike the Lautrec, none of

the works of art described in paragraph 11 was in Rita Genecin's

home when she died.  (Paul Genecin Tr. 62-63, 100; PX-C.)

DEFENDANT VICTOR GENECIN, IN HIS INDIVIDUAL CAPACITY, responds as follows to the assertions contained in the Local Rule 56(a)(1)Statement of defendant Paul Genecin concerning the Third Count of the Complaint:

12.  Victor Genecin admits the allegation set forth in paragraph 12 of Paul Genecin's Local Rule 56(a)(1)Statement.

13.  Victor Genecin admits the allegation set forth in paragraph 13 of Paul Genecin's Local Rule 56(a)(1)Statement.

14.  Victor Genecin admits the allegation set forth in paragraph 14 of Paul Genecin's Local Rule 56(a)(1)Statement but avers that:

a.  A better-quality copy of the document that appears in Exhibit O, showing this document as received by Schwab, is to be found as Exhibit A to the Affidavit of Garrett R. Wynne, Esq., sworn to December 17, 2003, submitted in support of Victor Genecin's motion for summary judgment ("Wynne Aff."); and,

      b.    A copy of the document that appears in Exhibit Q, showing this document as received by Schwab on October 20, 1998, is to be found as Wynne Aff. Exhibit B.

15.    Victor Genecin admits the allegation set forth in paragraph 15 of Paul Genecin's Local Rule 56(a)(1)Statement.

16.    Victor Genecin admits the allegation set forth in paragraph 16 of Paul Genecin's Local Rule 56(a)(1)Statement.

17.    Victor Genecin admits the allegation set forth in paragraph 17 of Paul Genecin's Local Rule 56(a)(1)Statement.

18.    Victor Genecin denies the allegation set forth in paragraph 18 of Paul Genecin's Local Rule 56(a)(1)Statement.  The *only* admissible evidence establishes that the penciled percentages are in the handwriting of Rita Genecin. (Sullivan Aff. ¶4 and Exhibit A thereto; Wynne Aff. ¶¶3-12 and Exhibit A thereto; Defendant Victor Genecin's Local Rule 56(a)(1) Statement at ¶¶56-63 and evidence referred to therein.)

19.    *See* paragraph 18 *supra*.

20.    Victor Genecin admits the allegation set forth in paragraph 20 of Paul Genecin's Local Rule 56(a)(1)Statement.

21.    Victor Genecin denies the allegation set forth in paragraph 21 of Paul Genecin's Local Rule 56(a)(1)Statement to the

extent that the said paragraph asserts that Paul Genecin's Exhibit R is "the most recent designation of beneficiary received by Schwab *from Rita Genecin.*" Victor Genecin avers that Exhibit R, on its face, was signed by Rita Genecin on October 6, 1998, *i.e.*, two days *before* she signed the beneficiary designations that appear as Paul Genecin's Exhibits O and Q, and that Paul Genecin's Exhibit R was received by Rita Genecin's financial advisers from her lawyer in October, 1998, and sent by them to Schwab in October, 1999, *without consulting with Rita Genecin or her lawyer*. (Hertzberg Aff. ¶¶4-5; Defendant Victor Genecin's Local Rule 56(a)(1) Statement at ¶63 and evidence referred to therein.)

22.  Victor Genecin denies the allegation set forth in paragraph 22 of Paul Genecin's Local Rule 56(a)(1)Statement, avers that prior to Rita Genecin's death he had no knowledge of Rita Genecin's intent concerning distribution of her Schwab IRA. Victor Genecin testified that his mother never discussed with him what disposition she was making of the Schwab IRA. (Victor Genecin Tr. 41.) Moreover, the portion of the transcript cited by Paul Genecin makes clear that the first time Victor Genecin "saw anything evidencing beneficiary designations" was October 25, 2000, *i.e.*,

more than two months *after* Rita Genecin died. (Victor Genecin Tr. 60-61.)

23.   Victor Genecin denies the allegation set forth in paragraph 23 of Paul Genecin's Local Rule 56(a)(1)Statement to the extent that Paul Genecin asserts that any matter in paragraph 23 "is consistent with" the unsupported allegation of paragraph 22, and to the extent that Paul Genecin asserts that his Exhibit U states that "Rita Genecin had executed a Beneficiary Designation form." Paul Genecin's Exhibit U is a letter dated September 29, 1998, nine days *before* Rita Genecin executed the Schwab Beneficiary Designation with its 60/40 allocation, from Max E. Blumenthal, Esq., Rita Genecin's then-lawyer, transmitting a *per stirpes* beneficiary designation form that he had prepared for Rita Genecin's signature. The *per stirpes* forms was not executed by Rita Genecin until October 6, 1998 (Paul Genecin's Exhibit R), two days *before* she signed the 60%/40% designation, and on October 8, 1998 (Paul Genecin's Exhibit Q), when she *simultaneously* signed the 60%/40% designation. (*See* Defendant Victor Genecin's Local Rule 56(a)(1) Statement at ¶¶56-60 and evidence referred to therein.)

24.   Victor Genecin denies the allegation set forth in paragraph 24 of Paul Genecin's Local Rule 56(a)(1)Statement to the

extent that that paragraph (a) states, without citation to any paragraph of the Complaint, that there is an allegation in the Complaint that Paul Genecin "either altered or procured the alteration of one of the IRA beneficiary forms" (these words appear nowhere in the Complaint), (b) suggests that such an allegation is necessary to the Complaint, and (c) implies that, in order to prevail on the Third Count, Victor Genecin has the burden of proving that his brother, Paul Genecin, committed fraud in this case. The precise allegation in the Complaint is that "Paul Genecin, or someone acting on his behalf, caused falsified documents, ostensibly those on file with Schwab, to be sent to Victor Genecin. These documents were sent to Victor Genecin in order to persuade him to instruct Schwab, in his capacity as personal representative of the Estate, to divide the Schwab IRA giving 50% of the account to each beneficiary." (Complaint ¶28, referring to Complaint ¶¶56-72.) It is *undisputed* that, on December 7, 2000: (a) Kathy Priest, then-counsel for Paul Genecin, sent Victor Genecin's counsel, Douglas Lehman, Esq., a copy of Rita Genecin's Schwab beneficiary designation form that appeared to come from Schwab's records, but that had been altered by Karen David, a Schwab employee, to remove the "60%" and "40%" and replace these

designations with two "50"s (PX-V; Wynne Aff. ¶¶14-17 and Exhibit C thereto); (b) Ms. Priest transmitted this document on Paul Genecin's behalf for the purpose of persuading Victor Genecin, in his role of Personal Representative, to instruct Schwab to divide the Schwab IRA in equal percentages to him and to Paul Genecin (Victor Genecin Tr. 35); (c) Karen David of Schwab sent Victor Genecin a second altered version of Rita Genecin's Schwab beneficiary designation form that appeared to come from Schwab's records, but that she had altered a second time to remove the "60%" and "40%" and replace these designations with two "50"s different from the "50"s on the document provided to Ms. Priest (PX-Y; Wynne Aff. ¶¶18-22 and Exhibit D thereto; Defendant Victor Genecin's Local Rule 56(a)(1) Statement at ¶¶66-74 and evidence referred to therein.) Victor Genecin testified as to the grounds for his belief that, contrary to the alleged conclusion reached in Schwab's internal investigation, Karen David did not act on her own in falsifying Schwab documents:

> Q. Tell me why you have reason to disbelieve Schwab's conclusion.
>
> A. Because Karen David – according to Schwab's report, Karen David told the representative of Schwab that she had reproduced a copy of the beneficiary designation and that it was light and wasn't faxing well and so what she did was darken in the numbers.

Understand, Karen David's testimony was that she reproduced the image that was scanned on Schwab's imaging system from the original that was in Schwab's possession that was in a file somewhere in California and had to be retrieved t make sure what the original really said because we'd gotten these doctored copies from Karen David.

So Karen David's statements to Schwab's investigators who were – who interviewed her by telephone was that all she had done was to darken in numbers that were too light to be faxed to Kathy Priest and that she had done that just once and that she had faxed it to Priest once and she faxed it to me once.

There were a couple of things about that statement that were not true that were not picked up on by Schwab's investigators.  The first one is that there are percentage signs on the original document and on the copy kept by Wagner that are not present on the copy – on either version sent by Karen David.  So clearly, there was some whiting-out that went on as well as doctoring of numbers.

In the second place, she didn't do it once.  She did it twice.  There are two versions of this document.  For some reason, she did not keep or did not have readily available the one that she had sent to Ms. Priest when I called so she sent me a different one.  She went to considerable effort to produce these documents giving the impression that there was a 50/50 division when in fact, according to the handwritten documents, it was not.

(Victor Genecin Tr. 93-95.) Victor Genecin also acknowledged

candidly that he had no specific evidence that Karen David was

acting in accordance with instructions. (Victor Genecin Tr. 95.)

Although the forwarding of falsified Schwab beneficiary designations, together with the presence of a false and misleading *jurat* on the January 4, 2000 document, explains the need for judicial intervention in this case, evidence of fraud on the part of Paul Genecin is not necessary to establish that the Schwab IRA should be distributed 60/40 in accordance with the Rita Genecin's authentic beneficiary designation, any more than proof of fraud is needed to determine that the January 4, 2000 Document was not an effective *inter vivos* gift of the Lautrec.

## Any Disputed Issues of Fact are Not Material

As set forth above, the Estate and Victor Genecin in his individual capacity each dispute certain factual allegations proffered by Paul Genecin. It is respectfully submitted, however, that these factual allegations are not material, and that, as set forth in the motion for summary judgment filed on December 29, 2003 by the Estate and Victor Genecin, there are no disputed issues of material fact herein, and judgment should be entered as a matter of law for the Estate as to the First and Second Counts of the Complaint, and for Victor Genecin as to the Third Count.

January 21, 2004

THE PLAINTIFF,
ESTATE OF RITA GENECIN, by VICTOR
GENECIN, Personal Representative


By_____
David T. Grudberg, ct01186
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange St.
P.O. Box 606
New Haven, CT   06503
Ph.: (203) 772-3100
Fax: (203) 772-1691
Email: dgrudberg@jacobslaw.com


By_____
Richard L. Mattiaccio, ct24592
PAVIA & HARCOURT, LLP
600 Madison Avenue
New York, New York 10022
Ph.: (212) 508-2311
Fax: (212) 735-7911
Email: RMattiaccio@pavialaw.com


DEFENDANT, VICTOR GENECIN, IN HIS
INDIVIDUAL CAPACITY


By: _____
Richard L. Mattiaccio, ct24592
Pavia & Harcourt LLP
600 Madison Avenue
New York, NY   10022
Ph.: (212) 508-2311
Fax: (212) 735-7911
Email: RMattiaccio@pavialaw.com

<u>Certification</u>

The undersigned hereby certifies that a copy of **Local Rule 56(a)2 Statement of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin in his Individual Capacity** was served by Federal Express, overnight courier, on January 21, 2004 to:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue,
Durham & Noonan, P.C.
741 Boston Post Rd.
Guilford, CT 06437


David T. Grudberg, Esq.
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange St.
New Haven, CT  06503


_____
Richard L. Mattiaccio,
  Ct24592