UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ESTATE OF RITA GENECIN, by :
VICTOR GENECIN, Personal :
Representative, :
    Plaintiff, :
                                      : Civil No. 301CV00211(MRK)

VS. :

PAUL GENECIN and VICTOR GENECIN, :
in his individual capacity, :
    Defendants. :   JANUARY 21, 2004

## DEFENDANT PAUL GENECIN'S REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's brief is filled with false parallels, misconstrued documents, appeals to exclude admissible evidence and blatant sophistry, all in an attempt to frustrate the known wishes of Rita Genecin. It is ironic, to say the least, that these arguments were made under the guise of protecting against "self-interested perjury", at a time when it is the plaintiff who throughout this litigation has attempted to misconstrue the facts and misuse the law in his effort to frustrate the acknowledged intentions of Rita Genecin. The Court should reject these efforts and uphold the intentions of the donor. The plaintiff's motion for summary judgment should be denied, and the defendant's motion for summary judgment should be granted.

1.    <u>Maryland Law Controls</u>.

The defendant agrees that Maryland law controls the instant dispute. Indeed, in his own motion for summary judgment, Paul Genecin relied on Maryland case law directly on point to establish that Rita Genecin had constructively delivered the Lautrec to Paul Genecin.

**DELANEY, ZEMETIS, DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168 • FAX: (203) 458-4424
JURIS NO. 415438

2. <u>Victor Genecin Misconstrues Maryland Law Regarding Constructive Delivery.</u>

Victor Genecin, in his brief, argues that Rita Genecin did not "relinquish dominion and control" over the Lautrec and, therefore did not complete a valid gift of the Lautrec to Paul Genecin. Maryland law does not require the donor to relinquish dominion and control. Constructive delivery is recognized where "the donor <u>thought</u> he had done all he could do to relinquish dominion and control over the donated item." <u>Malloy v. Smith</u>, 265 Md. 460, 466, 290 A.2d 486 (1972) (emphasis added). Indeed, the fact, that the Lautrec continued to hang in the home of Rita Genecin is irrelevant as Rita Genecin had already done all she could do to relinquish dominion and control of the gift. On at least three occasions, Rita Genecin requested that Paul Genecin remove the Lautrec from her home. Due to the value of the painting and his concerns for the safe transport of the Lautrec, Paul allowed the Lautrec to remain at Rita Genecin's home. Similar conduct did not invalidate gifts in <u>Snyder v. Stoffer</u>, 270 Md. 647, 313 A.2d 497 (1974), <u>Rogers v. Rogers</u>, 271 Md. 603, 319 A.2d 119 (1974), <u>Registrar of Wills of Somerset County v. Sterling</u>, 264 Md. 638, 287 A.2d 771 (1972), or <u>Smith v. Acorn</u>, 32 A.2d 252 (D.C. App. 1943). There is no reason for this Court to follow a different rule here.

Indeed, the case for upholding the gift is even stronger in the instant matter than in <u>Snyder</u>, <u>Rogers</u> or <u>Sterling</u>. In the present case not only did Rita Genecin on three separate occasions tell Paul Genecin that he should remove the Lautrec, she also executed an unequivocal Deed of Gift, thereby removing any possible doubt as to her "true intentions." She then went even further and actually transferred an interest in her home to Paul Genecin in

order that there be no question as to the validity of the gift. The purpose of the Maryland rules regarding delivery and constructive delivery were designed to ensure that the donor's intent is effectuated. What Victor Genecin has argued in this case is that this Court should utilize Maryland law to frustrate what he himself admits was his mother's intention.[1] No damage will be done to Maryland law by a ruling which carries out the intent of Mrs. Genecin.

    3.    <u>The Subsequent Fractional Deeds of Gift Constitute Clear and Convincing Evidence That Rita Genecin Intended That Paul Genecin Have The Lautrec In Its Entirety.</u>

Victor Genecin attempts to rely on Rita Genecin's subsequent execution of fractional deeds of gift in the Lautrec as evidence that Rita Genecin had not already given the Lautrec to Paul. The short answer to this suggestion is that the fractional Deeds of Gift are "a non-event", as acknowledged by Rita Genecin's financial advisor, Daniel Wagner. Rita Genecin had already through the January 4 Deed of Gift unequivocally given Paul Genecin the Lautrec in its entirety; having made that gift, she had no power to revoke it, nor did she have any power to give fractional gifts to anyone.

It is clear from the evidence before the Court that the subsequent fractional Deeds of Gift were created by Rita Genecin as a means of avoiding the tax consequences of the gift of the entire Lautrec evidenced by the January 4, 2000 Deed of Gift. Indeed, Victor testified as follows:

> Well, Mr. Wagner said that it was his understanding that the reason that there was a – that each member – my brother and each member of his family received a 1/15th gift in 2000 was that

---

[1] In his deposition Victor Genecin acknowledged that it was his mother's intention that the entire Lautrec be given to Paul Genecin and his family. Deposition of Victor Genecin, p. 54 (Exhibit A).

3

>the Lautrec was in 2000 appraised at $150,000.00 so that each share was within the annual exclusion, and that Mr. Wagner understood the Plan would be that in the future years, my brother would give fractional shares of the Lautrec to members of my brother's family, equivalent to the annual exclusion, until such time as she had made gifts of the entire print.

Exhibit A, Deposition of Victor Genecin, p. 53.

There is nothing inconsistent in Rita Genecin drafting the subsequent fractional Deeds of Gift of the Lautrec in an attempt to avoid tax consequences. Indeed, under Maryland law even where the donor reserves actual proprietary rights in the subject matter of the gift, that will not invalidate the gift. Thus, the court in Howard v. Hobbs, 125 Md. 636, 94 A.2d 318 (1915) held that "a reservation by the donor of certain proprietary rights in the subject of the gift, such as the use and enjoyment thereof, is not necessarily consistent with the absolute character of the gift and gifts accompanied by such reservations have been repeatedly upheld." Id. at 637.

Plaintiff makes much of affidavits he procured from Rita Genecin's financial advisors to the effect that they were unaware of the January 4, 2000 Deed of Gift. This fact is of no consequence, nor is it at all surprising. There was no requirement that Rita Genecin inform her financial advisors of the gift she had made. Indeed, it is likely that she decided not to so inform them, because she wished to have a clean paper trail for the IRS, and perhaps did not want her financial advisors to register any objection. The affidavits of both Mr. Wagner and Mr. Hertzberg explicitly comment on the fact that it was Rita Genecin's desire to minimize her gift taxes, which explains why she would execute the fractional Deeds of Gift even though she had executed the January 4, 2000 Deed of Gift just two days earlier.

4

The argument regarding the failure of Rita Genecin to tell her financial advisors about the January 4, 2000 Deed of Gift is perplexing on another level. Since it is undisputed that the January 4, 2000 Deed of Gift was signed by Rita Genecin, it is of no consequence whether she told anyone about it. The question to be answered with regard to the January 6, 2000 fractional Deeds of Gift is simply whether those instruments could have the effect of revoking the earlier gift. Plaintiff has failed to find any case law, in Maryland or elsewhere, to support such a proposition. Rita Genecin's financial advisor was correct when he labeled the fractional Deeds of Gift a "non-event."

    4.    <u>Paul Genecin's Failure to Tell His Brother That He Owned The Lautrec Is Not Probative Of Any Issue Relative To This Dispute.</u>

This appears to be another argument designed only to mislead the Court. It should come as no surprise to anyone that neither Paul Genecin nor Victor Genecin took an inventory of the belongings that they believed they owned immediately after their mother killed herself. Indeed, Paul Genecin testified as follows:

> Q:    Was there any discussion at that time of ownership of the particular pieces?
>
> A:    If there was, I don't remember. I was primarily thinking about my mother and dealing with visitors, well-wishers. I don't have a clear recollection.

Deposition of Paul Genecin, p. 62 (relevant portions of which are attached hereto as Exhibit F).

Once again, it must be remembered that there is no dispute that Rita Genecin signed the January 4, 2000 Deed of Gift. Therefore, whether Paul Genecin remembered to mention this gift to his brother within a week or within a year of their mother's death is simply

5