UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF RITA GENECIN, by<br>VICTOR GENECIN, Personal<br>Representative,<br>    Plaintiff, | : <br> : <br> : <br> : <br> : | <br><br><br><br>CIVIL NO.3:01CV00211(MRK) |
| VS. | : <br> : <br> : | |
| PAUL GENECIN and VICTOR GENECIN,<br>in his individual capacity,<br>    Defendants. | : <br> : <br> : | FEBRUARY 3, 2004 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTIONS OF
PLAINTIFF ESTATE OF RITA GENECIN AND OF
<u>DEFENDANT VICTOR GENECIN FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I.   PAUL GENECIN LACKS ADMISSIBLE EVIDENCE THAT THE LAUTREC WAS A GIFT..................................1

II.  THE EVIDENCE AND THE LAW DEMONSTRATE THAT RITA GENECIN'S IRA ACCOUNT SHOULD BE DIVIDED AS SPECIFIED IN RITA GENECIN'S 60%/40% SCHWAB BENEFICIARY DESIGNATION.........................................7

CONCLUSION ............................................10

**TABLE OF AUTHORITES**

**Cases**

Armstrong v.Burdette Tomlin Mem. Hosp.
  276 F.Supp.2d 264, 277 (D.N.J. 2003) ................... 2

Farah v. Stout
  12 Md.App. 106, 684 A.2d 471 (Md. Ct. Sp. App. 1996) .... 6

Hadid v. Alexander
  55 Md. App. 344, 462 A.2d 1216 (Md. Ct. Sp. App. 1983) .. 2

Johnson v. Swann
  211 Md. 207, 213, 126 A.2d 603 (Md. 1956) ............... 8

Knight v. U.S. Fire Ins. Co.
  804 F.2d 9, 12 (2d Cir. 1986), *cert. denied* 480 U.S. 932
  (1987) .................................................. 9

Malloy v. Smith
  265 Md. 460, 290 A.2d 486 (Md. 1972) ................... 2

Montgomery County v. Herlihy
  83 Md. App. 502, 575 A.2d 784 (Md. Ct. Sp. App. 1990) ... 2

Reddy v. Mody
  39 Md. App. 675, 388 A.2d 555 (Md. Sp. App. 1978) ....... 2

Registrar of Wills v. Sterling
  264 Md. 638, 287 A.2d 771 (1972) ....................... 2

Shirk v. Suburban Trust Co.
  248 Md. 114, 235 A.2d 549 (Md. 1967) ................... 2

Smith v. Acorn
  32 A.2d 252 (D.C. Ct. Munic. App. 1943) ................ 2

Tilghman v. Frazer
  191 Md. 132, 62 A.2d. 596 (Md. 1948) ................... 4

**Rules**

Fed.R.Evid. 901 .......................................... 2

## I.   PAUL GENECIN LACKS ADMISSIBLE EVIDENCE THAT THE LAUTREC WAS A GIFT.

Maryland's requirement that a claimant prove each element of a gift by the "clearest proof," and its Dead Man's Statute, both arise from the recognition that a claim against an estate of a "gift" that no one ever heard about when the decedent was alive is rife with danger that the claimant is acting fraudulently.[1]  Paul Genecin cannot cite a single case in which the Maryland courts have recognized a "gift" not proven by the testimony of disinterested third parties.  Lacking any such witness, he cannot come close to proving his claim by the clearest proof.

In place of admissible evidence, Paul puts forward his falsely-notarized January 4, 2000 document.[2]  Without citation to any admissible evidence, Paul asserts repeatedly that Rita Genecin signed this document and gave it to him. P.G. Opp. Mem. at 2, 5, 6, 7 & 10. Repetition will not make it so.  The document cannot be admitted into

---

[1] *See* Reply to Plaintiff's Motion for Summary Judgment ("P.G.Opp.Mem.") at 8 ("The obvious purpose of the Dead Man's Statute is to prevent the perpetration of fraud with respect to a decedent's estate").

[2] The January 4, 2000 document looks like a deed of gift, made and acknowledged by Rita Genecin on January 4, 2000 before a notary in New Haven, but it is now undisputed that it is not what it appears to be: Rita Genecin did not sign the document on January 4, 2000, and she never appeared before the notary (a subordinate of Paul's) to acknowledge it.  (P.G. R. 56(a)(2) St., ¶ 11.) Indeed, it is now undisputed that Rita Genecin was not even in New Haven that day, *id.*, ¶ 32, but when Victor's lawyer first raised the issue of the false notarization, Paul's then-lawyer wrote in reply, "*Paul Genecin asserts that his mother was in New Haven on the day in question.*" PX-M.

evidence unless it can be authenticated.[3] It cannot be effective as a deed, moreover, unless its delivery by Rita Genecin to Paul can be proved. Paul concedes that he has no evidence on these points apart from his own testimony, which is precluded by the Dead Man's Statute.[4]

---

[3] Fed.R.Evid. 901; see Armstrong v.Burdette Tomlin Mem. Hosp., 276 F.Supp.2d 264, 277 (D.N.J. 2003)("The proponent of an exhibit has the burden of introducing evidence sufficient to show that the exhibit is what the proponent claims it to be."); see also Hadid v. Alexander, 55 Md. App. 344, 462 A.2d 1216 (Md. Ct. Sp. App. 1983).

[4] The cases Paul cites in his efforts to demonstrate some form of delivery or to evade the strictures of the Dead Man's Statute are unhelpful to him. In Snyder and Rogers, the facts supporting the claims of gifts were adduced from the testimony of disinterested third party witnesses. See Memorandum of Law in Opposition to Motion of Defendant Paul Genecin for Summary Judgment ("V.G.Opp.Mem.") at 17 fn.4. Similarly, in Malloy v. Smith, 265 Md. 460, 290 A.2d 486 (Md. 1972), a gift was proved by testimony of a disinterested witness that decedent had endorsed a cashier's check to his son and placed it in an envelope, which he sealed and gave to the witness with instructions to deliver it to the son if decedent should die. In Registrar of Wills v. Sterling, 264 Md. 638, 287 A.2d 771 (1972), it was an uncontested fact that the donor had made physical delivery of stock certificates to the donee, and the only issue was whether the decedent's retention of dividends during his life invalidated the gift. In Smith v. Acorn, 32 A.2d 252 (D.C. Ct. Munic. App. 1943), a notary public testified to the execution by decedent of the assignment form on the back of the certificate of title to a car, and further testified that he had witnessed delivery of the document by decedent to the claimant.

The cases that Paul cites in which the Maryland courts held the Dead Man's Statute inapplicable concerned the admissibility of testimony by persons who were **not** putative donees. See P.G.Opp.Mem. at 7: Montgomery County v. Herlihy, 83 Md. App. 502, 575 A.2d 784 (Md. Ct. Sp. App. 1990)(in slip and fall case prosecuted by deceased plaintiff's personal representative, plaintiff's own statements about the accident, in the form of answers to interrogatories, held admissible); Reddy v. Mody, 39 Md. App. 675, 388 A.2d 555 (Md. Sp. App. 1978)(in medical malpractice-wrongful death case, non-party attending nurse was properly permitted to testify that decedent, during adverse reaction to anesthetic, admitted that she had previously had a similar reaction, but it was reversible error, pursuant to the Dead Man's Statute, for trial court to admit defendant-physician's testimony to the same effect); Shirk v. Suburban Trust Co., 248 Md. 114, 235 A.2d 549 (Md. 1967)(testimony by bank officers that plaintiff told them that decedent

2

To negate the facts that cloud his claim, Paul *assumes* that a completed gift of the Lautrec was made by delivery of the January 4, 2000 document, even though completion of the alleged gift is just what Paul himself must establish by the clearest proof.[5]  For example, he asserts that Rita Genecin's duly-witnessed January 12, 2000 fractional share documents were a "non-event" because "[she] had already through the January 4 Deed of Gift unequivocally given Paul Genecin the Lautrec in its entirety." P.G. Opp. Mem. at 3. The January 4, 2000 document, however, is a piece of paper that only Paul claims to have witnessed while Rita Genecin was alive and that, he now admits, he caused to be falsely notarized.  The fractional share documents, by contrast, were created by Rita Genecin's financial advisers, pursuant to her instructions, and are authenticated by disinterested witnesses, including the notary before whom they were acknowledged.[6] These documents show that Rita Genecin clearly believed that the Lautrec was hers to dispose of as she pleased: either she never knew about the January 4,

---

had set up joint accounts so that plaintiff could pay bills while decedent was ill and that plaintiff would turn over the balance of the accounts to decedent's executor if decedent should die was admissible against plaintiff who claimed that decedent had placed plaintiff's name on her accounts to give her rights of survivorship, because bank was not party to transaction between plaintiff and decedent).

[5] *See* V.G.Opp.Mem. at 13-14.

[6] *See* Sullivan Aff. ¶¶8-9.

2000 document, or she believed that, with the Lautrec still in her house, Paul's document was a "non-event."

There is, moreover, no legal basis for Paul to claim that Rita Genecin's execution of a new deed for her home constituted delivery of the Lautrec to Paul. <u>Tilghman v. Frazer</u>, 191 Md. 132, 62 A.2d. 596 (Md. 1948).[7] If there were some authority to support this theory of constructive delivery, it would still make no factual sense as applied to 100% of the Lautrec: Rita Genecin executed the new deed to her home in the same meeting in which she executed the fractional share documents, so that the re-deeding cannot have reflected an intent to convey the entire Lautrec.

Paul further asserts that Rita Genecin re-deeded her house "in order to remove any doubt as to the validity of gifts of artwork."[8] Had Rita Genecin desired to make it clear that she had given the Lautrec to Paul, there surely would be witnesses other than Paul and his wife who would testify that they heard from her about the gift to her son of the single most valuable item that she owned. Undeterred by decency, Paul attempts to explain his mother's silence by positing, without any evidentiary basis, that "it is likely" that she elected not to inform her financial

---

[7] See Memorandum of Law in Support of Motion of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin for Summary Judgment ("V.G. Mem.") at 20-21; V.G. Opp.Mem. at 27-28.
[8] P.G. R. 56(a)(2) St., ¶ 40 & P.G.Opp.Mem. at 3.

4

advisers about the January 4, 2000 document and the gift of the whole Lautrec "because she wished to have *a clean paper trail for the IRS*, and perhaps did not want her financial advisers to register any objection." P.G. Opp. Mem. at 4 (emphasis supplied). Paul testified that he could not speculate as to how Rita Genecin would have felt, had she lived, about paying gift tax on a gift of the entire Lautrec. P.G. Tr. 129. Now, however, he accuses his dead mother of scheming to deceive the government.

    Paul repeats his mantra that the January 4, 2000 document is "undisputed" as a pretext for arguing that it is "irrelevant" that he made no claim to ownership of 100% of the Lautrec in the first weeks after Rita Genecin died. P.G. Opp. Mem. at 5-6. He slips silently past the undisputed facts that: 1) he made no mention of a claim to the entire Lautrec even when Rita Genecin's financial advisers gave copies of the fractional share documents to him and Victor; 2) he took possession of the Lautrec as bailee of the Estate, put it in his car with the other twelve valuable works of art that belonged to the Estate, and drove them all to New Haven;[9] and 3) he then obtained insurance for the Lautrec, listing the Estate as its owner.

---

[9] This fact demonstrates the ease with which Paul could have transported the Lautrec from Rita Genecin's home to his own, had she really wanted him to do so. *Cf*. P.G.Opp.Mem. at 11.

5

These facts are fatal to the clear showing of the elements of delivery and acceptance that Paul must make: the only inference that can be drawn from them is that Paul himself did not believe that he had been given the entire Lautrec.[10]

Paul's insistence[11] that he can rely on the testimony of his wife, Victoria Morrow, is puzzling in light of her denial of any knowledge concerning his January 4, 2000 document.[12] In apparent recognition that Morrow's testimony would be inadmissible hearsay,[13] Paul has submitted no Morrow affidavit and has proffered only a single page of her deposition, in which she testified that Rita Genecin, just before she died, sent Paul home from a visit, not with the Lautrec, but rather with his car full of "vases and things like that."[14] Paul admits that his wife has taken an active and interested role in this litigation and in all aspects of the Estate, and has represented that she had his authorization to act on his behalf and in his stead.[15] Morrow is clearly a real party in interest in this case, and, as such, her testimony is barred by the Dead Man's

---

[10] See Pl. Mem. at 5-7; Pl. Opp. Mem. at 7.
[11] P.G. Opp. Mem. at 6.
[12] See Victoria Morrow Tr. 20-21; P.G. R. 56(a)(2) St., ¶35.
[13] See Farah v. Stout, 112 Md.App. 106, 684 A.2d 471 (Md. Ct. Sp. App. 1996)(testimony concerning decedent's expressions of intent to make gift excluded as hearsay).
[14] P.G. Mem. at 2, Ex. V.
[15] P.G. R. 56(a)(2) St., ¶¶51, 52.

Statute.[16]  In any event, the only Morrow testimony sponsored by Paul undermines his claim:  it confirms that, just before she died, Rita Genecin chose not to deliver the Lautrec, giving Paul, instead, a load of clay pots.

    **II. THE EVIDENCE AND THE LAW DEMONSTRATE THAT RITA GENECIN'S IRA ACCOUNT SHOULD BE DIVIDED AS SPECIFIED IN RITA GENECIN'S 60%/40% SCHWAB BENEFICIARY DESIGNATION.**

Paul agrees that, to determine the proper division of Rita Genecin's IRA, this Court must ascertain her intent based upon her beneficiary designations.[17]  He then argues that this Court should ignore the most recent expression of her intent -- the documents she executed at the offices of her financial advisers on October 8, 1998 -- in favor of a document she signed two days earlier, on the ground that the earlier document was received later by Schwab.  It is undisputed, however, that this document was sent to Schwab by Rita Genecin's financial adviser, who did not inform her that he was doing so. P.G. R. 56(a)(2) St., ¶63.

Paul offers no legal support for his theory that an earlier-executed document revoked later ones because it happened to be received later by Schwab.  The account agreement contains no statement that the last-received designation controls, and the agreement is clear on its

---

[16] *See* V.G. Mem. at 27-28.

[17] P.G. Opp. Mem. at 12.

7

face that the owner of the account decides who the beneficiaries are and the portions to which they are entitled. It would be absurd for Schwab, or for this Court, to imply the term for which Paul argues, as it would place an account holder's expressions of intent at the mercy of the timing of their delivery.

The October 6, 1998 "*per stirpes*" document, moreover, could not have superseded the two October 8, 1998 documents even if it had been executed at a subsequent date. Under Maryland law, the words "*per stirpes*" have "no meaning at all with regard to named beneficiaries," Johnson v. Swann, 211 Md. 207, 213, 126 A.2d 603 (Md. 1956), so even a later "*per stirpes*" document would not change or revoke the handwritten percentages specifically designated by Rita Genecin to go to each of her sons.  In addition, the October 6 and October 8 "*per stirpes*" documents are identical.  An instrument is not a revocation unless it contains language specifically revoking an earlier disposition; a revocation may be implied only if a *new* disposition is inconsistent with an *earlier* one.[18]

Paul also seeks to dismiss the Schwab IRA Application completed by his mother by asserting that "there is absolutely no evidentiary support for Victor's claim that

---

[18]   See V. G. Opp. Mem. at 31-32.

8

the 60/40 designation was penciled in on that document by Rita Genecin."[19] In fact, Sullivan, a disinterested third-party witness, provides ample evidence that the document is in Rita Genecin's handwriting.[20] There is no evidence whatsoever to the contrary, and no basis for Paul's claim that the document is "dubious." A party may not rely, as Paul does on this point, on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied* 480 U.S. 932 (1987).

It is undisputed that the original was completed by Rita Genecin on October 8, 1998 in Sullivan's presence, that she left it with her financial advisers, who then sent it directly to Schwab, and that it has been in the custody of Schwab since October 20, 1998. It is also undisputed that Victor had nothing to do with the creation or submission to Schwab of this document and never saw a copy of it until Rita Genecin's financial adviser sent it to the parties in October, 2000. It was Victor who ensured that the original was retrieved from archives and safeguarded by Schwab's corporate counsel and that the parties were notified of its contents after a low-level Schwab employee

---

[19] P. G. Opp. Mem. at 13.
[20] *See* Sullivan Affidavit, ¶4.

9

sent Victor two different versions of Schwab's scanned record, which she had altered in Paul's favor.[21]

Because she wrote the numbers in pencil, Paul would have this Court ignore the Schwab beneficiary designation form, which Rita Genecin herself filled out with straightforward numerical percentages.  This contention is frivolous:  it is the account holder's intent that must control. At bottom, Paul's position is really a plea for the Court to split the IRA evenly because the beneficiaries are two brothers.  A 50/50 split, however, is not the manner in which Rita Genecin ever intended to leave her property.  In her Will, she did not provide for an even division; rather, the residuary clause allocates 55% to Victor and 45% to Paul. *See* Complaint & Answer, ¶59.  This manifestation of Rita Genecin's intentions regarding her property provides a further basis on which this Court should give effect to her clearly-written percentages on Schwab's beneficiary designation form.

## CONCLUSION

The Estate and Victor Genecin each respectfully request summary judgment for the reasons set forth.

---

[21] Rita Genecin's intent is shown by the true documents on file, and this Court need not grapple with the issues raised by the falsified documents.  The undisputed fact remains, however, that there are admittedly falsified documents concerning the IRA, and that the falsifications all support Paul's proposed division of the account.

February 3, 2004

        PLAINTIFF, ESTATE OF RITA GENECIN,
        BY VICTOR GENECIN, Personal
        Representative

        By:_____
         David T. Grudberg, ct01186
         JACOBS, GRUDBERG, BELT & DOW, P.C
         350 Orange Street, P.O. Box 606
         New Haven, CT  06503
         Ph.: (203) 772-3100
         Fax: (203) 772-1691
         Email: dgrudberg@jacobslaw.com


        By: _____
         Richard L. Mattiaccio, ct24592
         Pavia & Harcourt LLP
         600 Madison Avenue
         New York, NY  10022
         Ph.: (212) 508-2311
         Fax: (212) 735-7911
         Email: RMattiaccio@pavialaw.com

        DEFENDANT, VICTOR GENECIN, IN HIS
        INDIVIDUAL CAPACITY

        By: _____
         Richard L. Mattiaccio, ct24592
         Pavia & Harcourt LLP
         600 Madison Avenue
         New York, NY  10022
         Ph.: (212) 508-2311
         Fax: (212) 735-7911
         Email: RMattiaccio@pavialaw.com