UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF RITA GENECIN, by<br>VICTOR GENECIN, Personal<br>Representative,<br>       Plaintiff, | : | |
| | : | |
| | : | |
| | : | |
| | : | CIVIL NO.3:01CV00211(MRK) |
| VS. | : | |
| | : | |
| | : | |
| | : | |
| PAUL GENECIN and VICTOR GENECIN, | : | MAY 14, 2004 |
| in his individual capacity,<br>       Defendants. | : | |
| | : | |

**MOTION IN LIMINE OF PLAINTIFF ESTATE OF RITA GENECIN
TO PRECLUDE TESTIMONY OF VICTORIA MORROW**

Plaintiff hereby moves to preclude Victoria Morrow, the wife of defendant Paul Genecin from testifying as to statements made in her presence by Rita Genecin concerning the gift of the Lautrec lithograph to defendant Paul Genecin.

Victoria Morrow, the wife of defendant Paul Genecin is the second-listed defense witness on Defendant's List of Witnesses in the Joint Pretrial Memorandum, filed herewith. The proffer reads:

> It is anticipated that [Victoria] Morrow may testify as to statements made in her presence by Rita Genecin concerning the gift of the Lautrec to [Paul] Genecin.

The testimony of Victoria Morrow should be precluded, however, pursuant to the Maryland Dead Man's Statute, and because it is hearsay.

Although Morrow is not a named party herein, her testimony is barred by the Maryland Dead Man's Statute. For the purposes of that law, "a party is one who has an interest in the property sought," even if not named in the lawsuit. Farah v. Stout, 112 Md. App. 106, 117, 684 A.2d 471, 476 (Md.App. 1996).

Morrow has a potential direct interest in the Lautrec, in that she is the named beneficiary of a document executed by Rita Genecin purporting to give her a 1/15 share of the lithograph. PX 6

(Copy attached).  Morrow has indicated in her deposition testimony that, in the event her husband should not prevail on his claim to own 100% of the Lautrec, she and her family will pursue claims pursuant to the fractional share documents.  Morrow Deposition at 42. (Copy attached).  Indeed, in defendant's motion for summary judgment, defendant asked the award of fractional shares of the Lautrec to him and his family as alternative relief to the award to him of the entire lithograph. As a person with an interest in the property that is the subject of this litigation, Morrow is not a competent witness, and her testimony must be precluded.

Moreover, Morrow's conduct in connection with this litigation, goes well beyond what would ordinarily be expected of a spouse whose role is limited to that of fact witness. During November - December, 2003, she directed the actions of defense counsel, and communicated directly with opposing counsel on her husband's behalf.  She claimed that she did so pursuant to a written power granted to her by him, but she has declined to produce this instrument. Morrow Deposition at 107-8, 113. (Copy attached).  It is unknown whether it  remains in effect. During the same period, she dictated letters to opposing counsel which defendant Paul Genecin typed for her. Morrow Deposition at 111-12. (Copy attached).

Under Maryland law, a person who is able to control litigation against an estate is not competent to testify.  Farah v. Stout, 112 Md. App. 106, 117, 684 A.2d 471, 476  (Md.App. 1996). To support his claim of an *inter vivos* gift against the Estate of Rita Genecin, defendant Paul Genecin is limited to "testimony from disinterested persons,"  Reddy v. Mody, 39 Md. App. 675, 679, 388 A.2d 555, 559 (Md. Sp. App. 1978), a category to which Victoria Morrow does not belong.

In addition, the entirety of Morrow's proffered testimony is "statements made in her presence by Rita Genecin concerning the gift of the Lautrec."  All such testimony is hearsay not within any exception.  Federal Rule of Evidence 801 (c); see  Farah , 112 Md. App. at 119-121, 864 A.2d at  477-8.

THE PLAINTIFF,
ESTATE OF RITA GENECIN, and DEFENDANT VICTOR
GENECIN, in his individual capacity


By ____/s/David L. Belt_____
       David L. Belt (ct 04274)
       JACOBS, GRUDBERG, BELT & DOW, P.C.
       350 Orange Street
       New Haven, CT  06503
       Tel.:(203) 772-3100
       Fax:(203) 772-1691
       Email: dbelt@jacobslaw.com
       Their attorney

## **Certification**

The undersigned hereby certifies that a copy of the foregoing motion was faxed and mailed

first class, postage prepaid, on May 14, 2004 to:

Patrick M. Noonan
Delaney, Zemetis, Donahue, Durham & Noonan, P.C.
741 Boston Post Rd.
Guilford, CT 06437


        /s/David L. Belt
        David L. Belt

January 6,2000


I, RITA GENECIN, the undersigned, hereby gift a *1/15th* interest in the
following piece of art to VICTORIA MORROW, my daughter-in-law.

    Henri de Toulouse-Lautrec, French (1864-1901)
    *Partie de campagne,* color lithograph, 1897. Delteil 219,
    Adhemar 322, Adriani 228, Wittrock 228. Numbered 20
    from the edition of 1 00. With Lautrec's orange-red ;
    monogram stamp (Lugt 1338). A fine impression in fine condition.
Framed. .

This gift is unencumbered and is not subject to any conditions or
restraints.



Rita Genecin, Donor

5616 Cross Country Bouievard Baltimore, MD 21209

STATE OF MARYLAND, COUNTY OF BALTIMORE, TO WIT:

I HEREBY CERTIFY, that on this *12* day of January, 2000, before me, the
subscriber, a Notary Public of the State aforesaid, personally appeared
Rita Genecin and she acknowledged the above to be her act and deed.

AS WITNESS my hand and Notarial Seal.

 /s/Carol N. Sulllivan
Notary Public

My *Commission* Expires: 2-1-02

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


ESTATE OF RITA GENECIN, by                    CIVIL ACTION NO.
VICTOR GENECIN, Personal                      301 CV 00211 (MRK)
Representative
vs.

PAUL GENECIN and VICTOR GENECIN,              DECEMBER 10, 2003
in his individual capacity --



       Deposition of **VICTORIA R. MORROW, M.D.,** taken in accordance with the Federal

Rules of Civil Procedure ; 12 at the law offices of Jacobs, Grudberg, Belt & Dow,

13 P.C., 350 Orange Street, New Haven, Connecticut, before 14 Peggy

McKie, Notary Public in and for the State of 15 Connecticut, on

Wednesday, December 10, 2003, ommencing at 12:20 p.m.



20 Peggy McKie, License No. 00175
Registered Professional Reporter 21

22 DEL VECCHIO REPORTING SERVICES, LLC PROFESSIONAL SHORTHAND REPORTERS

23

117 Randi Drive
STAMFORD MADISON, CT 06443 HARTFORD
25 (203) 245-9583
DEL VECCHIO REPORTING SERVICES, LLC _.

1 letters.

2 Q. Have you ever seen it before?

3 A. I've seen the originals.

4 Q. When did you see the originals?

5 A. I really wouldn't be able to tell you. I'm

6 sure I've seen them a lot of times now.

7 Q. Would you turn to A-13? This document

8 purports to be a gift to you personally, Victoria

9 Morrow, of a 1/15th interest in the Lautrec.

10 A. Um-hmm.

11 Q. Is it your understanding that this gives

12 you a 1/15th interest in the Lautrec?

13 MR. NOONAN: Are you asking for a

14 legal opinion?

15 A. Yeah, I think that's going to be the

16 outcome of the litigation. I don't think that's for me

17 to say.

18 I did not see this letter or know about it

19 until afterwards, till after she died, and till after

20 Paul --Paul didn't know about these four letters

21 either until after she died.

22 BY MR. MATTIACCIO:

23 Q. Have you ever asserted an interest in

24 1/15th of the Lautrec, based on this document or

25 anything else?

DEL VECCHIO REPORTING SERVICES, LLC

1 A. I think that this is a complex legal

2 question which will be resolved in the Connecticut

3 litigation.

4 Q. I'm just asking you if you've ever made a

5 claim.

6 A. I think that there --on a contingent

7 basis, if we're not given the whole Lautrec, there will

8 be claims for the 4/15ths, if that's what you're asking

9 about.

10 Q. And the claims for the 4/15ths would be

11 1/15th each to Paul, yourself, and each of your two

12 children, is that right?

13 A. On a contingent basis, if we're not granted

14 the whole picture to Paul, which is what we really feel

15 is right.

16 Q. And if Paul is granted the 100 percent

17 interest in the Lautrec, you will not have any claim –

18 A. Right.

19 Q. --for a 15th, is that correct?

20 A. Right.

21 Q. Is that also true for your children?

22 A. Yeah.

23 Q. How did you first learn of Rita Genecin's

24 death?

25 A. We were called by a friend of hers in the

DEL VECCHIO REPORTING SERVICES, LLC

1 looking for an answer to the --and were concerned

2 about not getting an answer to your IRA, your proposal

3 for escrowing the IRAs and distributing them. And I -.

4 wanted to assure you that we were working on it, and

5 that we would answer you. I didn't want you to have no

6 answer at all. In order to be polite to you and let

7 you know that we were receiving your e-mails. They

8 weren't going nowhere.

9 BY MR. MATTIACCIO:

10 Q. Was Mr. Greber still representing Paul

11 Genecin at this time?

12 A. Yes.

13 Q. And is there a reason why Mr. Greber didn't ~.

14 send me the content of this e-mail?

15 A. Yes. I told him that I wanted to take up

16 the communications.

17 Q. And why did you want to take up the

18 communications at that point?

19 A. I think that that's the most direct way to

20 do things, and it leaves the least room for

21 miscommunication.

22 Q. And on what basis were you taking up the

23 communications rather than Paul?

24 A. Paul was not well, or he was intermittently

25 well, and he asked me if I would take this over for him

DEL VECCHIO REPORTING SERVICES, LLC

1 for some period of time.

2 Q. And did he give you some written

3 authorization to act on his behalf?

4 A. Yes.

5 Q. May I see a copy of it, please?

6 A. No. I don't have it with me. I don't

7 carry all that around.

8 Mr. MATTIACCIO: I I m going to call for
~
9 its production.

10 MR. NOONAN: I think we discussed this

11 with the judge, Richard, and the judge

12 agreed that you're not entitled to it. But

13 if you want to make a production request,

14 we'll respond to 1t.

15 MR. MATTIACCIO: Consider this a

16 request.

17 MR. NOONAN: Okay. I actually can't

18 consider it a request. There's a way to II

19 make a production request, and I think you

20 and I both know how to do that. So if you

21 want it, you need to make a request. But

22 the judge did address this. I'm not sure

23 why we're wasting further time on it. II

24 BY MR. MATTIACCIO:

25 Q. Now, you say in your e-mail to me that Paul

DEL VECCHIO REPORTING SERVICES, LLC

1 has been ill, and Dave has been unable to communicate

2 with him?

3 A. Right. ,
Ii
4 Q. What was Paul's illness?

5 A. It's not --

6 MR. NOONAN: Objection.

7 A. It's not your business.

8 MR. NOONAN: We clearly went over this

9 with the judge, and you know you're not

10 entitled to that. So if you have other

11 questions that are relevant to the case

12 that are not privileged, you ought to ask

13 them. We only have ten minutes left.

14 MR. MATTIACCIO: Well, as I suggested –

15 in my e-mail to you earlier today, I'd be

16 perfectly happy to take a break and

17 continue after Dr. Morrow picks up her son.

18 MR. NOONAN: I didn't get any such

19 e-mail. I was in court. But we're not

20 able to continue today. As I told you in

21 my voice mail last night and e-mail this

22 morning, we have to leave about quarter of

23 three. And it does appear to me that

24 you're finished with the relevant matters. -

25 But if you have other things you want to

DEL VECCHIO REPORTING SERVICES, LLC

1 ask, you have ten minutes to do that. I

2 MR. MATTIACCIO: Well, we'll obviously

3 have to take this up with the judge, but

4 will use my ten minutes.

5 MR. NOONAN: Okay.

6 MR. MATTIACCIO: I would ask the

7 reporter to mark as Exhibit HH an e-mail

8 from Max Blumenthal dated November 23rd, ~

9 2003.

10 E-mail dated 11-23-03 from Max

11 Blumenthal marked Plaintiff's Exhibit HH 12 for identification.)

13 BY MR. MATTIACCIO:

14 Q. Now, Dr. f-1orrow, attached to this e-mail is

15 a copy of a letter from you, or an e-mail from you, to

16 Mr. Blumenthal. Did you compose this letter?

17 A. Yeah.

18 Q. There are seven, eight, nine, ten -there

19 are ten numbered points in this e-mail regarding the

20 specifics of the estat:e. We don't have time to get

21 into each and everyone of them.

22 My question to you is, did you prepare

23 those portions of this letter?

24 A. Did I draft the letter? Yes.

25 Q. And you sent the letter to Mr. Blumenthal

DEL VECCHIO REPORTING SERVICES, LLC

1 expecting an answer from Mr. Blumenthal directly to

2 you, is that right?

3 A. Gee, I don't remember. I guess so.

4 Q. Did Paul Genecin have any contribution to

5 the content of this letter at this point when you were

6 drafting it?

7 A. Well, he ~~new the full content and agreed

8 with the full content, and he typed it.

9 Q. He was typing it? Were you dictating it I 10 for him?

11 A. Yeah.

12 Q. To him?

13 A. Yeah.

14 Q. And he was taking it down?

15 A. (Nodding head up and down.)

16 Q. Is that --I'm sorry, one more time?

17 A. Yes. That:' s the way we generally write.

18 Q. So his correspondence generally in this

19 case has been dictated by you?

20 A. No, no, not generally in this case. But 'I

21 when I write a paper or something like that, and he's

22 typing for me --I don't type --when he's typing

23 something for me, I read it, and he types it.

24 Sometimes he edits it as he types.

25 Q. Do you recall any occasions when you were

DEL VECCHIO REPORTING SERVICES, LLC

1 drafting with him in this way when he was writing

2 letters to Victor?

3 A. I'm sure. There were many, I'm sure, that

4 I would read it, and he would type it, and then he

5 would edit it and review it.

6 Q. And you would give your input?

7 A. And then --well, I'd give my input, and he

8 would redraft it and rewrite it sometimes.

9 MR. MATTIACCIO: I'm going to ask the

10 reporter to mark as II an e-mail from David --

11 Greber to Richard Mattiaccio dated November

12 24th, 2003.

13 (E-mail dated 11-24-03 to Richard

14 Mattiaccio from David Greber marked II

15 Plaintiff's Exhibit II for identification.)

16 BY MR. MATTIACCIO:

17 Q. Do you recognize this e-mail from

18 Mr. Greber? And I'm just going to be asking you about

19 the top part.

20 A. The top part? _.

21 Q. Right.

22 A. Yeah.

23 Q. When did you receive it? I see you were

24 cc'd on it. So you received it simultaneously? ~

25 A. Whatever you say. I don't know. I mean, I

1 don't always look at my e-mails the same day they come

2 in, by the way. I don't sit at my desk every day.

3 Q. Now, Mr. Greber says to me here that he II

4 received word from you that you had been designated by

5 Paul in writing to handle his decision-making during

6 the period of his illness. Is that correct?

7 A. Um-hmm. Yes.

8 Q. And did you provide that writing to

9 Mr. Greber?

10 MR. NOONAN: Objection.

11 Attorney-client communication.

12 MR. MATTIACCIO: I'm not asking the

13 content, I'm just asking whether or not

14 Mr. Greber has it.

15 MR. ~lOONAN: Well, I object.

16 MR. MATTIACCIO: Are you directing the

17 witness not to answer?

18 MR. NOONAN: I'm objecting. Why don't

19 you ask a question that has some relevance

20 to the subject matter of the case? These

21 e-mails relate to estate issues in

22 Maryland, not to this case.

23 MR. f.1ATTIACCIO: Well, obviously, we

24 don't agree with that.

25 MR. NOONAN: All right. Well, go

DEL VECCHIO REPORTING SERVICES, LLC

1 ahead. What's your next question? -'.

2 BY MR. MATTIACCIO:

3 Q. What was the reason why you were unable to

4 attend your deposition last Friday?

5 A. I was sick and scheduled for testing.

6 MR. NOONAN: And we're not going to be

7 disclosing the nature of her illness.

8 BY MR. MATTIACCIO:

9 Q. When did you learn you were sick and

10 scheduled for testing?

11 MR. NOONAN: You're asking when she ~-

12 first became ill?

13 BY MR. MATTIACCIO:

14 Q. When did you first --

15 A. You know, I really think you're treading on

16 the territory of the history of my illness and of my

17 care, and I think that's probably confidential and

18 privileged.

19 MR. NOONAN: The judge asked us to g.et

20 a letter from her physician, which I

21 requested, and we'll be providing that when –

22 we receive it.

23 MR. MATTIACCIO: Okay. In that case,

24 I have to reserve my right to ask the

25 witness questions about that once I receive

DEL VECCHIO REPORTING SERVICES, LLC

1 the letter.

2 MR. NOONAN: Well, I don't think

3 you're going to be asking her questions

4 about her medical history once you receive

5 the letter without an order.

6 MR. MATTIACCIO: Apparently so. "

7 I'm going to ask the reporter to mark

8 as Exhibit JJ an e-mail from Paul Genecin

9 to Mr. Blumenthal dated December 6th, 2003.

10 (E-mail dated 12-6-03 to Max

11 Blumenthal from Paul Genecin marked

12 Plaintiff's Exhibit JJ for identification.)

13 MR. MATTIACCIO: I'm going to ask the

14 witness if she recognizes –

15 BY MR. MATTIACCIO:

16 Q. Do you recognize this document? -,

17 A. Yeah.

18 Q. When did you see it for the first time?

19 A. Probably when it was written.

20 Q. This one is signed "Paul Genecin"?

21 A. Right. I

22 Q. Did Paul Genecin type this?

23 A. Yes.

24 Q. Did you dictate it?

25 A. I don't remember this one, whether I had

DEL VECCHIO REPORTING SERVICES, LLC

1 any part in drafting it, or whether he drafted it and I

2 looked at it after. But I think most of these letters

3 that you 1 ve shown us today I had some knowledge of at

4 the time they were being written.

5 Q. And where was Paul Genecin when he typed

6 this, if you know?

7 A. At our home computer.

8 MR. MATTIACCIO: Let's take a break.

9 (Recess. )

10 MR. MATTIACCIO: We have no further

11 questions at this time. As I said, we

12 reserve --once we've seen the doctor's

13 report, then we'll take it up with the

14 judge if we feel we need to.

15 MR. NOONAN: Okay, good.

16 MR. MATTIACCIO: Thank you all.

17 (Whereupon, the deposition was

18 adjourned at 2:45 p.m.)

STATE OF CONNECTICUT)
                                        ss.
COUNTY OF NEW HAVEN)


4 I, Peggy McKie, a Notary Public for the State

5 of Connecticut, do hereby certify that the deposition

6 of VICTORIA R. MORROW, M.D., was taken before me

7 pursuant to the Federal Rules of Civil Procedure at the -

8 law offices of Jacobs, Grudberg, Belt & Dow, P.C.,

9 350 Orange Street, New Haven, Connecticut, commencing

10 at 12:20 p.m. on Wednesday, December 10, 2003.

11 I further certify that the witness was first

12 sworn by me to tell the truth, the whole truth, and II

13 nothing but the truth, and was examined by counsel, and

14 her testimony was stenographically reported by me and

15 subsequently transcribed as hereinbefore appears.

16 I further certify that I am not related to ~

17 the parties hereto or their counsel, and that I am not -

18 in any way interested in the event of said cause.

19 Dated at Madison, Connecticut, this 11th day

20 of December, 2003.

22 *P*eggy McKie
23 <u>Peggy McKie</u>
Notary Public


25 My commission expires November 30, 2008.


DEL VECCHIO REPORTING SERVICES, LLC ,.