UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF RITA GENECIN, by | : | |
| VICTOR GENECIN, Personal | : | |
| Representative, | : | |
| Plaintiff, | : | |
| | : | CIVIL NO. 3:01CV00211(MRK) |
| | : | |
| VS. | : | |
| | : | |
| PAUL GENECIN and VICTOR GENECIN, | : | MAY 14, 2004 |
| in his individual capacity, | : | |
| Defendants. | : | |

## JOINT TRIAL MEMORANDUM

This Joint Trial Memorandum is submitted by the parties for the Court's approval in compliance with Local Civil Rule 6 and the District's Standing Order Regarding Trial Memoranda in Civil Cases as modified by Joint -Trial Memorandum - instructions for the Honorable Mark R. Kravitz (revised 11/03).

1.    **TRIAL COUNSEL:**

   a.    Trial Counsel for Plaintiff, Estate of Rita Genecin and for Defendant Victor Genecin, in his individual capacity:

   David L. Belt
   JACOBS, GRUDBERG, BELT & DOW, P.C.
   350 Orange Street
   New Haven, Connecticut  06503
   Tel.: (203) 772-3100
   Fax:(203) 772-1691
   Email: dbelt@jacobslaw.com

b.      Trial Counsel for Defendant Paul Genecin

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, Connecticut 06437
Tel.: (203)458-9168
Fax: (203) 458-4424
Email: patnoonan@snet.net

**2.      JURISDICTION:**

This court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1332(a)(1) and

(c)(2), based on diversity of citizenship among the parties.  The amount in controversy

exceeds $75,000.00.

**3.      JURY/NONJURY:**

This case is to be tried to the court.

**4.      LENGTH OF TRIAL:**

Counsel estimate that 2 to 3 trial days will be required.

**5.      FURTHER PROCEEDINGS:**

It is not anticipated that further proceedings prior to trial will be required.

**6.      NATURE OF CASE:**

**a.      Statement of Plaintiff Estate of Rita Genecin.**

In the First Count, Plaintiff Estate of Rita Genecin seeks an order pursuant to

Section 7-102 of the Maryland Code Annotated for Estates and Trusts settling title to a

lithograph by French artist Henri de Toulouse-Lautrec entitled *Partie de campagne* (*le

chariot anglais*) which was in the decedent's house in Baltimore Maryland at the time of her

death, but which the Defendant Paul Genecin claims was given to him by the decedent

prior to her death.

In the Second Count, Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, fixing the percentages to which Defendant Victor Genecin and Defendant Paul Genecin are entitled in the distribution of an Individual Retirement Account with Charles Schwab & Company, Inc. in the name of Rita Genecin ("Schwab IRA") and adjudicating the rights of Victor Genecin and Paul Genecin in that account. The individual defendants differ over the interpretation and legal effect of the beneficiary designation documents. Victor Genecin maintains that the Schwab IRA should be divided 60% Victor Genecin and 40% for Paul Genecin; while Paul Genecin maintains that the account should be divided 50% for Victor Genecin and 50% for Paul Genecin. The Estate takes no position regarding the percentage allocations of the Schwab IRA, but seeks a declaratory judgment in order to discharge its responsibility to instruct Charles Schwab & Company, Inc. as to the proper division.

**b.    Statement of Defendant Victor Genecin, in his individual capacity.**

Defendant Victor Genecin in his individual capacity adopts the statement of Plaintiff Estate of Rita Genecin concerning the nature of the Second Count.

**c.    Statement of Defendant Paul Genecin.**

Defendant Paul Genecin agrees with the statement of the case presented by the plaintiff, except to note that the house in Baltimore, Maryland in which the Lautrec was located at the time of Rita Genecin's death was owned jointly by Rita Genecin, Paul Genecin and Victor Genecin.

**7.    TRIAL BY MAGISTRATE JUDGE:**

The parties have not agreed to a trial by a Magistrate Judge.

3

8.    **EVIDENCE:**

   a.    **Witnesses:**

      (1)    **Witnesses of Plaintiff Estate of Rita Genecin and Defendant Victor Genecin**

      1.    **Victor Genecin**

        **Victor Genecin**
        **Pavia & Harcourt LLP**
        **600 Madison Avenue**
        **New York, New York 10022**
        **Tel.: (212) 980-3500**

Victor Genecin is expected to testify that he is the Personal Representative of the Estate of Rita Genecin; that in her will, Rita Genecin made no specific bequests of personal property, but provided that her residuary estate was to be divided between her two sons, with 55% going to Victor Genecin and 45% going to Paul Genecin; that her probate assets consisted of personal property including a 1897 color lithograph by Henri de Toulouse-Lautrec entitled *Partie de campagne (le chariot anglais)* ("the Lautrec"); that the Lautrec was in Rita Genecin's home in Baltimore Maryland at the time of her death on August 8, 2000; that upon Rita Genecin's death, Victor Genecin and Paul Genecin went to her house in Baltimore and stayed for some days; that early in the week of August 6, 2000, Victor Genecin and Paul Genecin met together with Daniel Wagner, Rita Genecin's financial advisor, at which time Mr. Wagner provided to each copies of documents that Rita Genecin had executed in his office on January 12, 2000 before a notary public concerning certain works of art; that at that meeting, Mr. Wagner provided to Victor Genecin and Paul Genecin copies of four documents, in each of which Rita Genecin purported to grant a 1/15 interest in the Lautrec to each of Paul Genecin, Victoria Morrow (Paul Genecin's wife), Gregory

Genecin (Paul Genecin's son), and Samuel Genecin (Paul Genecin's son); that during the week of August 6, 2000 Paul Genecin sought and obtained Victor Genecin's agreement that Paul Genecin would remove all of the works of art, including the Lautrec, from Rita Genecin's home for safekeeping; that Paul Genecin represented that the works of art would be safer in his Connecticut home, which had an alarm system and a safe, than in the decedent's home, which was then uninhabited as a consequence of her death; that with Victor Genecin's consent, Paul Genecin took possession of the Lautrec on behalf of the Estate and transported it to his residence at 340 St. Ronan Street in New Haven, Connecticut on or about August 11, 2000; that Paul Genecin told Victor Genecin that he had purchased insurance effective August 11, 2000 for works of art, including the Lautrec, as property of the Estate and submitted the insurance bill to the Estate for payment; that the most substantial non-probate asset left by Rita Genecin is an Individual Retirement Account with Charles Schwab & Company, Inc. (the "Schwab IRA") in the name of Rita Genecin; and that Charles Schwab and Company, Inc. informed Victor Genecin in December 2000 that because of a discrepancy between the two beneficiary designation documents, Schwab was unable to allocate the balance of Rita Genecin's IRA absent either a court order or signed and notarized letters of authorization from both Victor Genecin and Paul Genecin.

Plaintiff takes the position that, pursuant to the Maryland Dead Man's Statute, Md. Code Cts. & Jud. Proc. art. 1, § 19-116, defendant Paul Genecin, his wife Victoria R. Morrow and his minor son Gregory Genecin may not be permitted to testify in this action concerning any transaction between Rita Genecin and her son, Paul Genecin, or to any statements made by Rita Genecin. If, however, the court, notwithstanding the objection of Plaintiff, permits Defendant Paul Genecin, Victoria R. Morrow or Gregory Genecin to testify

concerning transactions between Paul Genecin and Rita Genecin or statements of Rita Genecin concerning <u>inter</u> <u>alia</u>, the alleged gift to Paul Genecin of the lithograph by Henri de Toulouse-Lautrec entitled *Partie de campagne,* Plaintiff reserves the right to offer, without waiving its objection, rebuttal evidence that would support the following findings of fact:

During the week of August 6, 2000, Paul Genecin made no mention of any claim that he might have ownership of the entire Lautrec by <u>inter</u> <u>vivos</u> gift; that the first occasion on which Paul Genecin claimed to be the owner of 100% of the Lautrec was a facsimile transmission dated September 5, 2000 that he sent on that date to Max E. Blumenthal, Esq., who had been retained as counsel for the estate; that Paul Genecin did not raise directly with Victor Genecin the issue of ownership of the Lautrec until some time after the September 5, 2000 fax to Blumenthal; and that Rita Genecin never told Victor Genecin that she had made a gift of all or any part of the Lautrec to Paul Genecin.

Mr. Genecin's testimony is expected to be of approximately one and one-half hours in duration.

        **2.**       **Daniel E. Wagner**
                   **Wagner Capital Management Corp.**
                   **1838 Greene Tree Road**
                   **Baltimore, Maryland 21208**
                   **Tel.: (410) 653-7979**

Daniel E. Wagner is expected to testify concerning his discussions with Rita Genecin regarding making gifts of personal property, including artwork, so as to minimize estate and gift taxes; his discussions with Rita Genecin regarding making gifts of fractional interests in a color lithograph by Henri de Toulouse-Lautrec entitled *Partie de campagne*; her stated desire to retain physical possession of the Lautrec; her execution of documents stating that she was giving fractional shares in that lithograph to her son Paul Genecin and members of

his family; his discussions with Rita Genecin concerning establishing an IRA account in her name at Charles Schwab & Company, Inc.; the execution by Rita Genecin of documents concerning her application to establish an IRA account in her name at Charles Schwab & Company, Inc. ("Schwab") in October 1998 and the contents of those documents; including, inter alia, that he is President of Wagner Capital Management Corp. ("WCM"); that he was Rita Genecin's financial adviser for many years, until her death on August 4, 2000; that he was personally involved in the management of her accounts, and those of her late husband, Abraham Genecin, M.D., starting in the 1970s; that on October 8, 1998, Rita Genecin visited the offices of WCM for the purpose of filing out the application form necessary for her to be the owner of her late husband's IRA account with Charles Schwab & Co., Inc. ("Schwab"); that on October 8, 1998 Rita Genecin signed a Schwab IRA Application; that the handwriting on the first page of the Schwab IRA Application is that of Carol N. Sullivan, an employee of WCM; that the Schwab IRA Application signed by Rita Genecin on October 8, 1998 was completely filled out, including the allocation of percentage of benefits of 40% to Paul Genecin and 60% to Victor Genecin, and reviewed by Rita Genecin on October 8, 1998 and not altered before it was sent to Schwab; that Rita Genecin made the determination to allocate 60 percent of the Schwab IRA account to her son Victor Genecin, who had three children and 40 percent to her son Paul Genecin, who had two children; that also on October 8, 1998 Rita Genecin signed a document headed 'RITA GENECIN IRA  BENEFICIARY DESIGNATION;" that in the fall of 1999 he had a number of discussions with Rita Genecin concerning making gifts of works of art owned by her in a way to avoid or minimize estate and gift taxes and other transactions concerning her assets; that on January 6, 2000, Rita Genecin came to the offices of WCM and met with Mr. Wagner and with David Citron (then a vice president of the company) and Marc J.

Hertzberg, also a vice president; that at our January 6, 2000 meeting, Rita Genecin

provided a copy of an appraisal by Conrad R. Graeber dated June 8, 1998 of works of art

that she owned, and told Mr. Wagner that, starting with 2000, she desired to make annual

fractional gifts, so as to remain within the Federal gift tax limitations, of shares in a

lithograph that she owned entitled *Partie de campagne* by Henri de Toulouse-Lautrec ("the

Lautrec") to her son Paul Genecin, his wife, and his two sons; that the appraisal presented

by her to Mr. Wagner valued the Lautrec at $150,000; that she asked Mr. Hertzberg to

prepare the necessary documents; that at no time in that January 6, 2000 meeting did Rita

Genecin ever state that she had made a gift of 100% of the Lautrec to her son, Paul

Genecin; that Rita Genecin came again to the offices of WCM on January 12, 2000 and

met with Mr. Wagner, together with Messrs. Citron and Hertzberg; that in the January 12,

2000 meeting, she executed a number of documents that had been prepared as a result of

her instructions in the January 6, 2000 meeting; that at no time in the January 12, 2000

meeting did Rita Genecin ever state that she had made a gift of 100% of the Lautrec to her

son, Paul Genecin; that Mr. Wagner met with Rita Genecin, and spoke with her by

telephone, on a number of occasions after January 12, 2000 and before her death on

August 4, 2000, but that at no time did she ever state that she had made a gift of 100% of

the Lautrec to her son, Paul Genecin; that in the January 12, 2000 meeting, Rita Genecin

executed a First Codicil to her Will; that during our January 12, 2000 meeting, Ms. Sullivan,

who is a Notary Public of the State of Maryland, joined them and Ms. Sullivan witnessed

and certified the execution by Rita Genecin of certain documents, including the four

fractional gift documents that Mr. Hertzberg had prepared, in each of which Rita Genecin

purported to make a gift of 1/15th of the Lautrec to an individual member of Paul Genecin's

family and a Deed, in which Rita Genecin conveyed ownership from herself alone to herself

and Victor Genecin and Paul Genecin as joint tenants of the real property and improvements thereon known as 5616 Cross Country Boulevard, Baltimore, Maryland 21209, which was her personal residence; that on August 7, 2000 Mr. Wagner met with Victor Genecin and Paul Genecin at which time he gave them copies of the four 1/15th fraction share documents concerning the Lautrec and Paul Genecin acknowledged having received the originals of them from his mother.

Mr. Wagner's testimony is expected to be of approximately two hours in duration.

**3.     Marc J. Hertzberg**
**Wagner Capital Management Corp.**
**1838 Greene Tree Road**
**Baltimore, Maryland 21208**
**Tel.: (410) 653-7979**

Marc J. Hertzberg is expect to testify concerning discussions with Rita Genecin regarding making gifts of personal property including art work, so as to minimize estate and gift taxes; discussions with Rita Genecin regarding making a gift of fractional interests in a color lithograph by Henri de Toulouse-Lautrec entitled *Partie de campagne*; discussions with Rita Genecin concerning allocation of benefits in her Schwab IRA 60 percent to Victor Genecin and 40 percent to Paul Genecin; the preparation of documents stating that Rita Genecin was giving 1/15 interest each in the Lautrec to Paul Genecin, his wife and his two sons; discussions with Rita Genecin regarding, the execution of a codicil to her will and a deed to her personal residence in January, 2000; and the transmittal to Schwab on October 21, 1999 of certain documents signed by Rita Genecin; including, inter alia, that he is Vice President of Wagner Capital Management Corp. ("WCM"); that he was personally involved in the management of Rita Genecin's accounts from January, 1999 until her death; that during a January 12, 2000 meeting at WCM with Rita Genecin, Ms. Sullivan, an employee

of WCM who is a Notary Public of the State of Maryland, was asked to join them; that during this part of the meeting, Ms. Sullivan witnessed and certified the execution by Rita Genecin of certain documents, including four fractional gift documents that he had prepared, in each of which Rita Genecin purported to make a gift of 1/15th of the Lautrec to an individual member of Paul Genecin's family; and a deed, in which Rita Genecin conveyed ownership from herself alone to herself and Victor Genecin and Paul Genecin as joint tenants of the real property and improvements thereon known as 5616 Cross Country Boulevard, Baltimore, Maryland 21209, which is her personal residence; and that in the January 12, 2000 meeting with Rita Genecin, Rita Genecin stated that she would send the originals of the four fractional gift documents to Paul and Victor Genecin; that she took the originals of those documents with her when she left; that on October 21, 1999 he sent an IRA beneficiary Supplement signed by Rita Genecin on October 21, 1999 to Schwab and at the same time, without informing Rita Genecin that he was doing so or being instructed to do so by her, sent to Schwab an original document headed Rita Genecin Beneficiary Designation dated October 6, 1998 which he found in the file.

Mr. Hertzberg's testimony is expected to be of approximately one and a half hours in duration.

4.    **Carol N. Sullivan**
**Wagner Capital Management Corp.**
**1838 Greene Tree Road**
**Baltimore, Maryland 21208**
**Tel.: (410) 653-7979**

Carol N. Sullivan is expected to testify concerning the preparation of Rita Genecin's Schwab IRA Application and the Rita Genecin IRA Designation and the transmittal of that application and designation to Schwab; the execution by Rita Genecin in January, 2000 of

documents stating that Rita Genecin was making gifts of fractional interests in a color lithograph by Henri de Toulouse-Lautrec entitled *Partie de campagne*; and the execution by Rita Genecin of a deed to her personal residence in January, 2000; including, <u>inter</u> <u>alia</u>, that she is administrator of Wagner Capital Management Corp. ("WCM"); that she is a Notary Public of the State of Maryland; that she knew Rita Genecin as a client of WCM for many years; that on October 8, 1998 Rita Genecin visited the offices of WCM for the purpose of filling out the application form necessary for her to be the owner of her late husband's IRA account with Charles Schwab & Co., Inc. ("Schwab"); that on October 8, 1998 she signed a Schwab IRA Application; that the handwriting on the first page of the Schwab IRA Application is that of Carol N. Sullivan; that she sent the original of the Schwab IRA Application signed by Rita Genecin to Schwab and kept a copy in the file of WCM; that also on October 8, 1998 Rita Genecin signed a document headed "RITA GENECIN IRA DESIGNATION" in her presence and which she countersigned; that she sent the 'RITA GENECIN IRA DESIGNATION" to Schwab along with the Schwab IRA Application; that on January 12, 2000, Rita Genecin came to the office of WCM and met with Daniel E. Wagner, president of WCM, Marc J. Hertzberg, vice president, and David Citron, then also a vice president, and executed certain documents before her as a Notary Public, including four documents dated January 6, 2000; that these were executed by Rita Genecin in her presence at the offices of WCM on January 12, 2000; that each document stated that Rita Genecin was making a gift of a 1/15th interest in the Lautrec lithograph, including one to Paul Genecin, one to Victoria Morrow, one to Samuel Genecin and one to Gregory Genecin; that Rita Genecin executed and acknowledged the originals of the four documents in her presence on January 12, 2000, and passed each document to her; that in her capacity as a Notary Public of the State of Maryland, executed the certification that

appears at the bottom of each document, and placed her notarial seal on the document; that in that same January 12, 2000 meeting, Rita Genecin executed a deed conveying ownership from herself alone to herself and Victor Genecin and Paul Genecin as joint tenants of the real property and improvements thereon known as 5616 Cross Country Boulevard, Baltimore, Maryland 21209.

Ms. Sullivan's testimony is expected to be of approximately one hour in duration.

**5.      Custodian of Records**
**Charles Schwab & Company, Inc.**
**c/o CT Corporation System, Inc.**
**1 Commercial Plaza**
**Hartford, Connecticut 06103**

A subpoena has been served on Charles Schwab & Company, Inc. directing it to produce at trial the original of certain documents in its possession, including:

1.      Schwab IRA Application for account no. BL-3615-9557 by Rita Genecin on October 8, 1998. [DX 607].

2.      Rita Genecin IRA Beneficiary Designation dated October 8, 1998 [DX 608].

3.      Rita Genecin IRA Beneficiary Designation dated October 6, 1998 [DX 609].

This testimony is expected to be of approximately ten minutes in duration.

**6.      Douglas M. Lehman**
**Pavia & Harcourt LLP**
**600 Madison Avenue**
**New York, New York 10022**
**Tel.: (212) 980-3500**

Mr. Lehman is expected to testify in rebuttal if the Court permits Defendant Paul Genecin to testify concerning transactions between him and Rita Genecin or admits into evidence Defendant Paul Genecin's proposed exhibit DX1 that in December 2000 he represented the Estate of Rita Genecin; that at that time Paul Genecin was represented by

Gerard P. Martin of the law firm of Martin, Snyder & Berstein, P.A. in Baltimore, Maryland and that on December 24, 2000 he received a letter from Mr. Martin by facsimile which is Plaintiff's proposed rebuttal exhibit DX23.

Mr. Lehman's testimony is expected to be of less than one-half hour in duration.

### (2)    Witnesses of Defendant Paul Genecin:

The defendant Paul Genecin intends to call the following witnesses:

A.    <u>Dr. Paul Genecin</u>.  It is anticipated that Dr. Genecin will testify about his relationship with his mother, gifts made to him by his mother, the circumstances of the gifting of the <u>Lautrec</u> to his by his mother, the transfer of the interest in his mother's home to him, and the circumstances concerning the IRA account.

B.    <u>Dr. Victoria Morrow</u>.  It is anticipated that Dr. Morrow may testify as to statements made in her presence by Rita Genecin concerning the gift of the <u>Lautrec</u> to Dr. Genecin.

C.    <u>Mr. Gregory Genecin</u>.  It is anticipated that Mr. Genecin may testify concerning statements made by Rita Genecin in his presence concerning the gift of the <u>Lautrec</u> to Dr. Genecin.

D.    <u>Ms. Nuvi Sherlock</u>.   It is anticipated that Ms. Sherlock may testify concerning statements made to her by Rita Genecin concerning the gift of the <u>Lautrec</u> to Dr. Genecin.

E.    <u>Attorney Kathy Priest</u>.  It is anticipated that Attorney Priest may testify concerning her representation of Dr. Genecin in connection with the <u>Lautrec</u> and the IRA account.

F.    <u>Ms. Marion Mulrine</u>.  It is anticipated that Ms. Mulrine may testify concerning notarization of documents bearing Rita Genecin's signature.

### b.    Exhibits:

### (1)    Plaintiff's Exhibits:

PX 1.  Local Rule 56(a) 1 Statement of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin In His Individual Capacity dated December, 2003, preamble and paragraphs 1-12, 19-22.

PX 2.  Defendant's Local Rule 56(A)2 Statement dated January 21, 2004, preamble and paragraphs 1-12, 19-22.

PX 3.  Complaint in <u>Estate of Rita Genecin v. Paul Genecin, et al</u>, Civil No. 301 CV 00211, dated February 9, 2001, paragraphs: 1-3, 7-10, 12-14, 16.

PX 4.  Answer to Complaint in <u>Estate of Rita Genecin v. Paul Genecin, et al</u>, Civil No. 301 CV 00211, dated September 20, 2001, paragraphs: 1-3, 7-10, 12-14, 16.

PX 5.  Writing dated January 6, 2000 and executed January 12, 2000 by Rita Genecin gifting a 1/15th interest in a piece of art by Henri de Toulouse-Lautrec called *Partie de campagne* to Paul Genecin.

PX 6.  Writing dated January 6, 2000 and executed January 12, 2000 by Rita Genecin gifting a 1/15th interest in a piece of art by Henri de Toulouse-Lautrec called *Partie de campagne* to Victoria Morrow.

PX 7.  Writing dated January 6, 2000 and executed January 12, 2000 by Rita Genecin gifting a 1/15th interest in a piece of art by Henri de Toulouse-Lautrec called *Partie de campagne* to Samuel Genecin.

PX 8.  Writing dated January 6, 2000 and executed January 12, 2000 by Rita Genecin gifting a 1/15th interest in a piece of art by Henri de Toulouse-Lautrec called *Partie de campagne* to Gregory Genecin.

PX 9.  Deed by Rita G. Genecin to Rita G. Genecin, Paul Genecin and Victor Genecin executed January 12, 2000.

PX 10.  Last Will and Testament of Rita Genecin dated July 18, 1995 and First Codicil to the Last Will and Testament of Rita Genecin executed January 12, 2000.

PX 11.  Portion of insurance policy No. 11980768-01 issued by Chubb (Vigilant Insurance Company) to Estate of Rita Genecin c/o Paul Genecin effective 8/11/00 listing pieces of Fine Arts including a lithograph by Henri de Toulouse-Lautrec called "*Partie de campagne*."

PX 12.  Facsimile from Paul Genecin to Victor Genecin dated September 11, 2000 enclosing Insurance Bill from Chubb to Estate of Rita Genecin.

PX 22.  Appraisal dated June 8, 1998 from Conrad Graeber including an appraisal of *Partie de campagne* by Henri de Toulouse-Lautrec (From PX D to deposition of Paul Genecin).

Plaintiff takes the position that, pursuant to the Maryland Dead Man's Statute, Md. Code Cts. & Jud. Proc. art. 1, § 9-116, defendant Paul Genecin, may not be permitted to testify in this action concerning any transaction with or statement made by Rita Genecin. If, however, the court, notwithstanding the objection of Plaintiff, permits Defendant Paul Genecin to testify concerning transactions between him and Rita Genecin, inter alia, concerning the alleged gift to him of the lithograph by Henri de Toulouse-Lautrec called *Partie de campagne*, Plaintiff reserves the right to offer into evidence in rebuttal and without waiving its objections, all or part of the following exhibits:

PX 13.  Local Rule 56(a) 1 Statement of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin In His Individual Capacity dated December, 2003, preamble and paragraphs 13-18, 23-39, 41-42.

PX 14.  Defendant's Local 56(A)2 Statement dated January 21, 2004, preamble and paragraphs 13-18, 23-39, 41-42.

PX 15.  Complaint in <u>Estate of Rita Genecin v. Paul Genecin, et al</u>, Civil No. 301 CV 00211, dated September 20, 2001, paragraphs 34-39, 41-48, 51.

PX 16.  Answer to Complaint in <u>Estate of Rita Genecin v. Paul Genecin, et al</u>, Civil No. 301 CV 00211, dated September 20, 2001, paragraphs: 34-39, 41-48, 51.

PX 17.  Transcript of Deposition of Paul Genecin on June 2, 2003, pages:

p. 7, lines 1-7
p. 25, lines 23 through p. 26, line 22
p. 27, lines 6-10
p. 28, line 2 through p. 31, line 13
p. 35, line 12 through p. 38, line 2
p. 61, line 8 through p. 62, line 18
p. 62, line 19 through p. 65, line 8
p. 78, line 22 through p. 88, line 25
p. 89, line 7 through 95, line 6
p. 95, line 19 through p. 98, line 18

p. 101, line 16 through p. 108, line 2
p. 109, line 2 through p. 117, line 18
p. 118, line 18 through p. 119, line 8
Signature page dated July 28, 2003

Plaintiff takes the position that, pursuant to the Maryland Dead Man's Statute, Md. Code Cts. & Jud. Proc. art. § 9-116, Victoria R. Morrow, the wife of Defendant Paul Genecin, may not be permitted to testify in this action concerning any transaction between Rita Genecin and her husband, Defendant Paul Genecin, or any statement made by Rita Genecin.  If, however, the court, notwithstanding the objection of Plaintiff, permits Victoria R. Morrow to testify concerning transactions between her husband, Paul Genecin, and Rita Genecin concerning, inter alia, the alleged gift to him of the lithograph by Henri de Toulouse-Lautrec called *Partie de campagne*, Plaintiff reserves the right to offer into evidence in rebuttal and without waiving its objections, all or part of the following exhibits:

PX 18.  Plaintiff's Local Rule 56(a)1 Statement by Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin In His Individual Capacity in Estate of Rita Genecin v. Paul Genecin, et al, Civil No. 301 CV 00211, dated December 2003, paragraphs: 51 and 52.

PX 19.  Defendant's Local 56(A) 2 Statement in Estate of Rita Genecin v. Paul Genecin, et al, Civil No. 301 CV 00211, dated January 21, 2004, paragraphs: 51 and 52.

PX 20.  Copy of e-mail dated November 23, 2003 from Victoria R. Morrow to Max Blumenthal, Esq.

PX 21.  E-mail from Victoria R. Morrow to Richard L. Mattiaccio, Esq. dated November 16, 2003.

PX 23.  Letter from Gerald P. Martin to Douglas M. Lehman sent by facsimile on December 24, 2000.

PX 24.  Facsimile from Paul Genecin to Max Blumenthal dated September 5, 2000 enclosing note from Paul Genecin to Max Blumenthal dated September 5, 2000 and purported letter from Rita Genecin dated January 4, 2000.

In addition, Plaintiff reserves the right to introduce portions of the transcript of the deposition of any witness who has been deposed and who testified at trial in connection with the cross-examination of that witness.

**(2)      Exhibits of Defendant Victor Genecin, in his individual capacity:**

DX 601. Local Rule 56(a)1 Statement of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin In His Individual Capacity dated December, 2003, preamble and paragraphs 43-45, 53-55, 61-65, 72-73.

DX 602.  Defendant's Local 56(A) 2 Statement dated January 21, 2004, paragraphs 43-45, 53-55, 61-65, 72-73.

DX 603.  Defendant's Local Rule 56(a)(1) Statement dated December 31, 2003, paragraphs 12-17, 20.

DX 604.  Local Rule 56(a)2 Statement of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin In His Individual Capacity dated January 21, 2003, paragraphs 12-17, 20.

DX 605. Complaint in Estate of Rita Genecin v. Paul Genecin, et al, Civil No. 301 CV 0021, dated February 9, 2001 paragraph 18.

DX 606.  Answer in Estate of Rita Genecin v. Paul Genecin, et al, Civil No. 301 CV 0021, dated September 20, 2001, paragraph 18.

DX 607.  Schwab IRA Application for account no. BL-3615-9557 by Rita Genecin dated October 8, 1998.

DX 608.  Rita Genecin IRA Beneficiary Designation dated Oct. 8, 1998.

DX 609.  Letter dated October 19, 1998 from Max E. Blumenthal, Esq. to Daniel E. Wagner.

DX 610.  Rita Genecin IRA Beneficiary Designation dated October 6, 1998.

DX 611.  IRA Beneficiary Designation Supplement dated October 21, 1999.

DX 612.  Letter from Marc Hertzberg to Charles Schwab & Co., Inc. dated October 25, 1999 enclosing Rita Genecin IRA Beneficiary Designation dated October 6, 1998 and IRA Beneficiary Designation Supplement dated October 21, 1999.

In addition, Defendant Victor Genecin, in his individual capacity reserves the right to introduce portions of the transcript of the deposition of any witness who has been deposed and who testified at trial in connection with the cross-examination of that witness.

**(3)    Exhibits of Defendant Paul Genecin:**

The defendant Paul Genecin intends to use the following exhibits:

DX 501.  Deed of Gift dated 1/4/00 from Rita Genecin to Dr. Paul Genecin of signed lithograph by Henri de Toulouse-Lautrec, entitled La Chariot Anglais

DX 502.  Correspondence from Marc J. Hertzberg to Max E. Blumenthal, Esquire dated 9/12/00

DX 503.  Deed of Gift dated 1/4/99 from Rita Genecin to Dr. Paul Genecin of one lithograph by Edvard Munch entitled "Das Wieb" (Die Sphinx)

DX 504.  Deed of Gift dated 12/25/97 from Rita Genecin to Dr. Paul Genecin of one lithograph by Jasper Johns (American, b. 1930), entitled "Numbers"

DX 505.  Deed of Gift dated 4/4/98 from Rita Genecin to Dr. Paul Genecin of One Lithograph by Jasper Johns (American, b. 1930), entitled "Two Flags"

DX 506.  Deed of Gift dated 5/6/98 from Rita Genecin to Dr. Paul Genecin of One Lithograph by Philip Pearlstein (American, b. 1924), entitled "Nude on Orange and Black Mexican Rug"

DX 507.  Deed of Gift dated 1/4/00 from Rita Genecin to Dr. Paul Genecin of one wood cut print by Munakata, entitled "The Hawk Woman"

DX 508.  Charles Schwab Risk Management & Investigations Interview Case Summary dated 1/19/01

DX 509.  Correspondence from Marc Hertzberg to Charles Schwab & Co., Inc. dated 10/25/99 Re:  Rita Genecin IRA, Account #3615-9557

DX 510.  Correspondence from Max E. Blumenthal to Rita Genecin and Daniel E. Wagner dated 9/29/98

DX 511.  Checks bearing Rita Genecin's signature

DX 512.  Correspondence from Max E. Blumenthal to Daniel E. Wagner dated 9/8/00

c.    **Objections to Exhibits:**

(1)    **Objections of Defendant Paul Genecin to Exhibits of Plaintiff and Defendant Victor Genecin in his individual capacity**

Defendant Paul Genecin hereby objects to the following exhibits which were transmitted to defense counsel via a letter dated May 5, 2004.

| Exhibit No. | Objection |
|---|---|
| PX 1 | The defendant objects on the ground that this is a pleading in connection with a motion which was not granted. Accordingly, it is not evidence. It also contains hearsay information as well as irrelevant information. |
| PX 2 | See objection to Exhibit No. 1. |
| PX 3 | See objection to Exhibit No. 1. |
| PX 4 | See objection to Exhibit No. 1. |
| PX 10 | Irrelevant. |
| PX 11 | Irrelevant. |
| PX 12 | Irrelevant. |
| PX 13 | See objection to Exhibit No. 1. |
| PX 14 | See objection to Exhibit No. 1. |
| PX 15 | See objection to Exhibit No. 1. |
| PX 16 | See objection to Exhibit No. 1. |
| PX 17 | Since Dr. Genecin will be testifying at trial, there is no need to offer deposition testimony. Some of this testimony is irrelevant. |
| PX 18 | See objection to Exhibit No. 1. |
| PX 19 | See objection to Exhibit No. 1. |
| PX 20 | Irrelevant, hearsay. |

PX 21                          Irrelevant, hearsay.

PX 22                          Irrelevant, hearsay.

PX 23                          Irrelevant, hearsay.

PX 24                          Irrelevant, hearsay.

DX 601                         See objection to Exhibit No. 1.

DX 602                         See objection to Exhibit No. 1.

DX 603                         See objection to Exhibit No. 1.

DX 604                         See objection to Exhibit No. 1.

DX 605                         See objection to Exhibit No. 1.

DX 606                         See objection to Exhibit No. 1.

**(2)   Statement of Plaintiff and Defendant Victor Genecin in his individual capacity regarding admissibility of their proffered exhibits objected to by Defendant Paul Genecin**

Exhibit No.                    Basis for Admissibility

PX 1                           PX 1 is offered in conjunction with PX 2.  PX 1 is the Local Rule 56(a) Statement in this case of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin in His Individual Capacity.  PX 2 is Defendant's Local Rule 56(A) 2 Statement admitting as undisputed the facts set forth in PX 1.  These exhibits are offered as evidentiary admissions.

PX 2                           See basis for admissibility stated in connection with PX 1.

PX 3                           PX 3 is offered in conjunction with PX 4.  PX 3 is the Complaint in this action.  PX 4 is the Answer of Defendant Paul Genecin. These exhibits are offered as both judicial admissions binding on Defendant Paul Genecin and as evidentiary admissions.

PX 4                           See basis for admissibility stated in connection with PX 3.

PX 10                          The Will of Rita Genecin is relevant to as circumstantial

evidence of her intent to give unequal portions of her estate to her sons Paul Genecin and Victor Genecin.

PX 11                The insurance policy obtained by Defendant Paul Genecin and issued by Chubb is relevant because in it Paul Genecin arranged to have the Lautrec insured on behalf of the Estate of Rita Genecin and, therefore, constitutes an implied admission that the Estate owned the Lautrec lithograph.

PX 12                The insurance bill tendered to the Estate of Rita Genecin by Defendant Paul Genecin is relevant as an implied admission that the Estate owned the Lautrec lithograph because Defendant Paul Genecin arranged to have insurance on the Lautrec taken out in the name of the Estate.

PX 13                PX 13 is offered in conjunction with PX 14.  PX 13 is the Local Rule 56(a) Statement in this case of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin in His Individual Capacity.  PX 14 is Defendant's Local Rule 56(A) 2 Statement admitting as undisputed the facts set forth in PX 13.  These exhibits are offered as evidentiary admissions.

PX 14                See basis for admissibility in connection with PX 13.

PX 15                PX 15 is offered in conjunction with PX 16.  PX 15 is the Complaint  in this action.  PX 16 is the Answer of Defendant Paul Genecin.  These exhibits are offered as both judicial admissions binding on Defendant Paul Genecin and as evidentiary admissions.

PX 16                See basis for admissibility stated in connection with PX 15.

PX 17                Defendant Paul Genecin's deposition testimony is admissible as an admission of a party opponent whether or not he testifies at trial.  Defendant Paul Genecin's objection does not state which portions he contends are irrelevant.

PX 18                PX 18 is offered in conjunction with PX 19.  PX 18 is the Local Rule 56(a) Statement in this case of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin in His Individual Capacity.  PX 19 is Defendant's Local Rule 56(A) 2 Statement

admitting as undisputed the facts set forth in PX 18.  These exhibits are offered as evidentiary admissions.

PX 19                    See basis for admissibility stated in connection with PX 18.

PX 20                    PX 20 is relevant to whether Victoria Morrow is barred from testifying under the Maryland Dead Man's statute since it shows that she acted on behalf of her husband, Defendant Paul Genecin, in connection with this dispute.

PX 21                    PX 21 is relevant for the reasons stated in connection with PX 20.

PX 22                    PX 22, is not offered for the truth of the matters asserted therein, but is offered to show the information made available by Rita Genecin to Wagner Capital Management, Inc. which provided the basis for calculating the 1/15th fractional share of the Lautrec by Rita Genecin to Defendant Paul Genecin and other members of his family in January 2000.

PX 23                    This exhibit is offered as an admission by defendant Paul Genecin through his then attorney Gerald P. Martin, concerning the untrue assertion that Rita Genecin executed the purported January 4, 2000 letter giving the Lautrec to Defendant Paul Genecin in New Haven, Connecticut.

PX 24                    This Exhibit is offered as an admission by a party-opponent.

DX 601                   DX 601 is offered in conjunction with DX 602.  DX 601 is the Local Rule 56(a) Statement in this case of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin in His Individual Capacity.  DX 602 is Defendant's Local Rule 56(A) 2 Statement admitting as undisputed the facts set forth in DX 601.  These exhibits are offered as evidentiary admissions.

DX 602                   See basis for admissibility stated in connection with DX 601.

DX 603                   DX 603 is offered in conjunction with DX 604.  DX 603 is the Local Rule 56(a) Statement in this case of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin in His Individual Capacity.  DX 604 is Defendant's Local Rule 56(A) 2 Statement

admitting as undisputed the facts set forth in DX 603.  These exhibits are offered as evidentiary admissions.

DX 604                    See basis for admissibility stated in connection with DX 603.

DX 605                    DX 605 is offered in conjunction with DX 606.  DX 605 is the Local Rule 56(a) Statement in this case of Plaintiff Estate of Rita Genecin and of Defendant Victor Genecin in His Individual Capacity.  DX 606 is Defendant's Local Rule 56(A) 2 Statement admitting as undisputed the facts set forth in DX 601.  These exhibits are offered as evidentiary admissions.

DX 606                    See basis for admissibility stated in connection with DX 605.

### (3)    Objections of Plaintiff and Defendant Victor Genecin in his individual capacity to Exhibits of Defendant Paul Genecin

Plaintiff and Defendant Victor Genecin hereby objects to the following exhibits which were transmitted to Plaintiff's counsel via a letter dated May 11, 2004 and via an email dated May 12, 2004:

Exhibit No.                  Objection

DX 501                    This document is irrelevant and immaterial in the absence of admissible evidence establishing that it was delivered by Rita Genecin to Defendant Paul Genecin; there is insufficient evidence to establish the authenticity of the document; any testimony offered by Defendant Paul Genecin or his wife and agent Victoria Morrow to establish the authenticity of this document is precluded by the Maryland Dead Man's statute, MD. Code Cts. & Jud. Proc. art., § 9-116.

DX 502                    This document contains hearsay if offered in the case in chief of Defendant Paul Genecin.

DX 503                    This document is irrelevant and immaterial in the absence of admissible evidence establishing that it was delivered by Rita Genecin to Defendant Paul Genecin; there is insufficient evidence to establish the authenticity of the document; any testimony offered by Defendant Paul Genecin or his wife and agent Victoria Morrow to establish the authenticity of this

document is precluded by the Maryland Dead Man's statute, MD. Code Cts. & Jud. Proc. art., § 9-116.

DX 504    This document is irrelevant and immaterial in the absence of admissible evidence establishing that it was delivered by Rita Genecin to Defendant Paul Genecin; there is insufficient evidence to establish the authenticity of the document; any testimony offered by Defendant Paul Genecin or his wife and agent Victoria Morrow to establish the authenticity of this document is precluded by the Maryland Dead Man's statute, MD. Code Cts. & Jud. Proc. art., § 9-116.

DX 505    This document is irrelevant and immaterial in the absence of admissible evidence establishing that it was delivered by Rita Genecin to Defendant Paul Genecin; there is insufficient evidence to establish the authenticity of the document; any testimony offered by Defendant Paul Genecin or his wife and agent Victoria Morrow to establish the authenticity of this document is precluded by the Maryland Dead Man's statute, MD. Code Cts. & Jud. Proc. art., § 9-116.

DX 506    This document is irrelevant and immaterial in the absence of admissible evidence establishing that it was delivered by Rita Genecin to Defendant Paul Genecin; there is insufficient evidence to establish the authenticity of the document; any testimony offered by Defendant Paul Genecin or his wife and agent Victoria Morrow to establish the authenticity of this document is precluded by the Maryland Dead Man's statute, MD. Code Cts. & Jud. Proc. art., § 9-116.

DX 507    This document is irrelevant and immaterial in the absence of admissible evidence establishing that it was delivered by Rita Genecin to Defendant Paul Genecin; there is insufficient evidence to establish the authenticity of the document; any testimony offered by Defendant Paul Genecin or his wife and agent Victoria Morrow to establish the authenticity of this document is precluded by the Maryland Dead Man's statute, MD. Code Cts. & Jud. Proc. art., § 9-116.

DX 508    This document contains hearsay; there is insufficient evidence to establish a foundation for its admissibility; the information contained is irrelevant and immaterial to the issues in this action

in that no party to this action is seeking to offer the document to which the information contained in this proposed exhibit relates.

DX 510    This document contains hearsay; there is insufficient evidence to establish a foundation for its admissibility; it contains an expression of legal opinion that would be inadmissible even if the witness were present to testify.

DX 511    The documents are irrelevant and immaterial and there is insufficient evidence to establish a foundation for their admissibility.

DX 512    The document contains hearsay; it is incomplete in that it fails to include the documents which the proposed exhibit says are enclosed; the documents which the proposed exhibit enclosed are inadmissible for independent reasons if offered by Defendant, Paul Genecin in that they contain hearsay statements or are inadmissible for the reasons stated in the object to DX 501.

      **d**.    **Deposition Testimony:**

          **(1)**    **Deposition Testimony to be Offered by Plaintiff.**

          See paragraph 8.b.(1) above, PX 17

          **(2)**    **Deposition Testimony to be Offered by Defendant Victor Genecin in his individual capacity:**

          None

          **(3)**    **Deposition Testimony to be Offered by Defendant Paul Genecin:**

          None

**9.**    **STIPULATIONS AND PRPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW:**

    **a:**    **Stipulated of Facts**

The parties agree that the following facts are true:

1.      Rita Genecin, a citizen and resident of the State of Maryland, took her own life at her residence in Baltimore, Maryland on August 5, 2000.  She left a will dated July 18, 1995, supplemented by a codicil dated January 12, 2000 (collectively, the "Will").

2.      The Will was admitted to probate on August 18, 2000. Victor Genecin was named Personal Representative of the Estate on that date.

3.      Victor Genecin is a son of Rita Genecin, and a citizen of the State of New York.

4.      Defendant Paul Genecin is also a son of Rita Genecin, and a citizen of the State of Connecticut.

5.      The Will provided for three Personal Representatives: Paul Genecin, Victor Genecin, and Daniel Wagner, Rita Genecin's investment adviser. On October 9, 2000, Paul Genecin executed a consent to the appointment of Victor Genecin as sole Personal Representative.

6.      Shortly after Rita Genecin's death, the Lautrec was appraised at a value of $135,000.00.

7.      The Lautrec was in Rita Genecin's home in Baltimore, Maryland at the time of her death on August 5, 2000.  During the period December 1999 until just after Rita Genecin's death, the Lautrec never left that home.

8.      Upon learning of their mother's death, Victor Genecin and Paul Genecin went to her house in Baltimore, where they both arrived on August 6, 2000, and stayed for some days.

9.      Also during the week of August 6, 2000, Paul Genecin sought and obtained Victor Genecin's agreement that Paul Genecin would remove all of the works of art, including the Lautrec and the Vuillards, from Rita Genecin's home for safekeeping.

10.     Paul Genecin represented that the works of art would be safer in his Connecticut home, which had an alarm system and a safe, than in the decedent's home, which was now uninhabited as a consequence of the death of Rita Genecin.

b:    **Proposed Findings of Fact of Plaintiff Estate of Rita Genecin and Defendant Victor Genecin**

(1)    **Proposed Findings of Fact of Plaintiff Estate of Rita Genecin and Defendant Victor Genecin**

1.    Rita Genecin, a citizen and resident of the State of Maryland, took her own life at her residence in Baltimore, Maryland on August 5, 2000.  She left a will dated July 18, 1995, supplemented by a codicil dated January 12, 2000 (collectively, the "Will").  (Stip. Fact 1; PX 1 ¶1; PX 2; PX 3 ¶¶ 9-10; PX 4 ¶¶ 8-10; Test. of Victor Genecin).

2.    The Will was admitted to probate on August 18, 2000. Victor Genecin was named Personal Representative of the Estate on that date.  (Stip. Fact 1; PX 1 ¶2; PX 2; PX 3 ¶¶ 4, 11; PX 10; Test. of Victor Genecin).

3.    Victor Genecin is a son of Rita Genecin, and a citizen of the State of New York. (Stip. Fact. 3; PX 1 ¶ 3; PX 2 ¶ 3; PX 3 ¶ 8; PX 4 ¶¶ 8-10; Test. of Victor Genecin)

4.    Defendant Paul Genecin is also a son of Rita Genecin, and a citizen of the State of Connecticut.  (Stip. Fact 5; PX 1 ¶4; PX 2 ¶ 4; PX 3 ¶ 7; PX 4 ¶¶ 8-10; Test. of Victor Genecin).

5.    The Will provided for three Personal Representatives: Paul Genecin, Victor Genecin, and Daniel Wagner, Rita Genecin's investment adviser. On October 9, 2000, Paul Genecin executed a consent to the appointment of Victor Genecin as sole Personal Representative. (Stip. Fact 5; PX 1 ¶ 5; PX 2 ¶ 5; PX 10; Test. of Victor Genecin).

6.    In her Will, Rita Genecin made no specific bequests, but specified that her residuary estate was to be divided between her two sons, with 55% to belong to Victor Genecin and 45% to belong to Paul Genecin.  (PX 1 ¶ 6; PX 2 ¶ 6; PX 3 ¶ 13; PX 4 ¶¶ 12-14; PX 10; Test. of Victor Genecin).

7.     Upon her death, Rita Genecin left two types of assets.  Her probate assets are those governed by the terms of her Will.  Her non-probate assets are not governed by the terms of her Will, but are included in her Estate for purposes of calculating federal and state estate tax liability. (PX 7 ¶ 7; PX 2 ¶ 7; PX 3 ¶ 14; PX 4 ¶¶ 12, 14; Test. of Victor Genecin).

### (2)   Proposed Findings of Fact of Plaintiff Estate of Rita Genecin

8.     The probate assets of the Estate consist primarily of the personal possessions of Rita Genecin.  A collection of works of art, consisting of eleven original lithographs by various European artists, plus two paintings on paper by Indian artists (collectively, "the works of art"), were located in the decedent's home, located at 5616 Cross Country Boulevard in Baltimore, Maryland, at the time of her death in August, 2000.  (PX 1 ¶ 8; PX 2 ¶ 8; PX 3 ¶¶ 15-16; PX 4 ¶ 16; Test. of Victor Genecin).

9.     The most valuable of the works of art is an 1897 color lithograph by the French artist Henri de Toulouse-Lautrec entitled *Partie de campagne (le chariot anglais)* ("the Lautrec"). The Lautrec represents more than 50 percent of the total value of the works of art.  (PX 7 ¶ 9; PX 2 ¶ 9).

10.     Shortly after Rita Genecin's death, the Lautrec was appraised at a value of $135,000.00. (PX 1 ¶ 10; PX 2 ¶ 10).

11.     The Lautrec was in Rita Genecin's home in Baltimore, Maryland at the time of her death on August 5, 2000.  During the period December 1999 until just after Rita Genecin's death, the Lautrec never left that home. (PX 1 ¶ 11; PX 2 ¶ 11).

12.     Upon learning of their mother's death, Victor Genecin and Paul Genecin went to her house in Baltimore, where they both arrived on August 6, 2000, and stayed for some days. (PX 24 ¶ 12; PX 25 ¶ 12; PX15 ¶ 34; PX 16 ¶ 34; Test. of Victor Genecin).

13.     On January 6, 2000, Rita Genecin went to the offices of Daniel Wagner (WCM) and met with Mr. Wagner, David Citron (then a vice president of WCM) and Marc J. Hertzberg, also a vice president.  At that meeting, Rita Genecin stated that, starting with 2000, she desired to make annual fractional gifts, so as to remain within the Federal gift tax limitations, of shares in the Lautrec to her son Paul Genecin, his wife, and his two sons. She asked Mr. Hertzberg to prepare the necessary documents.  She presented to Mr. Wagner an appraisal that valued the Lautrec as of June 8, 1998 at $150,000.  At no time in that January 6, 2000 meeting did Rita Genecin ever state that she had made a gift of 100% of the Lautrec to Paul Genecin. (PX 1 ¶ 43; PX 2 ¶ 43; Test. of Daniel Wagner; Test. of Marc J. Hertzberg).

14.     Rita Genecin went to the offices of WCM on January 12, 2000 and met with Mr. Wagner, Mr. Citron and Mr. Hertzberg.  In the January 12, 2000 meeting, she executed a number of documents, including fractional gifts of the Lautrec designed to avoid gift tax liability, that had been prepared as a result of her instructions in the January 6, 2000 meeting.  At no time in the January 12, 2000 meeting did Rita Genecin ever state that she had made a gift of 100% of the Lautrec to her son, Paul Genecin.  (PX 1 ¶ 44; PX 2 ¶ 44; Test. of Daniel Wagner; Test. of Marc J. Hertzberg; Test. of Carol N. Sullivan).

15.     In the January 12, 2000 meeting, Rita Genecin stated that she would send the originals of the documents she executed at the meeting to Paul and Victor, respectively. She took these originals with her when she left.  On the first document shown in Exhibit D to the Affidavit of Carol N. Sullivan, concerning a gift to Paul Genecin, there appears a notation in Mr. Hertzberg's handwriting, stating "originals with Rita Genecin (sent to sons)." (PX 1 ¶ 45; PX 2 ¶ 45; Test. of Marc J. Hertzberg).

16.    Early in the week of August 6, 2000, Victor Genecin and Paul Genecin met together with Daniel Wagner, Rita Genecin's financial advisor.  (PX 13 ¶ 13; PX 14 ¶ 13; PX 15 ¶ 35; PX 16 ¶ 35; Test. of Victor Genecin; Test. of Daniel Wagner).

17.    In that meeting, Mr. Wagner provided to each brother, *inter alia*, copies of documents that Rita Genecin had executed in his office on January 12, 2000 before a notary public concerning certain of the works of art.  (PX 13 ¶ 14; PX 14 ¶ 14; PX 15 ¶ 36; PX 16 ¶ 36; PX 5; PX 6; PX 7; PX 8; Test. of Victor Genecin; Test. of Daniel Wagner).

18.    Specifically, Mr. Wagner provided copies of four documents, in each of which Rita Genecin purported to grant a 1/15 interest in the Lautrec to one of the following: Paul Genecin, Victoria Morrow (Paul Genecin's wife), Gregory Genecin (Paul Genecin's son) and Samuel Genecin (Paul Genecin's son). These four documents are referred to hereinafter as the "fractional share documents."  (PX 13 ¶ 15; PX 14 ¶ 15; PX 15 ¶ 37; PX 16 ¶¶ 34-39; PX 5; PX 6; PX 7; PX 8; Test. of Victor Genecin; Test. of Daniel Wagner).

19.    The Vuillards, like the Lautrec, were in Rita Genecin's home in Baltimore, Maryland at the time of her death. (PX 13 ¶ 17; PX 14 ¶ 17; Test. of Victor Genecin).

20.    Also during the week of August 6, 2000, Paul Genecin sought and obtained Victor Genecin's agreement that Paul Genecin would remove all of the works of art, including the Lautrec and the Vuillards, from Rita Genecin's home for safekeeping. (Test. of Victor Genecin).

21.    Paul Genecin represented that the works of art would be safer in his Connecticut home, which had an alarm system and a safe, than in the decedent's home, which was now uninhabited as a consequence of the death of Rita Genecin.  (PX 1 ¶ 20; PX 2 ¶ 20; PX 15 ¶ 41; PX 16 ¶¶ 41-44; Test. of Victor Genecin).

22.    With Victor Genecin's consent, Paul Genecin took custody of the works of art, including the Lautrec and the Vuillards on behalf of the Estate, and transported them to his residence at 340 St. Ronan Street in New Haven, Connecticut on or about August 11, 2000.  (PX 1 ¶ 21; PX 2 ¶ 21; PX 15 ¶ 42; PX 16 ¶¶ 41-44; Test. of Victor Genecin).

23.    Paul Genecin purchased insurance for the works of art, effective August 11, 2000, listing all of the works of art, including the Lautrec and the Vuillards, as property of the Estate, and submitted the insurance bill to the Estate for payment.  (PX 1 ¶ 22; PX 2 ¶ 22; PX 15 ¶ 43; PX 16 ¶ 43; PX 22 ¶ 43; PX 23 ¶¶ 41-44; PX 11; PX 12; Test. of Victor Genecin).

24.    During the period December 1999 until after Rita Genecin's death, Paul Genecin never removed the Lautrec from Rita Genecin's home, and the Lautrec never left that home. (PX 13 ¶ 41; PX 14 ¶ 41).

25.    On January 12, 2000, Rita Genecin executed before a notary in Baltimore the fractional share documents, purporting to give a 1/15[th] interest in the Lautrec to each of Paul Genecin, his wife Victoria Morrow, Paul's son Samuel Genecin, and Paul's son Gregory Genecin.  The fractional share documents were dated January 6, 2000). (PX 13 ¶ 42; PX 14 ¶ 42; PX 5, PX 6, PX 7, PX 8).

26.    Rita Genecin did not do everything it was possible for her to do to complete and perfect a gift of the Lautrec to Paul Genecin. (Evidence cited in support of proposed findings of fact 11, 16, 21, 22).

27.    The evidence that Rita Genecin intended to make a gift of 100 percent of the Lautrec to Paul Genecin in December 1999 or January 2000 is not clear and convincing. (Evidence cited in support of proposed findings of fact 11-22 and proposed findings of fact 1-18 based on rebuttal testimony if offered).

28.    The evidence that Paul Genecin received or assumed dominion over the Lautrec is not clear and convincing.  (Evidence cited in support of proposed findings of fact 1-16, 21).

29.    The Lautrec is a work of art on paper, in a frame, and is easily carried and transported (Test. of Victor Genecin).

30.    Rita Genecin did not make an effective actual delivery of the Lautrec to Paul Genecin.  (Evidence cited in support of proposed finings of fact 11, 16, 21, 22).

31.    Rita Genecin did not make an effective constructive delivery of the Lautrec to Paul Genecin.  (Evidence cited in support of proposed findings of fact 1-16 based on rebuttal testimony, if offered).

### (3)   Proposed Findings of Fact of Plaintiff Estate of Rita Genecin Based on Rebuttal Testimony If Offered.

Plaintiff takes the position that, pursuant to the Maryland Dead Man's Statute, Md. Code Cts.  Jud. Proc. art. 1, § 19-116, defendant Paul Genecin, his wife Victoria R. Morrow and their minor son, Gregory Genecin may not be permitted to testify in this action concerning any transaction or statement of Rita Genecin.  If, however, the court, notwithstanding the objection of Plaintiff permits Defendant Paul Genecin, and/or Victoria R. Morrow and/or Gregory Genecin to testify concerning transactions between Paul Genecin and Rita Genecin concerning inter alia, the alleged gift to Paul Genecin of the lithograph by Henri de Toulouse-Lautrec entitled *Partie de campagne*, Plaintiff reserves the right to offer, without waiving its objection, rebuttal evidence that would support the following findings of fact:

1.    At no time prior to the date of her death on August 5, 2000, did Rita Genecin relinquish physical possession of the Lautrec to Paul Genecin. Rita Genecin acted as its owner at all times until she died. (PX 17, Tr. 25 line 3 – 27 line 10, Tr. 118-120).

2.      During the week of August 6, 2000, Paul Genecin made no mention of any claim that he might have to ownership of the entire Lautrec by inter vivos gift.  (PX 13 ¶ 18; PX 14 ¶ 18; Test. of Victor Genecin).

3.      The first occasion on which Paul Genecin claimed to be the owner of 100% of the Lautrec was in a facsimile transmission dated September 5, 2000 that he sent on that date to Max E. Blumenthal, Esq., who had been retained as counsel for the Estate. (PX 13 ¶ 23; PX 14 ¶ 23; PX 17, Tr. 89, lines14-18).

4.      Paul Genecin did not raise directly with Victor Genecin the issue of ownership of the Lautrec until some time after his September 5, 2000 fax to Blumenthal. (PX 13 ¶ 25; PX 14 ¶ 25; PX 17, Tr. 117).

5.      Rita Genecin did not appear before Mulrine to sign either of the two originals of the January 4, 2000 Document. (PX 13 ¶ 29; PX 14 ¶ 29; PX 17, Paul Genecin Tr. 82-85).

6.      Rita Genecin did not sign either original of the January 4, 2000 Document in the presence of Mulrine. (PX 13 ¶ 30; PX 14 ¶ 14; PX 17, Tr. 82-85).

7.      Rita Genecin did not sign either original of the January 4, 2000 Document on January 4, 2000. (PX 13 ¶ 31; PX 14 ¶ 31; PX 17, Paul Genecin Tr. 81-82).

8.      Rita Genecin was not in New Haven, Connecticut on January 4, 2000 and that she did not sign either original of the January 4, 2000 Document in New Haven. (PX 3 ¶¶ 46-47; PX 4 ¶ 46; PX 13 ¶ 32; PX 14 ¶ 32; PX 17, Tr. 81-85).

9.      On January 4, 2000, Mulrine was employed by the Yale University Health Service and worked in the same suite of offices as Paul Genecin, who was then and is now her ultimate boss. (PX 13 ¶ 33; PX 14 ¶ 33; PX 17, Tr. 84 line l.24 – 85; line 14).

10.     Mulrine stamped, signed and dated both originals of the January 4, 2000 Document (each of which already contained a signature above the typewritten line reading "Rita

Genecin") in her capacity as a Notary Public at the request of Paul Genecin. (PX 3 ¶45; PX 4 ¶45; PX 17, Tr. 80-84).

11.    Rita Genecin did not sign either original of the January 4, 2000 Document in the presence of any person other than Paul Genecin. (PX 13 ¶ 35; PX 14 ¶ 35; PX 17 Tr. 82).

12.    Defendant Paul Genecin claims that he is the owner of the Lautrec by virtue of the January 4, 2000 Document. (PX 13 ¶ 36; PX 14 ¶ 36; PX 3 ¶ 80; PX 4 ¶80; PX 17, Tr. 101 line 16 – 102 line 3).

13.    The only two documents on which Paul Genecin relies to prove an inter vivos gift to him by Rita Genecin of the Lautrec are the two originals of the January 4, 2000 Document. (PX 13 ¶ 37; PX 14 ¶ 37; PX 17, Tr. 101 line 16 – 102 line 3).

14.    No one other than Paul Genecin claims to have witnessed the alleged signatures of Rita Genecin on the two originals of the January 4, 2000 Document.  (PX 13 ¶ 39; PX 14 ¶ 39; PX 17, Tr. 81-85).

15.    Paul Genecin has consulted on a regular basis with his wife, regarding the Estate, inter vivos gifts made by Rita Genecin, and the taxes to be paid on account of such gifts. Victoria Morrow has participated in meetings with Paul Genecin's counsel regarding Estate-related matters. Following Rita Genecin's death, Victoria Morrow and Paul Genecin, working together, went through the desk of Rita Genecin and collected the decedent's checks and other records. Victoria Morrow removed those records from Rita Genecin's home for photocopying, and prepared a spreadsheet, in Victoria Morrow's handwriting, that purports to set forth inter vivos cash gifts made by Rita Genecin and Abraham Genecin, M.D., Rita's Genecin's husband who predeceased her, to Victor Genecin and his children. (PX 18 ¶ 51; PX 19 ¶ 51).

16.    In a November 23, 2003 e-mail to Max Blumenthal, Esq., Baltimore counsel for the Estate, Victoria Morrow states that Paul Genecin has "authorized [her] to handle all decisions and communications about his parents' estate for the present time," and set forth ten numbered questions to which she requests answers. Morrow testified that Paul Genecin, during a recent period of illness, designated her in writing to handle his decision-making, but refused to produce the alleged written authorization or describe her husband's illness. However, Morrow has refused to produce the alleged written authorization or describe her husband's illness. Morrow, claiming to have authority to speak for her husband, Paul Genecin, has attempted to deal directly with counsel of record in this action and with Baltimore counsel for the Estate.  On several occasions Victoria Morrow has (a) composed a number of written communications taking positions in connection with Estate matters, and (b) dictated the content to Paul Genecin, who then (c) typed and sent the communications. Sometimes Victoria Morrow would give Paul Genecin her input regarding his Estate-related correspondence, and he would redraft and rewrite it. (PX 18 ¶ 52; PX 19 ¶ 52; PX 20; PX 21).

**(4)   Proposed Findings of Fact of Defendant Victor Genecin**

1.    Rita Genecin maintained an IRA account at Charles Schwab prior to her death.  (DX 603 ¶ 12; DX 604 ¶ 12).

2.    The most substantial non-probate asset left by Rita Genecin is an Individual Retirement Account with Charles Schwab & Company, Inc. (the "Schwab IRA") in the name of Rita Genecin. (DX 601 ¶ 53; DX 602 ¶ 53; DX 605 ¶ 18; DX 602 ¶ 18; Test. of Victor Genecin).

3.    Schwab IRA account has not been traded since notice of the death of Rita Genecin was provided to Schwab by Paul Genecin. (DX 601 ¶ 54; DX 602 ¶ 54).

4.      Paul Genecin and his wife, Victoria Morrow, lack first-hand knowledge regarding how or when Rita Genecin submitted beneficiary designation documents to Schwab in connection with the Schwab IRA. (DX 601 ¶ 55; DX 602 ¶ 55).

5.      Rita Genecin signed two separate documents, both signed by her on the same day, October 8, 1998.  One such document, the Schwab IRA Application instructs that the division of the Schwab IRA shall be 60% to Victor Genecin and 40% to Paul Genecin. The other document, the Rita Genecin Beneficiary Designation, directs the account to be distributed to Rita Genecin's descendents who survive her, "per stirpes".  The "per stirpes" designation was silent as to percentage of IRA each descendent was to receive upon the death of Rita Genecin. (Test. of Daniel Wagner; DX 607; DX 608).

6.      On October 8, 1998, Rita Genecin completed and signed a Schwab IRA Application Form.  This document contained a page for the applicant to designate the names and addresses of beneficiaries to receive the contents of the account, and to designate the percentages of the account such beneficiaries are to receive.  Rita Genecin's Schwab IRA Application was sent by Carol N. Sullivan to Schwab and was received by Schwab on October 20, 1998.  (DX 607; Test. of Carol N. Sullivan; Test. of Schwab Custodian of Records).

7.      On the Schwab IRA Application, Rita Genecin listed her two sons, Victor Genecin and Paul Genecin, as the beneficiaries to receive her IRA account in the event of her death. To the right of Victor Genecin's social security number and the description "son" the number 60 followed by the percent symbol is written.  To the right of Paul Genecin's social security number and the description "son", the number 40 followed by the percent symbol is written.  Rita Genecin thereby instructed Schwab to divide the IRA account upon her death between Victor Genecin and Paul Genecin, with Victor Genecin to receive 60% of the

account and Paul Genecin to receive 40% of the account. (DX 607; Test. of Daniel Wagner).

8.     The Schwab IRA Application designating Victor as the 60% beneficiary and Paul as the 40% beneficiary, and the "per stirpes" designation dated October 8, 1998, were simultaneously executed by Rita Genecin at the offices of Daniel Wagner on October 8. 1998.   (DX 607; DX 608; Test. of Daniel Wagner).

9.     Schwab received the Schwab Beneficiary Designation designating Victor as the 60% beneficiary and Paul as the 40% beneficiary, and the "per stirpes" designation dated October 8, 1998, on October 20, 1998.  (DX 601 ¶ 61; DX 602 ¶ 61; DX 607; Test. of Schwab Custodian of Records).

10.     On October 21, 1999, Rita Genecin executed a document in connection with the Schwab IRA captioned "IRA Beneficiary Designation Supplement."  Schwab received the "IRA Beneficiary Designation Supplement" on October 29, 1999.  (DX 22 ¶ 62; DX 602 ¶ 62; DX 611; Test. of Marc J. Hertzberg; Test. of Schwab Custodian of Records).

11.     When Marc Hertzberg sent the executed "IRA Beneficiary Designation Supplement" to Schwab, he also transmitted therewith the "per stirpes" designation witnessed by Blumenthal on October 6, 1998, the original of which Hertzberg found in the file of Wagner Capital Management on or about October 21, 1999. Hertzberg sent the original October 6, 1998 Rita Genecin Beneficiary Designation document which he found in the file to Schwab without informing Rita Genecin that he was doing so or being instructed by her to do so. (DX 601 ¶ 63; DX 602 ¶ 63; Test. of Marc J. Hertzberg).

12.     The Beneficiary Designation Supplement provides, inter alia, that "Schwab shall not be required to make any distributions or follow any instructions hereunder unless it has received instructions from the personal representative . . . that Schwab considers, in its

sole discretion, to be clear and unambiguous, with respect to: (i) the amount of the distribution [and]. . . (iii) the identity of the party or parties who will receive the distribution." (DX 601 ¶ 64; DX 602 ¶ 64; DX 611; Test. of Marc J. Hertzberg).

13.     The Beneficiary Designation Supplement further provides that, if the personal representative "fails or refuses to issue timely instructions in a form acceptable to Schwab," Schwab has the right to initiate legal proceedings for this purpose, and to seek to charge the IRA account for any costs incurred.  (DX 601 ¶ 65; DX 602 ¶ 65; DX 611; Test. of Marc J. Hertzberg).

14.     On December 20, 2000, Schwab's Office of Corporate Counsel sent a letter addressed jointly to Victor Genecin and Ms. Priest, stating that Rita Genecin had provided Schwab with 1) an IRA Application dated October 8, 2000 that allocated 60% of the account to Victor Genecin and 40% of the account to Paul Genecin, as well as 2) a non-Schwab document entitled "IRA Beneficiary Designation" that provided for distribution "per stirpes". Enclosed with Schwab's December 20, 2000 letter were copies of the two beneficiary designation documents described therein.  In that letter, counsel for Schwab further stated that, because of "a discrepancy between the two [beneficiary designation] documents," Schwab was unable to allocate the balance of Rita Genecin's IRA absent either a court order or signed and notarized letters of authorization from both Victor Genecin and Paul Genecin.  (DX 601 ¶ 73; DX 602 ¶ 73).

15.     Victor Genecin is the beneficiary of 60 percent of Rita Genecin's IRA Account with Charles Schwab & Co. Inc. and Paul Genecin is the owner of 40 percent of that account. (Evidence cited in support of proposed findings of fact 1-18).

16.     The descendants of Rita Genecin who survived her are Paul Genecin and his children, Gregory Genecin and Samuel Genecin, and Victor Genecin and his children

Alexander C. Genecin, Isabel A. Genecin and Michael P. Genecin.  (Test. of Victor Genecin).

17.     If, notwithstanding the allocation of benefits in Rita Genecin's Schwab IRA Application, the Court determines that Rita Genecin's Schwab IRA Account is owned by her descendants who survive her, per stirpes, based on either the Rita Genecin IRA Beneficiary Designation dated Oct. 8, 1998 or on the Rita Genecin IRA Beneficiary Designation dated Oct. 6, 1998, the beneficiaries of Rita Genecin's Schwab IRA Account are each of her seven descendants who survived her; i.e., Paul Genecin, Gregory Genecin, Samuel Genecin, Victor Genecin, Isabel A. Genecin and Michael P. Genecin.  (Proposed findings of fact 5, 11; DX 608, 610).

> **d.     Proposed Findings of Fact of Defendant Paul Genecin**

1.     Rita Genecin died in August, 2000.

2.     Rita Genecin is the deceased mother of Victor Genecin and Paul Genecin.

3.     Rita Genecin owned a lithograph entitled, "*Partie de campagne*" by Toulouse-Lautrec (hereinafter, "the Lautrec").

4.     Rita Genecin discussed giving the Lautrec to Paul Genecin in July, 1999 when Paul was at his mother's home in Baltimore, Maryland.

5.     Paul Genecin and his wife, Victoria Morrow, visited Rita Genecin at the end of 1999, at which time she gave Paul the Lautrec.  They were unable to transport the Lautrec back to New Haven with them at that time, because their dog was with them and would be riding in the back of the car.  They therefore left the Lautrec in Rita Genecin's home for safekeeping.

6.    Victoria Morrow was present on several occasions when Rita Genecin told Paul Genecin that the Lautrec belonged to Paul both before and after January 12, 2000, when Rita Genecin executed the fractional Deeds of Gift.

7.    On or about January 4, 2000, Rita Genecin signed a Deed of Gift in which she stated, "This letter is a Deed of Gift, in which I, Rita Genecin, hereby give, grant, convey and transfer all my right, title and interest in and to the item listed below to you, Paul Genecin, in fee simple, absolutely, without any reservation whatsoever…"

8.    Victoria Morrow is able to identify the signature on the Deed of Gift as Rita Genecin's.

9.    This Deed of Gift was delivered to Paul Genecin.

10.    On January 12, 2000, Rita Genecin quitclaimed the interest in her Baltimore home to herself, Victor Genecin  and Paul Genecin in order to eliminate any question as to her intentions with respect to the Lautrec and other artwork.

11.    Rita Genecin died in August of 2000, before Paul Genecin had the opportunity to bring the Lautrec to New Haven.

12.    Rita Genecin often drafted Deeds of Gift to her children to convey her various pieces of art to her children prior to her children removing the artwork from her home.

13.    In the three years prior to her death, Rita Genecin gifted several pieces of art in this fashion:

> Deed of Gift from Rita Genecin from Paul Genecin dated January 4, 1999 conveying One Lithograph by Edvard Munch entitled "Das Wieb" (Die Sphinx);

Deed of Gift from Rita Genecin to Paul Genecin dated December 25, 1997 conveying One Lithograph by Jasper Johns entitled "Numbers;"

Deed of Gift from Rita Genecin to Paul Genecin dated April 4, 1998 conveying One Lithograph by Jasper Johns entitled "Two Flags;"

Deed of Gift from Rita Genecin to Paul Genecin dated May 6, 1998 conveying One Lithograph by Philip Pearlstein entitled, "Nude on Orange and Black Mexican Rug;"

Deed of Gift from Rita Genecin to Paul Genecin dated January 4, 2000 conveying One wood cut print by Munakata, entitled, "The Hawk Woman."

14.  Rita Genecin intended to and did convey the Lautrec to Paul Genecin in its entirety.

15.  Rita Genecin maintained an IRA account at Charles Schwab prior to her death.

16.  Rita Genecin executed three separate Designation of Beneficiary forms in  connection with the IRA account.

17.  Two Designation of Beneficiary forms are dated October 8, 1998 and were received by Schwab on October 20, 1998.

18.  The third Designation of Beneficiary form is dated October 6, 1998, is witnessed by Rita Genecin's attorney, and was received by Schwab on October 29, 1999, having been transmitted to Schwab by Rita Genecin's financial advisor with a letter dated October 25, 1999 in which the financial advisor stated:  "Please make the appropriate changes to your records."

19.  The Designation of Beneficiary form which Victor Genecin alleges is controlling was received by Schwab on October 20, 1998.  It was signed by Rita Genecin in pen, and all of the blanks on the form, with the exception of the percentages to be distributed to each of her sons, were also filled out in pen.  The percentage of benefits were

penciled-in on this form, with Victor Genecin to receive 60% and Paul Genecin to receive 40%.

20.    There is no evidence to indicate that Rita Genecin placed the penciled percentages on that form.

21.    There is no evidence to indicate that the penciled-in percentages on that form were placed there prior to Rita Genecin signing the form.

22.    The other two forms were signed and dated by Rita Genecin.  There is no in-in provisions on those exhibits.  Both of those exhibits provide that the IRA account is to be distributed <u>per stirpes</u>.

23.    The form which Paul Genecin alleges controls the distribution of the IRA dictates that it be distributed "per stirpes."  This was the last designation of beneficiary form received by Schwab from Rita Genecin, having been received on October 29, 1999.

24.    A "per stirpes" distribution is consistent with the September 29, 1998 letter from Rita Genecin's lawyer, Max Blumenthal, in which he stated that Rita Genecin had executed a Beneficiary Designation form for her IRA account in which she designated her two sons "as beneficiaries in equal shares."

25.    Victor Genecin believed that it was Rita Genecin's intent to distribute the IRA "per stirpes," i.e. 50% to each son prior to Rita Genecin's death.

26.    Victor Genecin has acknowledged that he has no evidence to support the allegation in his complaint that Paul Genecin either altered or procured the alteration of one of the IRA Beneficiary Forms.

27.    There is no evidence to suggest that Rita Genecin ever told either her financial advisor or her lawyer at any point prior to her death that she wanted a division of

the IRA on any basis, other than a 50/50 split for each of her two sons.  To the contrary, both her lawyer and her financial advisor believed that she intended to make her two sons equal beneficiaries on the IRA account.

28.    Rita Genecin intended to have the IRA divided equally between her two sons.

### e.    Proposed Conclusions of Law

#### (1)    Plaintiff's Proposed Conclusions of Law Concerning Maryland Law Governing Inter Vivos Gifts

1.    Under the law of Maryland, a party claiming that it received a gift – in this case, defendant Paul Genecin – has the burden of establishing all the elements of a gift by clear and convincing evidence.  Dorsey v. Dorsey, 302 Md. 312, 318, 487 A.2d 1181, 1184 (Md., 1985); Rudo v. Karp, 80 Md. App. 424, 564 A.2d 100 (Md.Ct.Sp.App. 1989).

2.    The elements of a valid *inter vivos* gift under Maryland law are:

1) A clear intent on the part of the donor;

2) A gratuitous, unconditional transfer of possession;

3) An immediate transfer of title;

4) A delivery of the title by the donor to the donee;

5) An acceptance of the gift by the donee.

Dulany v. Taylor, 105 Md.App. 619, 631, 660 A.2d 1046, 1053 (Md.Ct.Sp.App. 1995); Rudo, 80 Md.App. at  429,  564 A.2d at 102-103; see Dorsey, 302 Md. at 318, 487 A.2d at 1184; Rogers v. Rogers, 271 Md. 603, 607, 319 A.2d 119, 121 (Md. 1974).

3.    When, as is the case here, the alleged donor is dead, the courts of Maryland are

> mindful of the principle that . . . the existence of an *inter vivos* gift must be established by 'explicit and convincing' evidence and the 'clearest proof' in order to diminish the possibility of fraudulent claims.

Rogers, 271 Md. at 607, 319 A.2d at 121 (*quoting* Schilling v. Waller, 243 Md. 271, 276, 220 A.2d 580, (Md. 1966); see also Schenker v. Moodhe, 175 Md. 193, 197, 200 A. 727, 730 (Md. 1938)("Only explicit and convincing evidence of every element with respect to gifts inter vivos or causa mortis can support such donations.").

**Competent Proof of a Gift Under Maryland Law**

4.    Consistent with the concern of the Maryland courts about the risk of fraudulent claims against decedents' estates by putative donees, the Maryland Dead Man's Statute "impose[s] silence upon interested parties as to transactions with or statements by the decedent." Reddy v. Mody, 39 Md. App. 675, 679, 388 A.2d 555, 559 (Md. Sp. App. 1978).

5.    The Dead Man's Statute, Md. Code Cts. & Jud. Proc. art., § 9-116, provides:

> A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement.

6.      The test for determining whether there has been a "transaction" within the meaning of the Maryland Dead Man's statute is

> "[w]hether, in case the witness testify falsely, the deceased, if living, could contradict it of his own knowledge."

Schifanelli v. Wallace, 271 Md. 177, 184, 315 A.2d 513 (Md. 1974).

7.      Federal Rule of Evidence 601 provides that in actions in which state law supplies the rule of decision, that state's law with respect to the competency of witnesses, including the state's Dead Man's Statute, must be applied.  Rosenfeld v. Basquiat, 78 F.3d 84 (2d Cir. 1996).

8.      Accordingly, Paul Genecin is incompetent to testify at the trial of this matter concerning any word or act of Rita Genecin.  His proferrred testimony:

> It is anticipated that Dr. Genecin will testify about his relationship with his mother, the circumstances of the gifting the Lautrec to hi[m] by his mother, the transfer of the interest in his mother's home to him, and the circumstances concerning the IRA account

(Defendant's List of Witnesses, Item A.) is composed entirely of matters as to which he is incompetent pursuant to the Dead Man's Statute.  Reddy v. Mody, 39 Md. App. 675, 679, 388 A.2d 555, 559 (Md. Sp. App. 1978).

9.      Paul Genecin's wife, Victoria Morrow and his minor son, Gregory Genecin are also barred under the Maryland Dead Man's Statute from testifying concerning any word or action of Rita Genecin.  For purposes of the Dead Man's Statute,  "a party is one who has an interest in the property sought," even if not named in the lawsuit. Farah v. Stout, 112 Md. App. 106, 117, 684 A.2d 471, 476  (Md.App. 1996).  Morrow is also a real party in interest because she has been actively involved in this litigation, instructing

counsel, and, from time to time, controlling the defense on the basis of a power granted to her by her husband.

10.     Any testimony by Morrow or Gregory that Rita Genecin spoke to either of them concerning the alleged "gift" of the Lautrec is hearsay not within any exception. Federal Rule of Evidence 801 (c); <u>see</u>  <u>Farah</u> , 112 Md. App. at 119-121, 864 A.2d at  477-8.

### *Maryand Law Concerning Delivery*

11.     Under Maryland law, it is essential to the validity of an *inter vivos* gift

> that the transfer of *both possession and title* shall be absolute
> and shall go into immediate effect."

<u>Berman v. Leckner</u>, 193 Md. 177, 182, 66 A.2d 392, 393 (Md. 1949)(emphasis supplied).

12.     "The validity of the alleged gifts depends upon the legal sufficiency of the deliveries."  <u>Schenker v. Moodhe</u>, 175 Md. 193, 200 A. 727, 728 (1938); <u>Hamilton v. Caplan</u>, 69 Md. App. 566, 573, 518 A.2d 1087, 1090 (Md.App.1987).

13.     The requirement of delivery is

> the only substantial protection, and the court should not weaken
> it by permitting the substitution of convenient and easily proven
> devices.

<u>Schenker</u>, *loc. cit*.

14.     For a gift to be valid under Maryland law, it must be delivered in a manner that transfers "the donor's dominion over the property without power of revocation or retention of dominion over the subject of the gift."  <u>Dorsey v. Dorsey</u>, 302 Md. 312, 318, 487 A.2d 1181, 1184 (Md., 1985).

15.     "There cannot be reserved to the donor a *locus poenitentiae*, which is a power to revoke the gift or a dominion over the subject of the gift." Rogers v. Rogers, 271 Md. 603, 607, 319 A.2d 119, 121-22 (Md. 1974).

16.     Rather, the gifted property must be "wholly under the donee's power." Dulany v. Taylor, 105 Md.App. 619, 632, 660 A.2d 1046, 1053 (Md.Ct.Sp.App. 1995); Hamilton v. Caplan, 69 Md. App. 566, 573, 518 A.2d 1087, 1090 (Md. App.1987).

17.     "The donor must have done everything which it was possible for [her] to do in order to complete and perfect the gift." Pomerantz v. Pomerantz, 179 Md. 436, 440, 19 A.2d 713, 715 (Md. 1941).

18.     Delivery may be actual or constructive, but must, in either case, place the gifted property beyond the dominion and control of the donor and within the dominion and control of the donee. Snyder v. Stouffer, 270 Md. 647, 650-651, 313 A.2d 497,     (Md. 1974).

19.     The concept of constructive delivery

evolved from the gift of items too difficult to deliver physically, such that the only way to deliver the item was symbolically.

Dulany, 105 Md.App. at 632; 660 A.2d at 1053; Hamilton, 69 Md.App. at 574; 518 A.2d at 1091.

20.     There may be a constructive delivery without manual tradition where from the very nature of the subject of the gift it may not be transferred or delivered in kind, but, nevertheless, something must be done to put the donee in possession of it, or transfer to him actual control and dominion over it.

Schenker, 175 Md. at 197, 200 A. at 730.

21.    To be valid, a constructive delivery:

must not only be accompanied by words sufficient to show a
donative intent, but must be of such a character as to
completely divest the donor of dominion and control over the
donation and to place it wholly under the donee's power . . .
Following are illustrations of this rule: Where a donor gave to
the donee a sealed package informing him that it contained
bank books and money; an insurance policy; the key to a trunk;
the key to a safe deposit box, accompanied by an order for its
delivery; the key to a cupboard; a trunk, box or other receptacle
containing bank deposit book; a suit case containing valuable
property. . . The rule as thus stated is subject to this
qualification, while the delivery may be constructive, it must be
*as nearly perfect and complete as the nature of the property and
the attendant circumstances and conditions will permit* . . . and
many of the cases in which the Courts have held a constructive
delivery insufficient turn upon that qualification.

Hamilton v. Caplan, 69 Md. App. 566, 574, 518 A.2d 1087, 1091 (Md.App.1987) (emphasis

supplied)(*quoting* Brooks v. Mitchell, 163 Md. 1, 11-12, 161 A. 261 (1932))(internal citations

omitted); see also Schenker v. Moodhe, 175 Md. 193, 197-98, 200 A. 727, 729  (1938).

23.    Under Maryland law,

[t]he cases in which constructive delivery has been found
involve circumstances in which the donor *thought he had done
all he could do* to relinquish dominion and control over the
donated item.

Malloy v. Smith, 265 Md. 460, 466, 290 A.2d 486 (Md. 1972)(emphasis supplied); Dulany,

105 Md.App. at 632, 660 A.2d at 1053; Hamilton, 69 Md. App. at 573, 518 A.2d at 1090.

24.    "A gift is incomplete in every instance in which a donor reserves the

power to revest the beneficial titles to the property in himself."  Metzger v. C.I.R., 38 F.3d

118, 121 (4th Cir. 1994) (interpreting gift tax regulations and Maryland law).

48

25.    Under Maryland law, moreover, conveyance of title to a house does

not convey title to the contents:

> [p]ictures, portraits and furniture do not pass with the house in
> which they are located.  The house is ordinarily real estate, and
> they are personal estate.  The two kinds of property are
> essentially different, and are disposed of under different statutes
> and rules of law.

Tilghman v. Frazer, 191 Md. 132, 62 A.2d. 596 (Md. 1948).

### *Maryand Law Concerning Donative Intent*

26.    As the claimant of an *inter vivos* gift, Paul Genecin must also prove by

clear and convincing evidence that there was "a clear intent on the part of the donor."

Dulany, 105 Md.App. at  631, 660 A.2d at 1053; Rudo, 80 Md.App.  at  429,  564 A.2d at

102-103.

27.    To establish this element,

> [t]he law requires that the evidence demonstrate "that the donor
> *clearly* and *unmistakably* intended *permanently* to relinquish all
> interest in, and all control over the res which is the subject of the
> gift.'

Rudo, 80 Md. App. at  430, 564 A.2d  at 103 (emphasis in original)(*quoting* DiTommasi v.

DiTommasi, 27 Md.App. 241, 246, 340 A.2d 341 (1975)); see also Dorsey, 302 Md. at 318,

487 A.2d at 1184; Schilling, 243 Md. at 276-77, 220 A.2d 580).

28.    The Maryland courts emphasize that:

> If a gift has reference to a future time when it is to operate as a
> transfer, it is only a promise without consideration, and cannot
> be enforced in law or equity.

Berman v. Leckner, 193 Md. 177, 182, 66 A.2d 392 (Md. 1949); Farah , 112 Md. App. at

121, 864 A.2d at  478; Rudo, 80 Md. App. at 430, 564 A.2d at 103.

***Maryand Law Concerning Acceptance***

        29.    Paul Genecin must also prove by  clear and convincing evidence that

"receive[d] it or assumed dominion of it." Shenker, 175 Md. at 197, 200 A. 727.

> **(2)    Proposed Conclusions of Law of Defendant Victor Genecin in
> His Individual Capacity Concerning the Schwab IRA**

        1.    Maryland law governs the interpretation of Rita Genecin's Schwab IRA

beneficiary designation documents.

        2.    Under Maryland law, when two or more documents, executed

contemporaneously, constitute part of the same transaction or of the same subject matter,

they must be interpreted together as a single instrument. See Bachmann v. Glazer &

Glazer, 316 Md. 405, 559 A.2d 365 (Md., 1989); Rothman v. Silver, 245 Md. 292, 226 A, 2d

308 (Md., 1967); Brown v. Fraley, 222 Md. 480, 161 A.2d 128 (1960); Ahern v. White, 39

Md. 409 (Md., 1874).

        3.    The Latin term *per stirpes* does not, in itself, designate the proportions

in which devisees are to take property; rather, the term designates the *manner* in which

specified property is to pass to descendants of the devisor. Robinson v. Mercantile Safe

Deposit and Trust Company, 214 Md. 30, 132 A.2d 841 (Md. 1957); Patchell v. Groom, 185

Md. 10, 15, 43 A.2d 32, 34 (Md. 1945).

        4.    Under Maryland law,

> a *stirps* is a root of inheritance; it designates the ancestor from
> whom the heir derives title; and it necessarily presupposes the
> death of the ancestor. When issue are said to take per stirpes, it
> is meant that the descendants of a deceased person take the

property to which he was entitled, or would have been entitled if living.

Patchell, 185 Md. at 15, 43 A.2d at 34.

5.    Read together, therefore, the two beneficiary designations dated October 8, 1998 have the effect of dividing the Schwab account with 60% thereof to go to Victor, or his descendants if he should predecease Rita Genecin, and 40% to Paul Genecin, or his descendants if he should predecease Rita Genecin.

6.    The "*per stirpes*" designation, thus has the legal effect in this case of supplying an instruction concerning a question that otherwise would have been covered by a default provision in the boilerplate of the Schwab IRA application. The Schwab application form specifies that, if no other provision is made, and one of the named beneficiaries should predecease the account holder, the survivor would take the whole account.

7.    The two October 6, 1998 beneficiary designations are thus consistent with each other, and together express Rita Genecin's intent to divide her IRA in a specified manner, and to ensure that the descendants of each beneficiary not be disinherited.  The October 6, 1998 beneficiary designation, which is identical to one of the October 8, 1998 beneficiary designations, cannot constitute a revocation because the document does not state that it is a revocation, and a revocation may only be implied from a disposition that is inconsistent with an earlier one.  Garner v. Garner, 167 Md. 423, 173 A. 486 (1934).

8.    Maryland law also requires that:

> where two provisions of a contract are in conflict they must, if
> possible, be construed to effectuate the intention of the parties
> as collected from the whole instrument. If a reconciliation can be
> effected by a reasonable interpretation, such interpretation
> should be given to the apparently repugnant provisions, rather
> than nullify any.

Chew v. Devries, 240 Md. 216, 220-221, 213 A.2d 742, 744-745 (Md., 1965); Canaras v.

Lift Truck Services, Inc., 272 Md. 337, 322 A.2d 866 (Md., 1974).

       9.    The issue of a conflict between handwritten numbers and typewritten

or printed text arises often in connection with negotiable instruments:

> If an instrument contains contradictory terms, typewritten terms
> prevail over printed terms [and] handwritten terms prevail over
> both.

West's Ann.Md.Code, Commercial Law, § 3-114; see also Prima Paint Corporation v.

Ammerman, 264 Md. 392, 395 (Md., 1972); Gomprecht v. Dunleer, 164 Md. 653 (Md.,

1933); Shapiro v. Chapin, 159 Md. 418 (Md. 1930). The policy behind this rule is clearly to

construe ambiguous terms consistently with the maker's intent. Rita Genecin's handwritten

beneficiary designation, providing 60% percent to Victor Genecin and 40% to Paul

Genecin, should therefore prevail over the typewritten document.

       10.    In Maryland, when the words "*per stirpes*" are used *alone* in reference

to a bequest of property, they are deemed to mean that decedent's property is divided in

equal shares by the number of children the decedent had, "[u]nless a contrary intention

expressly appears," and, if any child predeceases the decedent, that child's share will pass

to his or her children. West's Ann.Md.Code, Estates and Trusts § 1-210.1.

       11.    In this case, however, the beneficiary designations that use the words

"*per stirpes*" do not use them alone.  Rather, the designations read:

> Upon my death, my Individual Retirement Account shall be
> distributed *to my descendants who survive me*, <u>per</u> <u>stirpes</u>. . .

Exhibits 29 & 31 (emphasis supplied).

12.     Descendants are "issue of every degree." <u>Hoffman v. Watson</u>, 109 Md. 532, 72 A. 479, 481 (1909) The term  includes "every individual proceeding from the stock or family referred to by the testator."  <u>Levering v. Orrick</u>, 97 Md. 139, 54 A. 620, 622 (1903); *accord* <u>Gideon v. Fleischmann</u>, 66 A.2d 403, 406, 406, 193 Md. 203, 210 (1949) ("Unlike 'issue,' 'descendants' ordinarily is a word of fixed meaning and is all-comprehensive.").

13.     Accordingly, if the words *per stirpes* in these instruments is not read together with the percentage allocations of Rita Genecin's handwritten IRA beneficiary designation, and if Exhibit 29 or Exhibit 31 is deemed to be the sole operative beneficiary designation, then the Schwab IRA must be divided equally among the seven descendants of Rita Genecin who were living at the time of her death, *i.e.* Victor Genecin, his children and Paul Genecin and his children.

### (3)     Proposed Conclusions of Law of Defendant Paul Genecin

1.     To establish that a valid gift was made of the lithograph from Rita Genecin to Paul Genecin, the defendant must demonstrate three elements:  donative intent, delivery and acceptance.  <u>Hamilton v. Caplan</u>, 518 A.2d 1087, 1090-01 (Md. 1987).

2.     The conveyance of the Deed of Gift from Rita Genecin to Paul Genecin was sufficient to deliver the Lautrec to Paul Genecin and it is ample evidence of intent. "What constitutes delivery depends largely on the intent of the parties.  A constructive delivery is sufficient if made with the intention of transferring the Title.  It is not necessary that delivery should be by manual transfer."  <u>See</u> <u>Miller v. Hospelhorn</u>, 176 Md. 356, 367, 4 A.2d 728 (1939); <u>Brooks v. Mitchell</u>, 163 Md. 1, 161 A. 261 (1932). (collecting cases where

constructive delivery was deemed sufficient, *e.g.,* Brewer v. Bowersox, 92 Md. 570, 48 A. 1060, 1062 (1901); Frentz v. Schwarze, 122 Md. 12, 89 A. 439 (1913); First National Bank v. Thomas, 151 Md. 248, 134 A. 210, 213 (1926); Pomerantz v. Pomerantz, 19 A.2d 713, 715 (Md. 1941); Cox v. Hill, 6 Md. 274 (1854)).

3.    The character of the gift – an expensive and sentimental lithograph – made actual delivery impractical.  Thus, constructive delivery in the present case was sufficient to adequately convey the Lautrec to Paul Genecin merely by delivery of the Deed of Gift and transfer of ownership in the home.  "Where from the character or condition of the goods, an actual manual delivery is impractical, a constructive or symbolic delivery is sufficient."  See Merchants' Nat. Bank of Baltimore v. Roxbury Distilling Co., 196 F. 76, 84 (D.C. Md. 1912).

4.    Rita Genecin's pattern of gifting art work to her children through Deeds of Gift, while allowing the art work to remain in her home until her children could subsequently retrieve it, is consistent with her actions in the present case and suggests that transfer of the Deed of Gift of the Lautrec was sufficient to constitute a constructive delivery.  Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 492 N.E. 2d 1164 (1986).

5.    Rita Genecin's retention of the Lautrec in her home does not invalidate the gift of the Lautrec, particularly in light of the fact that her house was also owned by Paul Genecin.  Gruen v. Gruen, 488 N.Y.S. 2d 401 (N.Y. App. Div. 1984); Snyder v. Stouffer, 270 Md. 647, 313 A.2d 497 (1974); Rogers v. Rogers, 271 Md. 603 (1974); Register of Wills for Somerset County v. Sterling, 264 Md. 638 (1972).  Rita Genecin did all she could do to divest herself of control and dominion of the Lautrec by telling her son on several occasions to take the Lautrec from her home, delivering to him a Deed of Gift conveying to

him full interest in the Lautrec, and conveying to him an interest in the home where the Lautrec remained.  See  Malloy v. Smith, 265 Md. 460, 466, 290 A.2d 486 (1972).

6. There is not a single Maryland case that requires a donee to remove a gift from a home which he, in part, owns in order to effectuate that gift.

7. Acceptance of the Lautrec is presumed until the contrary is shown. Allendar v. Allendar, 199 Md. 541, 546, 87 A.2d 608 (1952).  There is no evidence to suggest that Paul Genecin did not accept the gift of the Lautrec.

8. The Dead Man's Statute does not prevent Dr. Victoria Morrow from testifying in this matter. The Dead Man's Statute only excludes disputed statements made by the decedent to a party to the proceedings.  Montgomery County v. Herliahy, 83 Md. App. 502, 512, 575 A.2d 874 (1990).  See also Reddy v. Mody, 39 Md. App. 675, 683, 388 A.2d 555 (1978); Shirk v. Suburban Trust Co., 248 Md. 114, 235 A.2d 549 (1967).  There is no Maryland case law which would support a conclusion that the testimony of the spouse of a party should be precluded under the Dead Man's Statute.  The cases are to the contrary. See Marx v. Marx, 127 Md. 373, 96 A. 544 (1916) (affirming trial court's decision that the husband of a party to the action was allowed to testify despite his obvious "interest" in seeing his wife prevail); Downes v. Maryland and Delaware Railway Co., 37 Md. 100, 1872 WL 4444 (1872) (holding that a shareholder of a corporation, which was a party to the action, was allowed to testify despite the shareholder's obvious interest); Guernsey v. Loyola Federal Savings & Loan, 226 Md. 77, 172 A.2d 506 (1961) (allowing officer of a corporation, which was a party, to testify despite the officer's interest in seeing his corporation prevail); Schaefer v. Spear, 148 Md. 620, 129 A. 898 (1925) (permitting the testimony of legatees under a will who would benefit from a recovery by the Executor).

9.      It is clear from these cases that the testimony of Dr. Morrow is not precluded under the Dead Man's Statute.  Thus, her evidence regarding the fact that Mrs. Genecin had stated in Dr. Morrow's presence that she had given the Lautrec to Dr. Genecin is admissible.  A case on point is <u>Stacy v. Burke</u>, 259 Md. 390, 269 A.2d 837 (1970).  In that case, the court held that it was proper to permit the testimony of a party's aunt to the effect that the decedent had expressed his intention to make gifts to the witness' nephew.  <u>Id</u>. at 405-06, 269 A.2d 845-47.  <u>See also</u> <u>Snyder v. Crabbs</u>, 263 Md. 28, 282 A.2d 6 (1971) (holding that decedent's sister's testimony regarding claim by sister for recovery for personal services was not barred by Dead Man's Statute).  Thus, Dr. Morrow's testimony that (1) Rita Genecin announced in the presence of Dr. Morrow the gift of the Lautrec to Paul Genecin; and (2) the signature on the January 4, 2000 Deed of Gift is Rita Genecin's is admissible through the testimony of Dr. Morrow.

10.     The designation of beneficiary form which was the last form received by Schwab on October 29, 1999 controls the division of Rita Genecin's IRA account in accordance with the IRA contract.  Rita Genecin's intent is confirmed by a letter dated October 25, 1999 from Rita Genecin's financial advisor in which he transmitted this beneficiary form to Schwab.

11.     The designation of beneficiary form which Victor Genecin proposes controls the division of the IRA proceeds was signed by Rita Genecin in pen, and all of the blanks on the form are completed in pen, with the exception of the percentages to be distributed to each of the sons.  These were filled in with pencil.  There is no evidence to indicate that Rita Genecin placed the pencil percentages on the form.  There is also no evidence to indicate that the penciled-in percentages were placed on the form prior to the time Rita Genecin signed the form.

12.     The plaintiff Victor Genecin has failed to meet his burden of proof with respect to the IRA.  The IRA is to be distributed *per stirpes* in accordance with Rita Genecin's intent, the controlling designation of beneficiary form and statements made by Rita Genecin to her lawyer and her financial advisor.

THE PLAINTIFF,
ESTATE OF RITA GENECIN, by VICTOR GENECIN,
Personal Representative and THE DEFENDANT PAUL
GENECIN, IN HIS INDIVIDUAL CAPACITY

By_____

David L. Belt (ct 04274)
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange Street
New Haven, CT  06503
Tel.:(203) 772-3100
Fax:(203) 772-1691
Email: dbelt@jacobslaw.com


THE DEFENDANT
PAUL GENECIN

By_____

Patrick M. Noonan (ct 00189)
Delaney, Zemetis, Donahue,
Durham & Noonan, P.C.
741 Boston Post Rd.
Guilford, CT 06437
Tel: (203) 458-9168
Fax: (203) 458-4424
Email: patnoonan@snet.net