UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTATE OF RITA GENECIN, by : <br> VICTOR GENECIN, : <br> Personal Representative, : <br>   Plaintiff, : <br> : <br> VS. : <br> : <br> : <br> PAUL GENECIN and : <br> VICTOR GENECIN, : <br> in his individual capacity, : <br>   Defendants. : | CIVIL NO.3:01CV00211(MRK) <br><br><br> MAY 19, 2004 |

**TRIAL MEMORANDUM OF**
**PLAINTIFF ESTATE OF RITA GENECIN**

Plaintiff the Estate of Rita Genecin respectfully submits this trial memorandum addressed to the First Count of the Complaint, in which it seeks an Order pursuant to Section 7-102 of the Maryland Code Annotated for Estates and Trusts settling title to a lithograph by French artist Henri de Toulouse-Lautrec entitled *Partie de campagne (le chariot anglais)* which was in the decedent's house in Baltimore Maryland at the time of her death, but which the Defendant Paul Genecin claims was given to him by the decedent prior to her death.

**INTRODUCTION**

Rita Genecin, a citizen and resident of the State of Maryland and the mother of Victor Genecin and Paul Genecin, took her own life at her residence in Baltimore, Maryland on August 5, 2000. She left a will dated July 18, 1995, supplemented by a codicil dated January 12, 2000 (collectively, the "Will"). The Will was admitted to probate on August 18, 2000. Victor Genecin was named Personal Representative of the Estate on that date. In her Will, Rita Genecin made no

specific bequests, but provided that her residuary estate was to be divided between her two sons, with 55% to belong to Victor Genecin and 45% to belong to Paul Genecin.

Upon her death, Rita Genecin left two types of assets. Her probate assets are those governed by the terms of her Will. Her non-probate assets are not governed by the terms of her Will, but are included in her Estate for purposes of calculating federal and state estate tax liability. The probate assets of the Estate consist primarily of the personal possessions of Rita Genecin, the most valuable of which are a collection of works of art, consisting of eleven original lithographs by various European artists, plus two paintings on paper by Indian artists (collectively, "the works of art"). The works of art were all located in the decedent's home in Baltimore, Maryland, at the time of her death in August, 2000. The most valuable of the works of art is an 1897 color lithograph by the French artist Henri de Toulouse-Lautrec entitled Partie de campagne (le chariot anglais) ("the Lautrec"). Shortly after Rita Genecin's death, the Lautrec was appraised at a value of $135,000.00, and it represents more than half of the total value of the works of art. During the period December 1999 until just after Rita Genecin's death, the Lautrec never left Rita Genecin's residence in Baltimore. The Lautrec is a work of art on paper, in a frame, and is easily carried and transported.

On January 6, 2000, Rita Genecin went to the offices of Daniel Wagner (WCM) and met with Mr. Wagner, David Citron (then a vice president of WCM) and Marc J. Hertzberg, also a vice president. At that meeting, Rita Genecin stated that, starting with 2000, she desired to make annual fractional gifts, so as to remain within the Federal gift tax limitations, of shares in the Lautrec to her son Paul Genecin, his wife, and his two sons, and asked that the necessary documents be prepared. She presented to Mr. Wagner an appraisal that valued the Lautrec as of June 8, 1998 at $150,000. At no time in that January 6, 2000 meeting did Rita Genecin ever state that she had made a gift of 100% of the Lautrec to Paul Genecin.

On January 12, 2000, Rita Genecin again went to the offices of WCM and met with Mr. Wagner, Mr. Citron and Mr. Hertzberg. In the January 12, 2000 meeting, she executed a number of documents including fractional gifts of the Lautrec designed to avoid gift tax liability that had been prepared as a result of her instructions in the January 6, 2000 meeting. At no time in the January 12, 2000 meeting did Rita Genecin ever state that she had made a gift of 100% of the Lautrec to Paul Genecin. In the January 12, 2000 meeting, Rita Genecin stated that she would send the originals of the documents she executed at the meeting to Paul and Victor, respectively, and she took these originals with her when she left.

Also in the January 12, 2000 meeting, Rita Genecin executed a deed transferring ownership of her Baltimore residence from herself alone to herself and her two sons as joint tenants with rights of survivorship. She also executed a First Codicil to her Will, naming as Personal Representatives Victor Genecin, Paul Genecin and Daniel Wagner.

Upon learning of their mother's death, Victor Genecin and Paul Genecin went to her house in Baltimore, where they both arrived on August 6, 2000, and stayed for some days. Early in the week of August 6, 2000, Victor Genecin and Paul Genecin met with Daniel Wagner, who provided copies to each brother of the documents that Rita Genecin had executed in his office on January 12, 2000., including copies of the four documents, in each of which Rita Genecin purported to grant a 1/15 interest in the Lautrec to one of the following: Paul Genecin, Victoria Morrow (Paul Genecin's wife), Gregory Genecin (Paul Genecin's son) and Samuel Genecin (Paul Genecin's son). These four documents are referred to hereinafter as the "fractional share documents." Paul Genecin made no mention in that meeting, or at any other time in August, 2000, that he had any claim to 100% of the Lautrec.

Later in the week of August 6, 2000, Paul Genecin sought and obtained Victor Genecin's agreement that Paul Genecin would remove all of the works of art, including the Lautrec, from Rita

3

Genecin's home for safekeeping. Paul Genecin represented that the works of art would be safer in his Connecticut home, which had an alarm system and a safe, than in the decedent's home, which was now uninhabited as a consequence of her death. With Victor Genecin's consent, Paul Genecin took custody of the works of art, including the Lautrec, on behalf of the Estate, and transported them to his residence at 340 St. Ronan Street in New Haven, Connecticut on or about August 11, 2000. He then purchased insurance for the works of art, effective August 11, 2000, listing all of the works of art, including the Lautrec, as property of the Estate, and submitted the insurance bill to the Estate for payment.

## **DISCUSSION**

### I. PAUL GENECIN MUST PROVE A VALID GIFT BY CLEAR AND CONVINCING EVIDENCE.

Under the law of Maryland, a party claiming that it received a gift – in this case, defendant Paul Genecin – has the burden of establishing all the elements of a gift by clear and convincing evidence. Dorsey v. Dorsey, 302 Md. 312, 318, 487 A.2d 1181, 1184 (Md., 1985); Rudo v. Karp, 80 Md. App. 424, 564 A.2d 100 (Md.Ct.Sp.App. 1989).

The elements of a valid inter vivos gift under Maryland law are:

> 1) A clear intent on the part of the donor;
> 2) A gratuitous, unconditional transfer of possession;
> 3) An immediate transfer of title;
> 4) A delivery of the title by the donor to the donee;
> 5) An acceptance of the gift by the donee.

Dulany v. Taylor, 105 Md.App. 619, 631, 660 A.2d 1046, 1053 (Md.Ct.Sp.App. 1995); Rudo, 80 Md.App. at 429, 564 A.2d at 102-103; see Dorsey, 302 Md. at 318, 487 A.2d at 1184; Rogers v. Rogers, 271 Md. 603, 607, 319 A.2d 119, 121 (Md. 1974). When, as is the case here, the alleged donor is dead, the courts of Maryland are

> mindful of the principle that . . . the existence of an inter vivos gift must be established by 'explicit and convincing' evidence and the 'clearest proof' in order to diminish the possibility of fraudulent claims.

Rogers, 271 Md. at 607, 319 A.2d at 121 (*quoting* Schilling v. Waller, 243 Md. 271, 276, 220 A.2d 580, (Md. 1966); see also Schenker v. Moodhe, 175 Md. 193, 197, 200 A. 727, 730 (Md. 1938)("Only explicit and convincing evidence of every element with respect to gifts *inter vivos* or *causa mortis* can support such donations.").

The Estate, it is clear, has no burden under Maryland law. It will nonetheless establish certain facts that Paul Genecin can neither avoid nor explain. Given the stringent burden that he is required to meet, these facts will make it impossible for him to establish a valid inter vivos gift.

We therefore discuss first the facts that obviate Paul Genecin's claim, whatever the final state of his proof, and then review the evidence that should be precluded pursuant to the Dead Man's Statute, and explain why it cannot change the result.

## II. PAUL GENECIN LACKS "THE CLEAREST PROOF" THAT RITA GENECIN CLEARLY INTENDED TO MAKE AN *INTER VIVOS* GIFT OF THE LAUTREC

As the claimant of an *inter vivos* gift, Paul Genecin is required to establish by clear and convincing evidence that there was "a clear intent on the part of the donor." Dulany, 105 Md.App. at 631, 660 A.2d at 1053; Rudo, 80 Md.App. at 429, 564 A.2d at 102-103. This element is not satisfied by testimony concerning expressions of desire that that the putative donee become the owner of the property in question. Rather, the putative donee must demonstrate that the putative donor clearly intended to effectuate an immediate transfer of title and control. Berman v. Leckner, 193 Md. 177, 182, 66 A.2d 392 (Md. 1949)("If a gift has reference to a future time when it is to

5

operate as a transfer, it is only a promise without consideration, and cannot be enforced in law or equity."); Farah , 112 Md. App. at 121, 864 A.2d at 478(same); Rudo, 80 Md. App. at 430, 564 A.2d at 103 (same).  Under Maryland law, the claimant must prove "that the donor *clearly* and *unmistakably* intended *permanently* to relinquish all interest in, and all control over the res which is the subject of the gift."  Rudo, 80 Md. App. at 430, 564 A.2d at 103 (emphasis in original)(*quoting* DiTommasi v. DiTommasi, 27 Md.App. 241, 246, 340 A.2d 341 (1975)); see also Dorsey, 302 Md. at 318, 487 A.2d at 1184; Schilling, 243 Md. at 276-77, 220 A.2d 580).

On any state of the proof finally established at a trial of this matter, it could not be said that Rita Genecin had a clear and unmistakeable intent to permanently relinquish all interest and control of 100% of the Lautrec.  The testimony of Rita Genecin's financial advisers, Daniel E. Wagner and Marc J. Hertzberg, establishes that Rita Genecin's intent was to keep the Lautrec in her possession, while making "gifts" of fractional shares of the lithograph consistent with the federal gift tax restrictions.  This intent is corroborated by the duly-witnessed fractional share documents, PX 5, PX 6, PX 7, PX 8, and by the fact that the Lautrec never left Rita Genecin's home for as long as she remained alive. Given these facts, Paul Genecin cannot make a showing by the clearest evidence, as he is required to do, that Rita Genecin had the requisite clear donative intent.

### III. PAUL GENECIN IS UNABLE TO PROVE THE ESSENTIAL ELEMENT OF DELIVERY.

#### A. Rita Genecin Never Relinquished Dominion and Control over the Lautrec.

The Lautrec was hanging on the wall in Rita Genecin's living room in Baltimore, Maryland when she died.  Rita Genecin never, at any time before her death,

> in any manner or by any means change[d] [her] property from the place where it was or the condition or manner in which [she] possessed it.

Schenker v. Moodhe, 175 Md. 193, 197, 200 A. 727, 730 (Md., 1938). Such non-delivery is inconsistent with an *inter vivos* gift under Maryland law. Id.

The validity of an alleged gift under Maryland law depends in the first instance upon the legal sufficiency of the delivery. Id.; Hamilton v. Caplan, 69 Md. App. 566, 573, 518 A.2d 1087, 1090 (Md.App.1986). It is essential that the transfer of both possession and title shall be absolute and shall go into immediate effect." Berman v. Leckner, 193 Md. 177, 182, 66 A.2d 392, 393 (Md. 1949). Effective delivery transfers "the donor's dominion over the property without power of revocation or retention of dominion over the subject of the gift." Dorsey v. Dorsey, 302 Md. 312, 318, 487 A.2d 1181, 1184 (Md., 1985) . The gifted property must be "wholly under the donee's power." Dulany v. Taylor, 105 Md.App. 619, 632 660 A.2d 1046, 1053 (Md.Ct.Sp.App. 1995); Hamilton, 69 Md. App. at 573, 518 A.2d at 1090.

Before Rita Genecin's death, there was never a time when the Lautrec was wholly under Paul Genecin's power. Indeed, the evidence establishes that the Lautrec only came under Paul Genecin's dominion and control after Rita Genecin died, and then only because Paul Genecin sought and obtained Victor Genecin's explicit agreement that Paul Genecin take the Lautrec to his New Haven home to safeguard it on behalf of the Estate. He never took possession of the Lautrec as its owner; rather, he insured it in the name of the Estate and sent the bill to Victor Genecin for payment. Paul Genecin's conduct, in taking possession of the Lautrec as the Estate's bailee, is wholly inconsistent with the showing he must make that Rita Genecin made an absolute transfer of possession and title to him while she was alive.

Indeed, for as long as she remained alive, Rita Genecin, with the Lautrec still in her home, under her dominion and control, continued to act as the owner of the Lautrec, and not as if it were

7

the property of anyone else. She actively exercised her dominion and control over the lithograph, and asserted her unrestricted title to it, by her conduct on January 6, 2000 and on January 12, 2000, dates later in time than the date on which Paul Genecin claims that she transferred ownership to him. On January 6, 2000, Rita Genecin met with her financial advisers and discussed how she might make a gift of shares of the Lautrec in order to remain within the federal gift tax restrictions. Then, on January 12, 2000, she met with her advisers again and executed the four fractional share documents, in which she purported to make gifts of one-fifteenth of the Lautrec each to Paul Genecin, his wife, and his two sons. She did not tell her advisers in either of these meetings that she had already made a gift of 100% of the Lautrec, nor did she ever make such a statement to them.

Rita Genecin's conduct on January 6 and 12, 2000 is consistent with the belief, at a time when Paul Genecin claims that she had already made a gift of the Lautrec to him, that the lithograph was hers to dispose of as she pleased. Under Maryland law, however, Paul Genecin is required to demonstrate, by the clearest evidence, that Rita Genecin

> thought [s]he had done all [s]he could do to relinquish dominion and control over the donated item.

Malloy v. Smith, 265 Md. 460, 466, 290 A.2d 486 (Md. 1972); Dulany, 105 Md.App. at 632, 660 A.2d at 1053; Hamilton, 69 Md. App. at 573, 518 A.2d at 1090. The proof is utterly inimical to such a demonstration.

The existence of the fractional share documents can only mean that either Rita Genecin had no knowledge of the gift that Paul Genecin now claims that she made, or that she believed that because the Lautrec remained in her physical possession, she reserved the power to retain the property or make other dispositions of it. Under these circumstances, there cannot be a gift under Maryland law. Rogers v. Rogers, 271 Md. 603, 607, 319 A.2d 119, 121-22 (Md. 1974) ("There cannot be reserved to the donor a *locus poenitentiae*, which is a power to revoke the gift or a

dominion over the subject of the gift."); see Metzger v. C.I.R., 38 F.3d 118, 121 (4th Cir. 1994) ("A gift is incomplete in every instance in which a donor reserves the power to revest the beneficial titles to the property in himself") (interpreting gift tax regulations and Maryland law).

### B. Paul Genecin Cannot Prove Constructive Delivery of the Lautrec.

Tacitly conceding that he cannot prove actual delivery of the Lautrec, Paul Genecin asserts that the lithograph was constructively delivered to him. He cannot establish, however, that the Lautrec would be recognized under Maryland law as a proper subject for constructive, as opposed to actual, delivery: the Lautrec is a work of art on paper, in a frame, and is easily carried and transported. Indeed, Paul Genecin transported the Lautrec, together with all the other works of art, from Baltimore to New Haven in his car in August, 2000, after his mother's death. Maryland law permits a gift to be constructively delivered only "where from the very nature of the subject of the gift it may not be transferred or delivered in kind." Schenker, 175 Md. at 197, 200 A. at 730.[1] The courts of Maryland, moreover, consider the requirement of delivery to be "the only substantial protection," and they decline to "weaken it by permitting the substitution of convenient and easily proven devices." Schenker, 175 Md. 193, 200 A. at 728.

---

[1] Paul Genecin urges this Court to find a valid constructive delivery on the ground that the value of the Lautrec made delivery "impractical." In support of this proposition, he purports to quote from Merchants' Nat. Bank of Baltimore v. Roxbury Distilling Co., 196 F. 76, 84 (D.C. Md. 1912). The court in that case, however, did not write that a constructive delivery is sufficient where an actual manual delivery is *impractical,* but, rather, where it is "impracticable." Thus, the court did not suspend the requirement of delivery because one of the parties might find it inconvenient, but rather because manual delivery could not be effectuated. The case, it should be noted, did not involve an *inter vivos* gift, but concerned whether a large quantity of liquor located in a bonded warehouse had been effectively delivered by the delivery of distillery warehouse receipts.

Not one Maryland case supports the concept that portable personal property can be constructively delivered. In support of his theory, Paul Genecin cites a string of inapposite cases, involving proceeds of notes, insurance policies and bank accounts. Indeed, he cites Pomerantz v. Pomerantz, 179 Md. 436, 19 A.2d 713 (Md. 1944), in which the Court of Appeals of Maryland reached the opposite result from the one he urges. Observing that, under a theory of constructive delivery, "the donor must have done everything which it was possible for [her] to do in order to complete and perfect the gift," 179 Md. at 440, 19 A.2d at 715, the Court held that there was no evidence of constructive delivery where the alleged donor retained control over bank accounts.

Under Maryland law, it should be noted, the concept of constructive delivery has both an objective and a subjective component. Not only must the donor have objectively "done everything which it was possible for [her] to do in order to complete and perfect the gift,"[2] but, in addition, "[t]he cases in which constructive delivery has been found involve circumstances in which the donor *thought [she] had done all [she] could do* to relinquish dominion and control over the donated item." Malloy v. Smith, 265 Md. 460, 466, 290 A.2d 486 (Md. 1972)(emphasis supplied); Dulany, 105 Md.App. at 632, 660 A.2d at 1053; Hamilton, 69 Md. App. at 573, 518 A.2d at 1090.

Here, again, whatever Paul Genecin's proof will be, his claim is that Rita Genecin completed the gift of the Lautrec to him as of January 4, 2000, and he cannot overcome the fact that Rita Genecin directed the creation of the four fractional share documents on January 6, 2000 and

---

[2] Pomerantz, *loc. cit.*; see Brooks v. Mitchell, 163 Md. 1, 11-12, 161 A. 261 (1932))( "[W]hile the delivery may be constructive, it must be as nearly perfect and complete as the nature of the property and the attendant circumstances and conditions will permit.")(internal citations omitted); Hamilton v. Caplan, 69 Md. App. 566, 574, 518 A.2d 1087, 1091 (Md.App.1987); see also Schenker, 175 Md. at 197-98, 200 A. at 729.

executed them on January 12, 2000. Clearly, as of two days after Paul Genecin claims that a completed gift was made to him, Rita Genecin did not think that she "had *had done all [she] could do* to relinquish dominion and control over the donated item." <u>Malloy</u>, *loc. cit*.

    **IV.    PAUL GENECIN IS UNABLE TO PROVE THE ESSENTIAL ELEMENT OF ACCEPTANCE.**

In the absence of proof of donative intent and of delivery, it makes little sense to discuss the element of acceptance. Indeed, in <u>Allender v. Allender</u>, 199 Md. 541, 546, 87 A.2d 608 (1952), the case cited by Paul Genecin for the presumption of acceptance, the Maryland Court of Appeals explains that presumption by stating that a "gift is effective on transfer, subject to the right of the transferee to repudiate title and refuse to accept the gift." Thus, the issue of acceptance can only arise where there is proof of an effective transfer, which does not exist in this case.

It should be observed, however, that if there were some state of the proof in this case on which the element of acceptance could be reached, there is also proof that Paul Genecin repudiated title: after Rita Genecin died, and before he put forward his claim that the Lautrec was an *inter vivos* gift, Paul Genecin affirmatively asserted the Estate's ownership of the lithograph, by insuring it as the Estate's property. Thus, Paul Genecin lacks clear and convincing proof of acceptance as well.

In the law of *inter vivos* gifts, moreover, it is sometimes difficult to separate the elements of delivery -- handing the property over -- and acceptance -- receiving it and assuming dominion over it. Both elements require intention and action by both parties to the transaction. In certain cases, it can be said that delivery is incomplete without acceptance. <u>Schenker v. Moodhe</u>, 175 Md. 193, 200 A. 727 (Md. 1938), provides an apt illustration.

In that case, the claimant and decedent had been neighbors, and the claimant had helped the decedent during his final illness. She alleged that the decedent had told her that he would not forget her kindnesses, and that, shortly before he was taken to the hospital where he died, he "directed her

11

to the places where he had secreted his papers, bank books and other valuables," as well as the number of his safe deposit box, and told her that she should take and hold this property for the purpose of paying his funeral bill and other expenses and to keep the remainder for herself. The claimant further alleged that, when the decedent was being taken from the house to the ambulance, he told her to "go into the pocket of his trousers hanging upon a chair in his front room and take possession of his keys," but, fearing to touch his clothing (she had been warned that his sickness was contagious) she refrained from getting these keys. 200 A. at 729-30.

On these facts, the Court in Schenker held that a valid gift had not been established:

> An actual or constructive delivery must be effected, placing the property beyond the dominion and control of the donor and within the dominion and control of the donee. Whatever his wishes and plans may have been, the fact remains that he did not in any manner or by any means change his property from the place where it was or the condition or manner in which he possessed it. While he attempted to surrender or relinquish control of it, she did not receive it or assume dominion of it. At any time before his death he could have taken it, and exercised every act of ownership over it.

200 A. at 730. The Court further considered the conduct of the putative donee:

> He told her to get his keys and she did not; he told her to take care of the house, but she did not have the key to it; he told her where his papers were but she did not take them into her possession. Her excuse for not doing so was the warning of the doctor as to the infectious nature of his disease and the danger of contracting it, but this can not be substituted for actual or constructive delivery.

Id.

The alleged gift in Schenker clearly was not made in a manner, or under circumstances, in which it was possible for the delivery to be completed. At the same time, one could also say that the conduct of the putative donee, in failing to enter the decedent's room and take his property and keys,

12

was a failure of acceptance. The alleged gift was also not made in a manner, or under circumstances, in which it could be accepted.

Thus, although Maryland law may ordinarily accord a putative donee the benefit of a presumption of acceptance, that presumption does not alter his burden of proof, which is to establish this element of an *inter vivos* gift, as he must establish all the others, by clear and convincing evidence, and any showing that renders it less than clear that the claimant accepted the gift when it was made will rebut the presumption. Given the categorical evidence that Rita Genecin "did not in any manner or by any means change [her] property from the place where it was or the condition or manner in which [she] possessed it, see Schenker, 200 A. at 730, and that Paul Genecin, while Rita Genecin was alive, never asserted the least bit of dominion or control over the Lautrec, he cannot establish acceptance, any more than he can establish delivery.

### V. MARYLAND'S DEAD MAN'S STATUTE PRECLUDES THE PROFFERED TESTIMONY OF PAUL GENECIN, VICTORIA MORROW, AND GREGORY GENECIN.

Maryland's requirement that a claimant prove each element of a gift by the clearest proof and its Dead Man's Statute both arise from the recognition that a claim against an estate of a "gift" that no one ever heard about when the decedent was alive is rife with danger that the claimant is acting fraudulently.[3] Paul Genecin cannot cite a single case in which the Maryland courts have ever recognized a "gift" that was not proven by the testimony of disinterested third parties.

---

[3] The Maryland Dead Man's Statute provides:

> A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless

In support of his claim that the Lautrec was an *inter vivos* gift to him, Paul Genecin proffers his own testimony as follows:

> It is anticipated that [Paul] Genecin will testify about his relationship with his mother, the circumstances of the gifting the Lautrec to hi[m] by his mother, the transfer of the interest in his mother's home to him, and the circumstances concerning the IRA account

(Defendant's List of Witnesses, Item A.)  This proffer is composed entirely of matters as to which he is incompetent pursuant to the Dead Man's Statute.  Reddy v. Mody, 39 Md. App. 675, 679, 388 A.2d 555, 559 (Md. Sp. App. 1978).  Similarly, as set forth in the Estate's motions *in limine*, Paul Genecin's wife, Victoria Morrow, and his minor son, Gregory, are interested witnesses within the ambit of the Dead Man's Statute, and their testimony should be precluded as well.

Paul Genecin further offers DX 501, a document he describes as a "Deed of Gift dated 1/4/00 from Rita Genecin to Dr. Paul Genecin of signed lithograph by Henri de Toulouse-Lautrec, entitled La Chariot Anglais."  Paul Genecin is precluded by the Dead Man's Statute from testifying concerning this document.  The only other witness who claims to have seen DX 501 before Rita Genecin's death is one Marion Mulrine, a subordinate of Paul Genecin's who is a notary public of the State of Connecticut.  Ms. Mulrine's testimony is that on January 4, 2000, at Paul Genecin's

---

the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement.

Md. Code Cts. & Jud. Proc. art., § 9-116.  Pursuant to Federal Rule of Evidence 601, in actions in which state law supplies the rule of decision, that state's law with respect to the competency of witnesses, including the state's Dead Man's Statute, must be applied.  Rosenfeld v. Basquiat, 78 F.3d 84 (2d Cir. 1996).  The test for determining whether there has been a "transaction" within the meaning of the Maryland Dead Man's statute is "[w]hether, in case the witness testify falsely, the deceased, if living, could contradict it of his own knowledge."  Schifanelli v. Wallace, 271 Md. 177, 184, 315 A.2d 513 (Md. 1974).

request, she placed her notary's certification stamp, and her signature, on DX 501, certifying that the document had been subscribed and sworn to before her in New Haven, Connecticut on that date. Ms. Mulrine's further testimony, however, is that Rita Genecin in fact did not sign DX 501 before Ms. Mulrine on January 4, 2000 or any other date.

If DX 501 is nonetheless admitted into evidence, this document cannot possibly satisfy the requirement of Maryland law that a gift be proven by clear and convincing evidence. This document, and the gift it purports to make, were completely unknown to Rita Genecin's financial advisers, who were in possession of her financial records, her Will, and her witnessed executed deeds of gift. In marked contrast to Rita Genecin's known papers, DX 501 was known only to Paul, the putative beneficiary.

The document, moreover, is stamped with an unmistakable hallmark of fraud, in the form of the admittedly false notary's certification that appears on it. Paul Genecin clearly did not ask Rita Genecin to have DX 501 witnessed by a third party. Yet, within days of the date of the false certification on DX 501, Rita Genecin executed documents before a notary public in Baltimore, Maryland, demonstrating that she was perfectly capable of obtaining properly witnessed and certified documents when she desired them.

The false notarization on DX 501 can only be viewed as a fraudulent attempt to make this document appear to have been witnessed, so that this putative deed of gift would not be seen for what it really is: a piece of paper that no one but Paul Genecin can say that Rita Genecin actually signed and gave to him. This view is supported by Paul Genecin's conduct when the issue of the notary's certification was raised, in December, 2000, in a letter from Victor Genecin's lawyer, Douglas M. Lehman, Esq., to Paul Genecin's then-counsel, Gerard Martin, Esq. of Baltimore. In reply, Mr. Martin wrote on December 24, 2000: "Paul Genecin asserts that his mother was in New Haven on the day in question." (PX 24).

DX 501, and Paul Genecin's testimony concerning it, are so lacking in integrity that they cannot provide clear and convincing evidence of any element that he must prove.

THE PLAINTIFF,
ESTATE OF RITA GENECIN, and DEFENDANT VICTOR GENECIN, in his individual capacity

By /s/ David L. Belt
David L. Belt (ct 04274)
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange Street
New Haven, CT  06503
Tel.:(203) 772-3100
Fax:(203) 772-1691
Email: dbelt@jacobslaw.com
Their attorney

## Certification

The undersigned hereby certifies that a copy of the foregoing motion was mailed first class, postage prepaid, on May 19, 2004 to:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue,
   Durham & Noonan, P.C.
741 Boston Post Rd.
Guilford, CT 06437

                              /s/ David L. Belt_____
                                   David L. Belt