UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTATE OF RITA GENECIN, by : <br> VICTOR GENECIN, : <br> Personal Representative, : <br> Plaintiff, : <br> : <br> VS. : <br> : <br> : <br> PAUL GENECIN and : <br> VICTOR GENECIN, : <br> in his individual capacity, : <br> Defendants. : | CIVIL NO.3:01CV00211(MRK) <br><br><br> MAY 19, 2004 |

**TRIAL MEMORANDUM OF**
**DEFENDANT VICTOR GENECIN**

Defendant Victor Genecin respectfully submits this trial memorandum addressed to the Second Count of the Complaint, in support of his position that a declaratory judgment should issue, declaring that Rita Genecin's Schwab IRA account should be divided pursuant to her handwritten IRA beneficiary designation, in which she directed that 60% of the account go to Victor Genecin, and 40% to Paul Genecin.[1]

---

[1] The Estate takes no position regarding the percentage allocations of the Schwab IRA, but seeks a declaratory judgment in order to discharge its responsibility to instruct Charles Schwab & Company, Inc. as to the proper division.

## INTRODUCTION

The most substantial non-probate asset left by Rita Genecin is an Individual Retirement Account in her name with Charles Schwab & Company, Inc. (the "Schwab IRA"). (DX 601 ¶ 53; DX 602 ¶ 53; DX 605 ¶ 18; DX 602 ¶ 18; Test. of Victor Genecin).

The trial testimony will show that the individuals who had knowledge concerning Rita Genecin's designation, while she was alive, of the beneficiaries to receive her Schwab IRA after her death were Daniel E. Wagner, Marc J. Hertzberg and Carol Sullivan, all of Wagner Capital Management, Inc.("WCM"), Rita Genecin's financial advisers.

The evidence will further show that, on October 8, 1998, at the offices of WCM, Rita Genecin signed two separate beneficiary designation documents.  The first was a Schwab Institutional IRA Application Form ("IRA Application Form"), DX 607.  The IRA Application Form contains a page for the applicant to designate the names and addresses of beneficiaries to receive the contents of the account, and to designate the percentages of the account such beneficiaries are to receive (the "Schwab Beneficiary Designation"). On that form, Rita Genecin listed Victor and Paul Genecin as her primary beneficiaries. To the right of Victor's social security number and the description "son" is written the value "60%."  To the right of Paul's social security number and the description "son", is written the value "40%."  The testimony of Mr. Wagner and Mr. Hertzberg establishes that Rita Genecin explained to each of them that she desired this 60/40 division of her Schwab IRA.  Rita Genecin further listed the "Trustees under my last will and testament" as her contingent beneficiaries.   DX 607, page 3.

The second document executed by Rita Genecin at the offices of WCM on October 8, 1998 is a typewritten document titled RITA GENECIN IRA BENEFICIARY DESIGNATION prepared by Rita Genecin's lawyer, Max E. Blumenthal, Esq. DX 608.   This document reads, in pertinent part:

2

> Upon my death, my Individual Retirement Account shall be distributed to my descendants who survive me, per stirpes, in installments payable at least annually, equal to no less than the annual amount to required to be distributed under the minimum distribution rules under I.R.C. §401(a)(9) . . .

The testimony and exhibits will show that WCM sent Rita Genecin's handwritten IRA Application Form and the "*per stirpes*" document together to Charles Schwab & Company, Inc. ("Schwab") which received them on October 20, 1998.

One year later, in October, 1999, Schwab requested that WCM obtain from Rita Genecin an executed "IRA Beneficiary Designation Supplement," a Schwab form embodying the account-holder's agreement that Schwab shall not be required to make distributions unless it has received clear and unambiguous instructions from the personal representative, trustee, guardian, conservator or custodian of the account-holder's estate. Mr. Hertzberg will testify that he obtained this document, signed and dated by Rita Genecin on October 21, 1999. (DX 611) He will testify further that before sending it to Schwab, he reviewed Rita Genecin's file at WCM, and found an original of the typewritten RITA GENECIN IRA BENEFICIARY DESIGNATION, dated October 6, 1998 (DX 610), together with a transmittal letter from Max E. Blumenthal, Esq. dated October 19, 1998 (DX 609). The October 6, 1998 document, DX 610, is identical to the October 8, 1998 document that was sent to Schwab by WCM (DX 608) together with Rita Genecin's handwritten IRA Application Form (DX 607).

Mr. Hertzberg will testify that he sent the October 6, 1998 document to Schwab, together with the IRA Beneficiary Designation Supplement, without informing Rita Genecin that he was doing so.

3

**DISCUSSION**

I.     **No Document Supports the Division Proposed by Paul Genecin.**

At the outset, it should be noted that there is *no* document in evidence that states that Paul Genecin shall receive 50% of Rita Genecin's Schwab IRA, and no document that states in words or substance that the Schwab IRA shall be evenly divided between Rita Genecin's sons.  The two identically-worded typewritten IRA Beneficiary Designation documents, DX 608 and DX 610, provide that "[u]pon my death, my Individual Retirement Account shall be distributed to my descendants who survive me, per stirpes."  These two documents make no reference to amounts or percentages to be distributed to either son, and, indeed, do not even name the persons who are to be the beneficiaries of the account.  As discussed in Section II. below, this gap is filled by Rita Genecin's handwritten IRA Application Form, DX 607, which names Victor Genecin and Paul Genecin as primary beneficiaries and provides that Victor is to receive 60% of the account and that Paul is to receive 40%.

Daniel Wagner's testimony will establish that Rita Genecin told him at the time when she completed DX 607 that she wanted 60% of the account to go to Victor and 40% to Paul, and the testimony of Marc Hertzberg confirms that Rita Genecin desired this slightly unequal division of her account.

There is, in fact, no documentary support for any argument that Rita Genecin desired to divide her property equally between her sons.  Indeed, the documentary evidence is to the contrary.  The residuary clause of Rita Genecin's Will, which divides her residuary estate with 55% to Victor and 45 % to Paul, establishes clearly that Rita Genecin wished and intended to leave slightly more of her property to Victor.

Even the October 6, 1998 RITA GENECIN IRA BENEFICIARY DESIGNATION (DX 610) upon which defendant Paul Genecin relies does not support his claim that the Schwab IRA should be divided equally between Paul Genecin and Victor Genecin.  As discussed in Section IV below, in this document Rita Genecin did not provide that the IRA shall be distributed to Paul Genecin and Victor Genecin, per stirpes.  Rather, it provides that the IRA "shall be distributed to my descendants who survive me, per stirpes. . . ." (DX 610) (emphasis added).  At the time of her death, Rita Genecin had seven surviving descendants: Paul Genecin and his two children and Victor Genecin and his three children.  Even if the statutory presumption concerning the distribution under a will to be made per stirpes were held applicable to a designation of beneficiaries in an IRA, in this case, the IRA would have to be distributed in equal shares to the seven descendants of Rita Genecin.

> II. **Read Together as a Single Instrument, as Required by Maryland Law, the Two Documents Executed by Rita Genecin on October 8, 1998 Provide a Clear and Unambiguous Statement of Her Intent.**

The testimony of Daniel Wagner and Marc Hertzberg establishes that the most recent documents executed by Rita Genecin to express her intent with regard to division of her Schwab IRA are her handwritten IRA Application Form, which divides the account 60% for Victor and 40% for Paul, DX 607, and the typewritten IRA Beneficiary Designation witnessed by Carol Sullivan, which provides that "[u]pon my death, my Individual Retirement Account shall be distributed to my descendants who survive me, per stirpes," DX 608.  These two documents were executed in the offices of WCM on October 8, 1998, and clearly concern the same transaction and subject matter.  Accordingly, under Maryland law they must be interpreted as a single instrument.  See Bachmann v. Glazer & Glazer, 316 Md. 405, 559 A.2d 365 (Md., 1989); Rothman v. Silver, 245 Md. 292, 226 A, 2d 308 (Md., 1967); Brown v. Fraley, 222 Md. 480, 161 A.2d 128 (1960); Ahern v. White, 39 Md. 409 (Md., 1874).

5

DX 607 and DX 608 may readily be viewed as operating together, without any ambiguity or conflict, but rather with each resolving certain distinct issues that are necessary to effectuate Rita Genecin's intent with respect to the beneficiaries of her IRA. The handwritten numerical designations on the Schwab IRA Application Form, DX 607, clearly establish the percentages that each beneficiary is to receive, namely 60% to Victor Genecin and 40% to Paul Genecin, while the typewritten document, DX 608, specifies that those percentages are to pass *per stirpes*, meaning that each son's share will go to his descendants in the event he were to predecease Rita Genecin.

Although Paul Genecin does not set forth this point explicitly in his proposed conclusions of law, his claim that the *per stirpes* language requires equal division of the Schwab IRA between Victor and Paul can only be founded upon the section of the Maryland Code that reads:

> Unless a contrary intention expressly appears, subsection (b) of this section applies to the provisions of a will requiring that upon the occurrence of an event, distribution shall be made by representation or per stirpes to the issue of one specified person.
> (b)(1) On the occurrence of the event designated by the will, the property to be distributed shall be divided into as many equal shares as there are children of the person whose issue are to take by representation or per stirpes . . .

West's Ann. Md. Code, Estates and Trusts § 1-210.1. It may be questioned in the first instance whether this section, which is applicable by its terms to the construction of wills, may properly be applied to a beneficiary designation for an IRA. In any event, the most that this statute can be said to establish is that, in the absence of an expression of contrary intent, the words *per stirpes* will mean in equal shares among the children. In this case, there exists an expression of contrary intent, in the form of the Schwab IRA Application Form, which specifies the proportions in which the beneficiaries are to receive the account. This specification of the beneficiaries' respective shares, it should be noted, negatives the statutorily-imputed meaning of equal shares that would be applicable

if the term *per stirpes* were used alone, but leaves intact the core concept of a *per stirpes* distribution.

Under the Maryland decisions, the Latin term "*per stirpes*" does not, in itself, designate the proportions in which devisees are to take property; rather, the term designates the manner in which specified property is to pass to descendants of the devisor. <u>Robinson v. Mercantile Safe Deposit and Trust Company</u>, 214 Md. 30, 132 A.2d 841 (Md. 1957); <u>Patchell v. Groom</u>, 185 Md. 10, 15, 43 A.2d 32, 34 (Md. 1945). In this case, the "per stirpes" designation was necessary to ensure that Rita Genecin's intentions would be fully effectuated because the IRA Application Form, DX 607, provides that, if no other provision is made, and one of the named beneficiaries predeceases the account holder, the survivor takes the whole account. In other words, standing alone, DX 608 would have the effect, in the event that one of Rita Genecin's sons should predecease her, of disinheriting that son's children in favor of the surviving brother. In view of Rita Genecin's clearly expressed concern to provide for her grandchildren, the *per stirpes* language was needed to ensure that the share that Rita Genecin designated for each son would go to that son's children if he should die before she did. It is thus a straightforward matter to read the two documents together as a single instrument that requires that Rita Genecin's IRA be distributed 60% to Victor Genecin, or his descendants, and 40% to Paul Genecin, or his descendants.

### III. The October 6, 1998 "*Per Stirpes*" Document, DX 610, is Irrelevant.

Paul Genecin urges this Court to ignore the documents constituting the most recent expression of Rita Genecin's intent -- those she executed at the offices of her financial advisers on October 8, 1998 -- in favor of a document that she signed two days earlier, DX 610, on the ground that the earlier document was received later by Schwab. Mr. Hertzberg's testimony establishes, however, that he sent this document to Schwab without discussing it with her. This document does not constitute any separate, later expression of Rita Genecin's desires with respect to her IRA

7

account, and the IRA Account Agreement that is part of the IRA Application Form executed by Rita Genecin on October 8, 1998 says nothing about the date of receipt by Schwab having any meaning. DX 607 at pages 3-4.  It is therefore of no moment that the earlier-executed DX 610, which is identical in its language to the October 8, 1998 *per stirpes* designation, DX 608, made its way slowly to the Schwab without the knowledge of Rita Genecin, after it had sat in the files of Rita Genecin's financial advisers for a year.

      For the "last received" document to be controlling, moreover, it would have to constitute a change or revocation of Rita Genecin's disposition of the account.   It is hornbook law, however, that in order to constitute a revocation, a document must expressly revoke a previous disposition, failing which, a revocation may be implied only from a disposition that is inconsistent with an earlier one. See Garner v. Garner, 167 Md. 423, 173 A. 486 (1934). The October 6, 1998 "*per stirpes*" document, DX 610, does not contain any express revocation of any other disposition of Rita Genecin's IRA, and it is identical in its terms to the October 8 *per stirpes* document, DX 608,  which was signed and filed together with the percentage beneficiary designation document,  DX 607.  As the October 8 documents, read together, do not conflict, and as the October 6 document is identical to one of them, there would be no basis for viewing the October 6 document as a revocation of the October 8 documents, even if the October 6 documents had been signed later.  Under Maryland law, moreover, the words "*per stirpes*" have "no meaning at all with regard to named beneficiaries," Johnson v. Swann, 211 Md. 207, 213, 126 A.2d 603 (Md. 1956), so even a later "*per stirpes*" document would not change or revoke the handwritten percentages specifically designated by Rita Genecin to go to each of her sons.

**IV.    If Read Alone, Rita Genecin's "Per Stirpes" Beneficiary Designation Document Would Require Distribution of the Schwab IRA Account in Equal Shares to Each of Her Living Descendants.**

In the parties' Joint Trial Memorandum, Paul Genecin asserts that Rita Genecin's Schwab IRA must be divided *per stirpes* pursuant to the October 6, 1998 beneficiary designation document, but he does not set forth any legal basis for this assertion.

As discussed above in Section II, a section of the Maryland Code, by its terms applicable only to distributions under a will, specifies that unless a contrary intention expressly appears, the property to be distributed shall be divided into as many equal shares as there are children of the person whose issues are to take per stirpes. West's Ann. Md. Code, Estates and Trusts § 1-210.1. Here however, a contrary intention expressly appears in DX 610 itself.

The document in question does not allocate the Schwab IRA to "Victor Genecin and Paul Genecin" or to "my sons" or to "my children" or any other phrase that would limit the beneficiaries to Victor Genecin and Paul Genecin. Indeed, the document, though drafted by a Maryland lawyer, does not allocate the account to Rita Genecin's "issue," the term defined in the Maryland Code of Estates and Trusts as meaning "every living lineal descendant except a lineal descendant of a living lineal descendant." West's Ann. Md. Code, Estates and Trusts § 1-209.[2]  Rather, the document reads:

> Upon my death, my Individual Retirement Account shall be distributed **to my descendants who survive me**, per stirpes….

DX 608; DX 610 (emphasis supplied).

The word "descendants" is not defined in the Maryland Code of Estates and Trusts. Under the case law, the term includes "every individual proceeding from the stock or family referred to by

---

[2] The statute that imputes the meaning of equal shares to the phrase *per stirpes* when no contrary intention appears, West's Ann.Md.Code, Estates and Trusts § 1-210.1, does so in the case of "the provisions of a will requiring that upon the occurrence of an event, distribution shall be made by representation or per stirpes to the *issue* of one specified person.

9

the testator." Levering v. Orrick, 97 Md. 139, 54 A. 620, 622 (1903); accord Gideon v. Fleischmann, 66 A.2d 403, 406, 406, 193 Md. 203, 210 (1949) ("Unlike 'issue,' 'descendants' ordinarily is a word of fixed meaning and is all-comprehensive."). Accordingly, if DX 610 is deemed to be the sole operative beneficiary designation, then the Schwab IRA must be divided equally among the seven descendants of Rita Genecin who were living at the time of her death, *i.e.*, Victor Genecin, his three children and Paul Genecin and his two children.

        THE PLAINTIFF,
        ESTATE OF RITA GENECIN, and DEFENDANT VICTOR
        GENECIN, in his individual capacity

        By /s/ David L. Belt
            David L. Belt (ct 04274)
            JACOBS, GRUDBERG, BELT & DOW, P.C.
            350 Orange Street
            New Haven, CT  06503
            Tel.:(203) 772-3100
            Fax:(203) 772-1691
            Email: dbelt@jacobslaw.com
            Their attorney

**Certification**

The undersigned hereby certifies that a copy of the foregoing motion was mailed first class, postage prepaid, on May 19, 2004 to:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue,
   Durham & Noonan, P.C.
741 Boston Post Rd.
Guilford, CT 06437

                                  /s/ David L. Belt_____
                                  David L. Belt