UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF RITA GENECIN, by | : | |
| VICTOR GENECIN, | : | |
| Personal Representative, | : | |
|     Plaintiff, | : | |
| | : | CIVIL NO.3:01CV00211(MRK) |
| VS. | : | |
| | : | |
| | : | |
| PAUL GENECIN and | : | |
| VICTOR GENECIN, | : | FEBRUARY 22, 2005 |
| in his individual capacity, | : | |
|     Defendants. | : | |

**POST-TRIAL MEMORANDUM OF**
<u>**DEFENDANT VICTOR GENECIN**</u>

Defendant Victor Genecin (hereinafter, "Victor") respectfully submits this post-trial memorandum addressed to the Third Count of the Complaint, which seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 fixing the percentages to which Victor and Paul Genecin (hereinafter, "Paul") respectively are entitled in the distribution of Rita Genecin's Schwab IRA.

I.   IN THIS ACTION TO DETERMINE TITLE TO THE DISPUTED 10% OF RITA GENECIN'S IRA ACCOUNT, EACH CLAIMANT MUST PROVE HIS OWN TITLE.

Plaintiff Estate of Rita Genecin brought the Third Count of the Complaint herein because the Custodian of Rita Genecin's IRA account, Charles Schwab and Co., is not required to distribute the account

> unless it has received instructions from the personal representative . . .
> that Schwab considers, in its sole discretion, to be clear and unambiguous, with
> respect to: (i) the amount of the distribution [and] . . . (iii) the identity of the party or
> parties who will receive the distribution.

(COMPLAINT, ¶86 and Exhibit G thereto). Corporate counsel for Schwab advised the Estate that, because of conflicting beneficiary designations, Schwab will not distribute the Rita Genecin IRA absent either a court order or signed and notarized letters of authorization from Victor Genecin and Paul Genecin. (COMPLAINT, ¶88 and Exhibit D thereto). Counsel for Schwab further advised that, if Schwab did not receive a court order or joint instructions, it would bring an interpleader action, (COMPLAINT, Exhibit D) as it is entitled to do pursuant to the Beneficiary Designation Supplement executed October 21, 1999 by Rita Genecin (DX 611). The Estate brought the Third Count of the Complaint herein to satisfy its obligation to provide suitable instructions to Schwab, and has made clear *ab initio* that it takes no position concerning the division of the IRA. The Third Count of the Complaint, therefore, is essentially the same as an interpleader action, in which a stakeholder seeks the guidance of the Court in determining which, of two contending claims, should be honored.

1

In such an action, the right of a party to recover depends on its title to the disputed property. Saltzman & Jablon, LLC, v. Eastern Steel Constructors, 2004 WL 2003361 (Md.Cir.Ct. 2004); Wetzel v. Collin, 170 Md. 383, 185 A. 117 (1936), Scott v. Marden, 153 Md. 14, 137 A. 523 (Md. 1927). A party must prevail upon the strength of its own claim, rather than upon the weakness of the other party's claim. Scheihing v. Baltimore & O. R. R., 180 Md. 168, 23 A.2d 381 (Md. 1942); Scott, 137 A. at 523.

In this case, there is no dispute that Victor and Paul are the named beneficiaries of Rita Genecin's IRA, and, therefore, that the account is to be divided between them. The question is whether she intended for Victor to have 60% of the account, as she wrote on her Schwab IRA Application form on October 8, 1998 (DX 607A), or whether she intended for DX 608, which she executed on the same day, and which provides for the IRA to be "distributed to my descendants who survive me, *per stripe*," to control. The Court is thus called upon to determine whether either defendant has established, by a preponderance of the evidence, his entitlement to the disputed 10% of the account, and the Court has raised the question what result would obtain, in the event that it should conclude that Rita Genecin's intent has not been established by either party. (Tr. 838-39). In such an event, as set forth in Point IV below, Victor submits that the Court should reform the beneficiary designation documents in keeping with the division posited by Rita Genecin's Will and direct that the account be divided in the proportions 55% to Victor and 45% to Paul.

II. **THE BEST EVIDENCE BEFORE THE COURT DEMONSTRATES THAT RITA GENECIN INTENDED FOR VICTOR TO RECEIVE 60% OF HER IRA AND FOR PAUL TO RECEIVE 40%.**

There is no serious controversy in this case that Rita Genecin wrote the percentage designations that appear on her original IRA Application form (DX 607A), which was produced to the Court directly by Charles Schwab & Co. This document was completed by Rita Genecin in the office of her financial advisers on October 8, 1998. (WAGNER: Tr. 28; SULLIVAN: Tr. 241-2). On it, Rita Genecin entered the names, Social Security numbers, and addresses of her two sons in

2

ink. On the lines designated "% Benefits," she wrote "60%" for Victor and "40%" for Paul. These percentage designations appear to have been written in pencil. Carol N. Sullivan, an employee of Rita Genecin's financial advisers, testified that she prepared the first page of DX 607A for Rita Genecin, and gave her the form on October 8, 1998, that she received the completed document from Rita Genecin on the same day, and that she made a file copy of it before sending the original document to Schwab. (SULLIVAN, Tr. 241-2). The original file copy made by Ms. Sullivan is DX 607B. Ms. Sullivan further testified that it is her practice to review Schwab IRA Application forms, such as DX 607A, for completeness before sending them to Schwab. (SULLIVAN, Tr. 241-2). It can be seen from DX 607B that the document sent by Ms. Sullivan to Schwab is the same document produced by Schwab to this Court, and that when the document left Ms. Sullivan's hands, it bore the 60% and 40% entries. As Ms. Sullivan testified:

> [t]he way the percentages are written is not how anybody in the office writes percentage figures.

(Tr. 257-8). The conclusion is clear: the only person who could have written those numbers is Rita Genecin. Ms. Sullivan's credibility was unimpeached.

The evidence that Rita Genecin wrote in "60%" for Victor and "40%" for Paul is thus before the Court whether or not the Court credits the testimony of Daniel E. Wagner. Victor Genecin submits, however, that Mr. Wagner's testimony that Rita Genecin told him she desired to divide her account unevenly as to her sons, in order to effectuate an even division among her grandchildren, merits the Court's consideration. Clearly, Rita Genecin relied on Mr. Wagner in her financial affairs; indeed, she named him, in the First Codicil to her Will, (PX 10), as a co-Personal Representative of her Estate. There is, therefore, no reason to believe that she would not have explained her intentions to him.

Rita Genecin's Will, executed July 18, 1995, contains her clear expression, in percentage terms, of her intentions for the distribution of her probate estate: assets that pass through the Will are divided with 55% to go to Victor, and 45% to Paul. (PX 10; WAGNER: Tr. 83; PAUL

3

GENECIN: Tr. 794-5). Mr. Wagner understood this division to reflect the fact that there are five people in Victor's family and four in Paul's, so Rita Genecin's probate estate is divided into shares of five-ninths and four-ninths. (Tr. 83). The Will provides strong independent corroboration that Rita Genecin never intended a 50/50 split of her IRA between her sons, but, rather, desired to divide the account according to a formula that would provide equal amounts to each of her grandchildren, as Mr. Wagner testified. (Tr. 51).

Mr. Wagner did not come forward until shortly before trial with the information that Rita Genecin discussed with him, on October 8, 1998, her intentions with respect to her IRA. He embroidered this account at trial, by asserting, for the first time, that Rita Genecin "repudiated" the concept of an even division of the account, even as she executed the "per stirpes" document. It has not been shown, however, that Mr. Wagner had any motive to testify falsely.

Mr. Wagner had no social relationship with either Victor or Paul in October, 1998 when Rita Genecin completed her IRA Application. Each brother at that time had accounts for his children under Mr. Wagner's management. Mr. Wagner could recall having met the brothers in person on a single occasion, at the memorial service for their father. (Tr. 21). Clearly, neither Mr. Wagner nor anyone in his office had any motive to enter percentages on DX 607A that favor Victor over Paul.

Mr. Wagner testified, moreover, without contradiction, that his only relationship with Victor to this day is that he manages investment accounts for Victor's children, for which his company receives fees of approximately $2500.00 per year. (Tr. 21). In the autumn of 2000, when the beneficiary designations came to light, Mr. Wagner was also managing accounts for Paul Genecin's children. (Tr. 21). There is no evidence that Mr. Wagner has any bias or interest that would cause him to testify falsely in Victor's favor.

For Mr. Wagner's office to have filed the beneficiary designations at issue herein was arguable lax. Under these circumstances, a business or professional person who is not subject to subpoena, as Mr. Wagner was not, would likely simply to decline to testify. Mr. Wagner, however,

4

elected to testify. He could credibly have had no memory of the circumstances, six years ago, in which Rita Genecin completed both DX 607A and DX 608, and in which his office filed both documents with Schwab. It was certainly not in his interest to testify, as he did, to a discussion in which Rita Genecin told him specifically that she desired to divide the account 60/40: this testimony could make his conduct in 1998, in having her execute DX 608, and in filing it with Schwab, appear to have been negligent. The fact that Mr. Wagner gave such testimony, therefore, argues strongly that the substance of it was true: that Rita Genecin discussed with him her desire to divide her account in a manner that would give each grandchild an equal amount. His embroideries and embellishments can thus be seen as a misguided effort to excuse his failure, as Rita Genecin's trusted adviser, to ensure that all the documents he filed for her were consistent with the intent she expressed.

Whatever deficiencies Mr. Wagner may have had as a financial adviser and as a witness, however, do not alter the reality that Rita Genecin completed DX 607A, and that her Will demonstrates her intent to divide her property in a manner that is apparently unequal as between her two sons. Even without Mr. Wagner's testimony, the record is clear that Victor has three children and Paul has two. Arithmetically, the division of the account into a 60% share and a 40% share results in the conferral of an equal benefit upon each grandchild.

### III. THE EVIDENCE DOES NOT SUPPORT PAUL'S CLAIM THAT RITA GENECIN INTENDED TO DIVIDE HER IRA INTO EQUAL SHARES.

Even if the Court should decide that Victor has not established that Rita Genecin intended for him to have 60% of her IRA, Paul cannot prevail unless he proves that she intended for Paul to receive 50%. Paul cannot meet this burden.

No document executed by Rita Genecin states that Paul shall receive 50% of the Schwab IRA, and Rita Genecin's Will makes clear that she did not intend to make an even division of her property. DX 608, the Beneficiary Designation document that Rita Genecin executed on October 8, 1998, in the same meeting in which she executed DX 607A, provides that, "[u]pon my death, my

5

Individual Retirement Account shall be distributed to my descendants who survive me, *per stirpes*." This document does not set forth distribution percentages, nor does it even name the persons who are to be beneficiaries. There are (and were in October, 1998) seven individuals who are lineal descendants of Rita Genecin, and the legal Latin phrase "per stirpes" is notoriously opaque even to lawyers who practice in the field of Trusts and Estates. DX 608 is thus a difficult document to interpret, on its face, as an expression of Rita Genecin's intent.

DX 608, and the identical DX 610, executed October 6, 1998, were prepared by Max E. Blumenthal, Esq. pursuant to a request transmitted to him by facsimile on September 28, 1998 by Mr. Wagner. Attorney Blumenthal sent DX 608 to Mr. Wagner on September 29, 1998. Attorney Blumenthal's transmittal letter (DX 510) is addressed to both Rita Genecin and Mr. Wagner, and states:

> Pursuant to Dan's September 28, 1998 facsimile letter to me, I am enclosing a form of Beneficiary Designation for Rita's new rollover IRA. You can see that Rita designates Victor and Paul as beneficiaries in equal shares, with the provision that if either of them predeceases her, his share will go to his descendants.

(DX 510). Paul offers DX 510 in support of his claim that Rita Genecin intended, by executing DX 608, for the account to be divided equally. There is, however, no evidence that Attorney Blumenthal ever discussed Rita Genecin's intentions for her IRA with her before preparing DX 608. To the contrary, he recites in DX 510 that he prepared the document pursuant to *Mr. Wagner's* request, and makes no mention of any instructions from Rita Genecin. In DX 510, moreover, Attorney Blumenthal asserts that "[y]ou can see" that DX 608 sets forth a designation in equal shares, but such a designation is not plainly set forth in the document itself.

The notion that Rita Genecin understood that DX 608 would cause her IRA to be divided equally is contradicted by the evidence of her conduct. There is no question that Rita Genecin executed DX 608 on October 8, 1998 during the same meeting in Mr. Wagner's office in which she filled in and executed DX 607A. (WAGNER: Tr. 58; 114-15; SULLIVAN: Tr. 240). If she

6

understood that DX 608, in spite of its arcane wording, provided for an equal division of her account, and if she intended equal division, she certainly would have written 50% on each of the two lines provided on DX 607A for "% Benefits." There is no question that she did not do so. Given the layout of the form, and Rita Genecin's unhesitating completion of the rest of the document, her failure to enter "50%" in each of the spaces provided demonstrates that she did not intend that result.

In his Answer, Victor concurred in the allegation of the Complaint that

> [u]nder the "per stirpes" designation, Victor and Paul Genecin, or their successors, would each take fifty per cent of the IRA.

Answer, ¶ 58.

### IV. IF THE COURT FINDS THAT NEITHER DEFENDANT IS ABLE TO PROVE ENTITLEMENT TO THE DISPUTED 10% OF THE IRA ACCOUNT, THEN THE COURT HAS THE AUTHORITY TO REFORM THE BENEFICIARY DESIGNATION DOCUMENTS TO EFFECTUATE RITA GENECIN'S INTENT.

If the Court should conclude, based on all the evidence, that DX 607A and DX 608 present an irreconcilable ambiguity as to the percentages to be distributed to each defendant, then the Court has the power to reform the documents to conform to Rita Genecin's known intent.

The only testimony concerning DX 608 negates Rita Genecin's intent to divide the account into two 50% shares. Mr. Wagner testified:

> She looked at this letter and she said: This isn't what I want to do. I don't want to leave it equally. I want to leave it –
> [. . . ]
> She said: This is not what I want to do, I want to leave it 60/40. And I said, okay.
> [. . .]
> And I said: Mr. Blumenthal says we need to have this technical IRA designation in case somebody dies, but she wanted to leave things to her descendents, and I didn't want to go through that, and I didn't reach Mr. Blumenthal to get an estate tax explanation of it. I did what I was told, but Miss Genecin said she wanted to leave it 60/40. She repudiated the letter.

(Tr. 123). If the Court were to discount Mr. Wagner's testimony completely, there would be no evidence at all for the proposition that Rita Genecin had read and understood Mr. Blumenthal's

7

letter. Indeed, whatever weight the Court gives to Mr. Wagner's testimony, there is no support for the proposition that she wished to designate Victor and Paul as beneficiaries in equal shares. One conclusion that can certainly be reached, therefore, is that Mr. Wagner failed to take the steps necessary to ensure that an unambiguous statement of Rita Genecin's intent was provided to Schwab, and that his inattention to the discrepancies in the documents he filed resulted in an ambiguous statement concerning the percentages to be distributed to the beneficiaries.

Individual retirement accounts, such as the one at issue here, are, under the terms of the statute authorizing them, trusts. 26 U.S.C.§408(a). A court has the power to reform a trust instrument to correct a mistake. Shriners Hospitals for Crippled Children v. Maryland National Bank, 270 Md. 564, 581, 312 A.2d 546 (Md. 1973); Liberty Trust Co. v. Weber, 200 Md. 491, 524, 91 A.2d 393, 394 (Md.1952). If this Court is satisfied that the terms of DX 607A and DX 608 cannot be reconciled, then it has the authority to reform the documents to give effect to Rita Genecin's intent.

Rita Genecin clearly intended for Victor and Paul to receive her IRA account after her death. They are the sole named beneficiaries of that account, as they are of her Will. Rita Genecin's Will provides the clearest evidence of her distributive intent: 55% of her residuary estate is allocated to Victor, and 45 % to Paul. This arrangement is calculated to provide precise equality of benefits to the nine individuals who survive Rita Genecin. Accordingly, in the event that the Court is unable to conclude that the IRA beneficiary designation documents do not adequately establish Rita Genecin's intent concerning division of the account, the Court may, and should, direct the division of the account consistent with the provisions of the Will.

THE DEFENDANT VICTOR GENECIN,
in his individual capacity


By /s/ David L. Belt
    David L. Belt (ct 04274)
    JACOBS, GRUDBERG, BELT, DOW & KATZ P.C.
    350 Orange Street
    New Haven, CT  06503
    Tel.:(203) 772-3100
    Fax:(203) 772-1691
    Email: dbelt@jacobslaw.com
    His attorney

9

## Certification

The undersigned hereby certifies that a copy of the foregoing Post-Trial Memorandum of Defendant Victor Genecin was mailed first class, postage prepaid, this 22nd day of February 2005 to:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue,
  Durham & Noonan, P.C.
741 Boston Post Rd.
Guilford, CT 06437

/s/ David L. Belt
David L. Belt